No. 24-2204

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

ZENTIAN LTD.,

*Appellant,*

v.

APPLE INC.,

*Appellee.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, IPR2023-00033

# BRIEF OF APPELLANT ZENTIAN LTD.

Kayvan B. Noroozi
NOROOZI PC
11601 Wilshire Blvd., Suite 2170
Los Angeles, CA 90025
(310) 975-7074

Nevin M. Gewertz
Katherine E. Rhoades
Jessica R. Bernhardt
BARTLIT BECK LLP
54 W. Hubbard, Suite 300
Chicago, IL 60654
(312) 494-4400

*Counsel for Appellant Zentian Ltd.*

## PATENT CLAIMS AT ISSUE

Claims 46-51, 53, 54, 58, 59, 64, and 67 of U.S. Patent 7,587,319 are at issue in this appeal. Claim 46, reproduced below, is the sole independent claim and is exemplary for purposes of this appeal.

> 46. A speech recognition circuit comprising:
>
> [a] an input buffer receiving processed speech parameters;
>
> [b] a plurality of lexical memories containing in combination complete lexical data for word recognition, each lexical memory containing part of said complete lexical data;
>
> [c] a plurality of processors connected in parallel to said input buffer for processing the speech parameters in parallel;
>
> [d] said processors being arranged in groups of processors, each group of processors being connected to a lexical memory;
>
> [e] a control processor controlling each processor to process said speech parameters using partial lexical data read from a respective said lexical memory; and
>
> [f] a results memory storing the results of the processing of the speech parameters from said processors.

Appx92.

## CERTIFICATE OF INTEREST

Counsel for Zentian Ltd. certifies the following:

1. The full name of every party represented by me is: Zentian Ltd.

2. The name of the real party in interest represented by me is: Zentian Ltd.

3. The full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock of the party represented by me is: none.

4. The names of all law firms and the partners or associates who appeared for Appellant before the United States Patent and Trademark Office, or are expected to appear in this Court (and who have not or will not enter an appearance in this case), are: Peter Knops, Noroozi PC.

5. The following cases could affect or be affected by this appeal: Zentian Ltd. v. Apple, Inc., W.D. Texas, No. 6:22-00122-ADA (transferred to N.D. Cal. in June 2023); Zentian Ltd. v. Apple, Inc., N.D. of Cal., No. 23-cv-02921-TLT (transferred from W.D. Tex. in June 2023).

6. Counsel has no information to provide pursuant to Rule 47.4(a)(6) and 26.1(b) and (c) as this is not a criminal or bankruptcy case.

Dated: February 6, 2025 By: *<u>/s/ Kayvan B. Noroozi</u>*
Kayvan B. Noroozi

## TABLE OF CONTENTS

INTRODUCTION .......... 1

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 2

A. The '319 Patent .......... 2

B. The proceedings below .......... 5

SUMMARY OF THE ARGUMENT .......... 11

ARGUMENT .......... 12

STANDARD OF REVIEW .......... 12

I. The Board's findings as to motivation to combine rest on legal errors, and lack substantial evidence .......... 14

A. Apple presented a highly specific and complex three-reference combination to meet limitations 46[b]-[d] .......... 14

B. The evidence demonstrated that the ordinary artisan would have found Apple's combination *unsuitable* and *undesirable* .......... 20

1. The combination would have slowed down Thelen and defeated its real time recognition, central to its dictation function .......... 20

2. The combination's memory architecture required duplicative data and significant reprogramming .......... 22

3. The combination would provide no benefit or advantage over Thelen in unmodified form .......... 24

C. The Board's finding of a motivation to combine rests on legal errors and is not supported by substantial evidence .......... 29

1. The Board's "efficiency" rationale lacks substantial evidence .......... 29

2. The Board's "flexibility and scalability" motivation lacks substantial evidence .......... 34

3. The Board's "decreased cost" motivation lacks substantial evidence .......... 36

4. The Board erroneously disregarded the combination's failure to achieve Thelen's goal of real time recognition........ 37

5. The Board erroneously disregarded the combination's need for substantial reprogramming....................................... 39

6. The Board's reliance on *Intel v. PACT XPP* does not support its finding of a motivation to combine on this record........................................................................ 40

CONCLUSION ........................................................................................ 42

## TABLE OF AUTHORITIES

**Cases**

*Applications in Internet Time, LLC v. RPX Corp.*,
897 f.3d 1336 (Fed. Cir. 2018) .................................................... 13, 35

*Aqua Products v. Matal*,
872 F.3d 1290 (Fed. Cir. 2017)................................................ 12, 35, 39

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015)........................................................... 38

*In re Nuvasive,*
842 F.3d 1376 (Fed. Cir. 2016)........................................................... 13

*Intel Corp. v. PACT XPP Schweiz AG*,
61 F.4th 1373 (Fed. Cir. 2023) ..................................................... passim

*Intelligent Bio–Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016)........................................................... 13

*Owens Corning v. Fast Felt Corp.*,
873 F.3d 896 (Fed. Cir. 2017)............................................................. 13

**Statutes**

28 U.S.C. § 1295 ..................................................................................... 1

35 U.S.C. § 141 ....................................................................................... 1

35 U.S.C. § 142 ....................................................................................... 1

35 U.S.C. § 319 ....................................................................................... 1

**Regulations**

37 C.F.R. 90.3......................................................................................... 1

## STATEMENT OF RELATED CASES

The following cases could affect or be affected by this appeal:

*Zentian Ltd. v. Apple, Inc., W.D. Texas*, No. 6:22-00122-ADA (transferred to N.D. Cal. in June 2023); *Zentian Ltd. v. Apple, Inc., N.D. of Cal.*, No. 23-cv-02921-TLT (transferred from W.D. Tex. in June 2023).

## INTRODUCTION

This is the rare *inter partes* review appeal in which the Board's decision below was so erroneous, it drew a detailed and extensive dissent. Appx49-75. And rightly so: the combination the Board blessed here would have only made the system of the primary reference ***worse*** without any benefit or advantage. Appx74 ("I agree with Patent Owner and Dr. Anderson, that a person of ordinary skill in the art would have recognized that using Chen's clusters to perform Thelen's speech recognition techniques would have yielded several disadvantages and would not have yielded any advantage.") (Smith, APJ., dissenting). A motivation to combine cannot be found where the combination only makes things worse. Only the hindsight of lawyers working backwards from the challenged claims can explain such a combination, not the motivations of an ordinary engineer. This Court should reverse.

## JURISDICTIONAL STATEMENT

This appeal arises from the Patent Trial and Appeal Board's Final Written Decision in *Apple Inc. et al. v. Zentian Ltd.*, IPR2023-00033, Paper 34 (June 11, 2024). Appx1. Pursuant to 37 C.F.R. 90.3(b)(1), 35 U.S.C. § 142, and 35 U.S.C. § 319, Zentian Ltd. timely appealed. No. 24-2204, Dkt. 1. This Court has jurisdiction under 35 U.S.C. § 141(c) and 28 U.S.C. § 1295(a)(4).

## STATEMENT OF THE ISSUES

I. Whether substantial evidence supports the Board's finding of a motivation to combine where the combination only "would have yielded several disadvantages and would not have yielded any advantage," Appx74 (dissent); where the Board's primary motivation rested on a false distinction between the primary reference and the combination; and where the Board reached conclusory findings as to motivations that were contradicted by extensive evidence that the Board did not address.

## STATEMENT OF THE CASE

### A. The '319 Patent

This case is about an improved speech recognition circuit. The challenged patent, U.S. Patent 7,587,319 (the "'319 Patent"), titled "Speech Recognition Circuit Using Parallel Processors," teaches and claims a particular design for using "parallel processors for processing the input speech data in parallel." Appx85 (1:4-6). The '319 Patent distinguished its design as an improvement over prior art configurations in which either "a single memory [was] used for all processors" (one memory for *all* processors) or "each processor only has access to its own local memory" (one memory for *each* processor). Appx86 (3:50-57). To that end, the '319 Patent disclosed multiple processors arranged in multiple "*groups* or *clusters*," Appx85 (2:64-65), with each group or cluster of processors connected to

its own "acoustic model memory [ ] in which is stored lexical data for use by the lexical tree processors [ ] within" that cluster.

Fig. 2 of the '319 Patent illustrates that architecture by showing two clusters of lexical tree processors, labeled "Lexical Tree Processor Cluster 1" and "N," respectively, each containing multiple processors 1-*k*, and each cluster of processors connected to a dedicated "acoustic model memory," with two acoustic model memories for the two clusters of processors. Appx80 (Fig. 2).




Fig 2

Each "Acoustic Model Memory" is a "*partial* lexical memory" that contains "*part* of the lexical data." Appx85 (2:64-3:2). All acoustic model memories across all of the clusters in combination contain "*complete* lexical data for word recognition." Appx86 (3:33-35). "Each lexical tree processor is operative to process the speech parameters using a partial lexical memory and the controller controls each lexical tree processor to process a lexical tree corresponding to partial lexical data in a

corresponding partial lexical memory." Appx86 (3:3-7). "Each lexical tree processor 21 is capable of processing a different lexical tree and thus Nk lexical trees can be processed in parallel [N processor clusters each holding k processors]." Appx87 (5:4-6).

The '319 Patent teaches that its novel design is advantageous over the prior art one-memory-for-all-processors configuration because "flexibility in the processing is provided without being bandwidth limited by the interface to the memory that would occur if only a single memory were used for all processors." Appx86 (3:50-54). The '319 Patent further teaches that its design is also "more flexible than the parallel processing arrangement in which each processor only has access to its own local memory [one-memory-to-one-processor] and requires fewer memory interfaces (i.e. chip pins.)." Appx86 (3:54-58).

The sole independent claim at issue, claim 46, thus recites:

46. A speech recognition circuit comprising:

[a] an input buffer receiving processed speech parameters;

[b] a plurality of lexical memories containing in combination complete lexical data for word recognition, each lexical memory containing part of said complete lexical data;

[c] a plurality of processors connected in parallel to said input buffer for processing the speech parameters in parallel;

[d] said processors being arranged in groups of processors, each group of processors being connected to a lexical memory;

> [e] a control processor controlling each processor to process said speech parameters using partial lexical data read from a respective said lexical memory; and
>
> [f] a results memory storing the results of the processing of the speech parameters from said processors.

Appx92.

**B. The proceedings below**

Apple's unpatentability theory did not rely on any speech recognition art that taught multiple clusters of processors with each cluster having its own dedicated lexical memory, much less each lexical memory holding part of the lexical data and the lexical memories together holding complete lexical data.

Instead, Apple began with the Thelen reference, which Apple admitted teaches the one-memory-to-all-processors design that the '319 Patent distinguished as prior art. Appx216; Appx221 (quoting and citing Appx2227 (Fig. 3), Appx2231 (5:22-24), Appx2232 (7:30-34) and Appx940 (¶ 78)); Appx19; Appx13. Thelen's single shared storage, labeled storage 340, is depicted in its Figure 3, below.



FIG. 3

The Petition then proposed to modify Thelen's memory architecture (shown above) in view of Bailey's Figure 3A (below). Appx19; Appx227-28; Appx231; Appx249-50. But as shown below, Bailey's Figure 3A only teaches the alternative one-memory-to-one-processor architecture that the '319 Patent had also distinguished as inferior prior art. Appx3634-36; Appx3258-59 (¶¶ 34-35); Appx3171 (119:8-13) (Apple's expert admitting Bailey does not teach the design of the challenged claims).




FIG. 3A

So the Petition pivoted yet again, this time leaping to Chen, a reference not in the field of speech recognition and that says nothing whatsoever about the design of speech recognition circuits. Appx3172-73 (120:19-121:2); Appx3257 (¶ 31); Appx3543, Appx3555-56. Despite Chen's express teaching that a single "shared memory model having a globally shared physical address space," like Thelen's unmodified storage 340, is "[f]rom the programmer's perspective, ***the most attractive parallel processing system***," the Petition proposed to modify Thelen to instead use multiple private memories, each dedicated to a processor cluster, as shown in Chen's Figure 4 (below). Appx1020 (1:66-2:1) (emphasis added); Appx59-60; Appx63; Appx72; Appx73.




Fig. 4

The Petition further explained that in the combined system, each of Thelen's hierarchically organized language contexts and associated subcontexts (e.g., the "sports" context and associated subcontexts such as football, baseball, etc.) would be placed into its own cluster of processors, that the single shared memory of each processor cluster would store all of the lexical data needed for that context (e.g., all "sports"-related language model data would be in the memory for the "sports" cluster), that each processor ("recognizer") in the cluster would be "associated with one recognition model at a time," (e.g., one processor for football, one for baseball, etc.), and that all of the processors in the cluster group would operate ***at the same***

***time***, in parallel, to perform recognition for that context (e.g., all processors working at once to apply the sports-related language models for speech recognition). Appx21-22; Appx233-35; Appx3177-78 (125:20-126:5).

In response, Zentian demonstrated that an ordinary artisan would not have found Apple's combination suitable, and would not have been motivated to pursue that combination, because:

- by requiring every processor in a cluster to ***simultaneously*** request language model from a single cluster memory, the combination would create extensive "memory collisions," slowing down the combination's system such that it would fall far behind the real time recognition rate Thelen achieved in unmodified form, Appx3640-43, Appx3650-52; Appx3545, Appx3560, Appx3564; Appx3263-65 (¶¶ 43-45), Appx3270-72 (¶¶59-60);
- the combination would require significant duplication of data compared to Thelen alone, as Apple itself admitted, Appx3453-54 ("a core vocabulary [would be] replicated in each local memory"); Appx3567-68; Appx3721-23 (25:10-27:5), Appx3748 (52:18-22); Appx54-55;
- the combination would require changing Thelen's memory architecture away from a single shared memory architecture, Appx3269 (¶ 56), contrary to Chen's teaching that Thelen's design was already "the most attractive

parallel processing system," Appx1020 (1:66-2:1); Appx59-60; Appx63; Appx72; Appx73;

- the combination's shift from a shared memory model to a private memory model would require "significant reprogramming effort" according to Chen itself, Appx3269 (¶ 56); Appx1020 (2:6-9); Appx71-73; and
- contrary to Apple's allegations, the combination would not improve Thelen's speed or power, but instead would have slowed it down, and would not have been more efficient, flexible, scalable, or cost-effective than Thelen's existing design. Appx3545, Appx3562-64, 3566-68; Appx3094 (42:14-19), Appx3115 (63:8-15), Appx3157-58 (105:8-106:4), Appx3182-83 (130:23-131:4), Appx3188 (136:3-6); Appx3644-53; Appx3266-73 (¶¶ 49-63); Appx3327; Appx3453-54; Appx3721-23 (25:10-27:5), Appx3748 (52:18-22).

The Board's Final Written Decision nonetheless found that the ordinary artisan would have been motivated by purported "efficiency" benefits, as well as the purported "other motivating considerations" of "flexibility and scalability" and "decreased cost," notwithstanding "the effect of memory collisions" and "any need for substantial programming or reprogramming." Appx27-28, Appx30. The Board did not address Zentian's evidence that there was no flexibility, scalability, or cost benefit from the combination compared to Thelen, or that the combination would

require extensively duplicating Thelen's language model data, which would have been highly inefficient.

Reflecting the magnitude of the Board's errors and evidentiary oversights, the decision drew a detailed dissent from Administrative Patent Judge Smith. Appx49-75. After careful consideration of the evidence from both parties, as well as the majority's reasoning and analysis, APJ Smith concluded:

> Petitioner has not shown ***any*** advantage to modifying Thelen, which already achieves real time recognition, already shares data common to each lexical model, is already scalable and flexible, and already uses conventional components. Furthermore, Patent Owner has shown ***multiple*** disadvantages to modifying Thelen. I agree with Patent Owner and Dr. Anderson, that a person of ordinary skill in the art would have recognized that using Chen's clusters to perform Thelen's speech recognition techniques would have yielded ***several disadvantages*** and would not have yielded ***any advantage***. Therefore, I would have concluded that all challenged claims are patentable over Petitioner's combination.

Appx74-75 (emphasis added).

## SUMMARY OF THE ARGUMENT

There can be no motivation to make the system of the primary reference worse, without any corresponding advantage. Yet the Board's decision found exactly such a combination to have been motivated—a combination that would have made Thelen's system far slower, required extensive redundant duplication of its language model data, required significant and complex reprogramming, and that would have changed Thelen's memory architecture ***away*** from the model that Chen

itself identified as "***most attractive***"—all without any corresponding benefit. Along the way, the Board rested on a false characterization of Thelen—contradicted by Apple's own repeated statements, the testimony of both experts, and Thelen itself—as well as conclusory findings refuted by extensive evidence the Board did not even address.

The Board's decision was erroneous, and should be reversed.

## ARGUMENT

### STANDARD OF REVIEW

This Court will set aside the PTAB's decision of unpatentability where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1306 (Fed. Cir. 2015).

"[A]n agency's refusal to consider evidence bearing on the issue before it is, by definition, arbitrary and capricious within the meaning of 5 U.S.C. § 706, which governs review of agency adjudications." *Aqua Products v. Matal*, 872 F.3d 1290, 1325-26 (Fed. Cir. 2017).

The Board's decision is an abuse of discretion if it is "(1) clearly unreasonable, arbitrary, or fanciful; (2) is based on erroneous conclusions of law; (3) rests on clearly erroneous fact finding; or (4) involves a record that contains no

evidence on which the Board could rationally base its decision." *Microsoft*, 789 F.3d at 1306.

This Court reviews the Board's factual finding of a motivation to combine for substantial evidence. *Intelligent Bio–Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016). "Although [this Court] review[s] this factual finding for substantial evidence, the factual inquiry whether to combine references must be thorough and searching, and the need for specificity pervades our authority on the PTAB's findings on motivation to combine." *In re Nuvasive*, 842 F.3d 1376, 1381-82 (Fed. Cir. 2016) (internal quotations omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1378 (Fed. Cir. 2023) (internal quotation marks omitted). "[S]ubstantial evidence review requires an examination of the record as a whole, taking into account both the evidence that justifies and detracts from an agency's opinion." *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1356 (Fed. Cir. 2018).

This Court reviews the Board's legal conclusions, including the Board's ultimate legal conclusion of obviousness, *de novo*. *Owens Corning v. Fast Felt Corp.*, 873 F.3d 896, 901-902 (Fed. Cir. 2017).

## I. The Board's findings as to motivation to combine rest on legal errors, and lack substantial evidence

### A. Apple presented a highly specific and complex three-reference combination to meet limitations 46[b]-[d]

Limitations 46 [b]-[d] recite:

> [b] a ***plurality*** of lexical memories containing in combination ***complete*** lexical data for word recognition, ***each*** lexical memory containing ***part*** of said complete lexical data;
>
> [c] a plurality of processors connected in parallel to said input buffer for processing the speech parameters in parallel;
>
> [d] said processors being arranged in ***groups*** of processors, ***each group*** of processors being connected to ***a lexical memory***.

Figure 2 of the '319 Patent illustrates those requirements in one embodiment. Appx80.




Fig 2

Figure 2 depicts two processor-and-memory clusters, labeled "Lexical Tree Processor Cluster" 1 and N, respectively. Each cluster contains a plurality of

"lexical tree processors" 1-k arranged in a group, and each *group* of processors in one cluster is connected to a single lexical memory titled "Acoustic Model Memory." Per limitation 46[b], each lexical memory contains part of the complete lexical data, and the lexical memories in combination contain complete lexical data.

To meet limitations 46[b]-[d], Apple relied on a highly complex and multi-step combination of Thelen, Bailey, and Chen.

For limitation 46[b], Apple began with Thelen's "huge vocabulary speech recognition system for recognizing a sequence of spoken words," as illustrated by the block diagram of Thelen's Figure 3. Appx12 (citing Appx2227), Appx19.



FIG. 3

Apple argued that Thelen's "huge vocabulary" is the "complete lexical data" recited in limitation 46[b]. Appx19. Thelen further teaches "a plurality of large

language speech recognizers [331, 332, and 333], each being associated with a respective, different large vocabulary recognition model." Appx13. Apple argued that each of Thelen's recognition models contains "part of said complete lexical data," as recited in limitation 46[b]. Appx19.

Apple conceded that Thelen "does not expressly teach" storing each of its recognition models and associated lexicons "in a plurality of lexical memories," as limitation 46[b] requires. Appx19. Rather, Thelen teaches a ***single*** storage 340 (shown above in Thelen's Fig. 3), from which its recognizers and associated recognition models may be accessed. Appx13, Appx216; Appx221 (quoting and citing Appx2227 (Fig. 3), Appx2231 (5:22-24), Appx2232 (7:30-34) and Appx940 (¶ 78)).

So Apple proposed to modify Thelen in view of Bailey's Figure 3A to divide Thelen's "huge vocabulary" into multiple private lexical memories, with each private memory representing "an exclusive recognition model," and with each private memory further associated with one of Thelen's recognizers (in the form of a processor) "in a fixed one-to-one relationship." Appx19; Appx2237 (Fig. 3A) (below).




**FIG. 3A**

For limitation 46[c], Apple relied on Thelen's recognizers 331-333 in the Thelen-Bailey combination described above to meet the recited "plurality of processors." Appx19-20.

For limitation 46[d], however, Apple's combination became significantly more complex and contorted. Since neither Thelen nor Bailey taught limitation 46[d]'s "*groups* of processors, each group of processors being connected to a lexical memory," Apple turned to Chen. Relying on Chen's Figure 4 (below), Apple proposed that the single processors in Thelen-Bailey would be replaced by "Chen's groups (clusters) of processors," labeled 100a-d, which would allegedly "provid[e] the same functionality." Appx21.




Fig. 4

Apple further explained exactly what "functionality" the Thelen-Bailey-Chen processor and memory clusters would serve. Appx21-23; Appx231-35. Apple stated that Thelen teaches dividing lexical data into a hierarchy of contexts (e.g., sports, health, travel, computer), and further dividing each context into subcontexts or more specific contexts (e.g., medical centers under the health context). Appx21-22; Appx231-33. Apple illustrated this aspect of Thelen's design through the annotated version of Thelen's Figure 4, below. Appx233 (Pet. 42); Appx2227 (Fig. 4).




FIG. 4

Apple then explained that the Thelen-Bailey-Chen combination would place each of Thelen's high level (or "generic") contexts and all of its associated subcontexts (or "specific contexts"), "e.g., ***all sports contexts***," together in ***one*** of Chen's processor clusters. Appx21-22 (emphasis added). The single shared memory of each processor cluster would "store all similar contexts," *i.e.*, all of the lexical data needed for sports-related word recognition would be stored on the lexical memory of the single "sports" processor cluster group. Appx21-22. Each processor ("recognizer") in the cluster would be "associated with one recognition model at a time," and all of the processors in the sports cluster group would operate ***at the same time***, in parallel, to perform recognition for sports-related speech. Appx22; Appx13 (finding that Thelen's recognizers "independently recognize the same speech input at almost the same moment."); Appx234-35 (Pet. 43-44); Appx3177-78 (125:20-126:5) (Apple's expert stating that all of the sports-related language models would be stored "in one memory" and that "each of the

processors connected to that memory is looking at the particular subset of vocabulary that's germane to its context").

### B. The evidence demonstrated that the ordinary artisan would have found Apple's combination *unsuitable* and *undesirable*

Before the Board, Zentian extensively demonstrated that the ordinary artisan would have found Apple's combination unsuitable and undesirable.

#### 1. The combination would have slowed down Thelen and defeated its real time recognition, central to its dictation function

Thelen in unmodified form teaches a real time speech recognition system. Appx950 (¶ 84) (Apple's expert identifying "Thelen's stated goal of recognizing speech in 'real time' in the sense that no significant delay occurs between a word being received in the system and recognizing the word"); Appx3263 (¶ 42).

It was undisputed before the Board—and Apple's expert conceded—that Thelen in unmodified form achieves real time recognition without any doubt or concern. Appx3207 (155:7-17).

As Apple's expert readily agreed, those of ordinary skill in the art would not find it desirable to complicate an existing system that performs adequately. Appx3215 (163:4-12); Appx3653.

A. Well, it's always not desirable to complicate hardware or software when an existing hardware or software can perform adequately.

Since Thelen performed as intended without modification, the ordinary artisan would not have found it desirable to complicate Thelen through Apple's modifications. Appx3653.

But far worse, Zentian showed that Apple's modifications would ***preclude*** Thelen's real time operation. Appx3639-43, Appx3650-52; Appx3545, Appx3560, Appx3564; Appx3263-65, Appx3270-72. Since Apple's combination places all of the recognition work for a given context and associated sub-contexts into ***one*** cluster and ***one*** cluster memory, and since Thelen's processors (recognizers) in one cluster function simultaneously to recognize a given speech input, Apple's combination would cause the multiple processors in a given cluster to continuously make calls to the shared cluster memory in order to obtain recognition model data to address a common recognition task ***at the same time***. Appx3265, Appx3270. By way of example, the speech input "let's go play golf or tennis on Saturday" would be directed to the "sports" cluster in Apple's combination, and each of the processors in that cluster (e.g., one dedicated to golf, one dedicated to tennis, one to football, etc.) would simultaneously and repeatedly ask the single cluster

memory for language model data to recognize that speech input. This would cause a problem known in the art as "memory collisions," causing each processor to pause its computation while it waits its turn to retrieve requested data from the memory—significantly delaying the recognition process. Appx3263-65 (¶¶ 43-45). As a result, Apple's combination of Thelen, Bailey, and Chen would fall far behind real time operation, rendering the combination worse than Thelen in unmodified form, and inconsistent with Thelen's principle of real time recognition. Appx3272 (¶ 60); Appx3206-07 (154:8-155:17) (Apple's expert admitting that "the task most described in Thelen is dictation" and that if a dictation system had recognition latency, "usability would be pretty low.").

Because Apple's combination would defeat Thelen's real time operation and introduce significant latency, the ordinary artisan would have found the combination undesirable and unsuitable. Appx3272 (¶ 60).

### 2. The combination's memory architecture required duplicative data and significant reprogramming

Thelen in unmodified form teaches a shared memory structure in which all components ultimately obtain their lexical data from a single common memory—storage 340. Appx52; Appx53; Appx56-57; Appx57 n. 15 (citing Appx939-40 (¶ 77); Appx3269 (¶ 56); Appx221-232; Appx3648-50).

Apple's combination, however, modifies Thelen's single shared storage into multiple private memories, with one private memory per cluster. Appx19; Appx21-

22; Appx53; Appx3269 (¶ 56). By Apple's own admission, the combination would thus require ***duplication*** of lexical data compared to Thelen alone, since each private memory would need to contain the same core vocabulary. Appx3453-54 ("a core vocabulary [would be] ***replicated*** in each local memory"); Appx3567-68; Appx54 ("Petitioner's combination of Thelen and Bailey, by storing each recognition model in a separate memory, duplicates lexical data common to each of the recognition models."); Appx58-59; Appx60; Appx63. This fact alone would have rendered the combination unsuitable and undesirable for the ordinary artisan. Appx54-55, Appx63.

Moreover, Chen itself teaches that a single "shared memory model having a globally shared physical address space," like Thelen's unmodified storage 340, is "[f]rom the programmer's perspective, ***the most attractive parallel processing system***." Appx1020 (1:66-2:1) (emphasis added); Appx59-60; Appx63; Appx72; Appx73. The combination would require changing Thelen away from what Chen describes as the "most attractive parallel processing" memory architecture, and the ordinary artisan would have found the combination unsuitable and undesirable on that further basis. Appx59-60; Appx63; Appx72; Appx73.

Chen further teaches that "[t]o effectively port an existing software program from a shared memory model to a private memory model can require significant reprogramming effort." Appx3269 (¶ 56); Appx1020 (2:6-9); Appx71-73. That is

because "a distributed memory model necessarily requires that the processes and data which comprise a parallel programming problem be partitioned into separate tasks that are each small enough to fit into the private local memory of a processor and at the same time are large enough to recover the overhead required to establish a parallel task in a message passing environment." Appx3269 (¶ 56); Appx1020 (2:9-17). The ordinary artisan would have been aware that the combination would require the complex task of partitioning Thelen's existing speech recognition processes and data to balance the competing problems of memory size and overhead, and would have found the combination unsuitable and undesirable on that additional basis as well. Appx3269-70 (¶¶ 56-57); Appx71-73.

#### 3. The combination would provide no benefit or advantage over Thelen in unmodified form

In addition to the significant disadvantages of the combination detailed above, Zentian demonstrated that the combination would not provide any of the purported advantages Apple relied upon as its motivations.

Although Apple had alleged an improvement to processing power and recognition speed, Appx236, Apple's expert admitted under cross-examination that the combination would either have the ***same*** number of processors as Thelen, or else that he did not ***know*** whether processing power would change at all. Appx3563; Appx3182-83 (130:23-131:4), Appx3188 (136:3-6). As a result, Apple ***withdrew*** its "processing power" motivation, stating that "increasing processing

power via adding more processors beyond what is taught in Thelen" is not a motivation. Appx3456. And as demonstrated, the combination would in fact have ***slowed down*** Thelen's recognition by introducing significant memory collision delays, causing Thelen to fall far behind the realtime recognition speed it achieved in unmodified form. Section I.B.1, *supra*. That conclusion was further corroborated by the results of a real-world contemporaneous experiment published in the *Mathew I* reference. Appx73; Appx3647-48; Appx3267-68 (¶¶ 50-55); Appx3545, Appx3561-62, Appx3563; Appx3327. *Mathew I* taught that a five-processor parallel processing speech recognition architecture turned out to be ***slower*** than a two-processor version "due to the high synchronization overhead" created by adding processors. *Id.* The evidence thus provided no basis for a speed improvement benefit to the combination.

The evidence likewise refuted any purported "efficiency" gains from the combination. As a threshold matter, the combination indisputably ***increases*** the amount of memory that must be used because it requires ***duplicating*** a core vocabulary among ***each*** of the individual private memories it introduces. Section I.B.2, *supra*; Appx3453-54; Appx3567-68; Appx53-54; Appx58-59; Appx60-61; Appx63. And the combination requires ***further*** inefficient data duplication by breaking apart Thelen's original hierarchy of recognition models. Appx58-60; Appx3721-23 (25:10-27:5), Appx3748 (52:18-22). In particular, as shown in

Apple's annotated version of Thelen's Figure 4, Thelen contemplates certain subcontext models, such as "Health Farms," that would fall within two different generic contexts, such as "Health" and "Travel."




FIG. 4

Because Health Farms falls within two different contexts, Apple's combination would require storing the language model responsive to "Health Farms" in ***two*** different cluster memories—once in the "Health" cluster memory and once in the "Travel" cluster memory. Appx58-60; Appx3721-23 (25:10-27:5), Appx3748 (52:18-22). By contrast, Thelen in unmodified form would store that language model ***once*** in the central storage 340. Appx56-57; Appx58. Indeed, both parties and their experts agreed below that Thelen consolidates its recognition model data. Appx62; Appx218-20, Appx233-34 (citing Appx2227, Fig. 4)); Appx947-48 (¶ 83); Appx3269 (¶ 56). Thus, it is Thelen alone—not the combination—that allows groups of processors to efficiently share lexical data common to each of their recognition models. Appx59. Thelen in unmodified form is thus more

efficient than the combination in that further respect. Appx58-59. Moreover, the combination's design plainly uses its processors and memories ***less efficiently*** than Thelen since the combination could not achieve real time recognition, whereas Thelen indisputably did. Section I.B.1, *supra*.

The evidence likewise refuted Apple's purported benefit of "flexibility and scalability." As Apple's expert testified, his "flexibility and scalability" opinion was based on the teachings of the Hon reference regarding its programmable pipeline (flexibility) and its ability to add more processors (scalability). Appx64; Appx3157-58 (105:8-106:4); Appx3272-73 (¶ 61); Appx3652-53; Appx3564, Appx3566. Apple and its expert provided no evidence of a general "flexibility and scalability" benefit for parallel processing systems. *Id.* Moreover, Apple never showed that Thelen itself was not already flexible and scalable in the same ways as Hon. Appx64; Appx3272-73 (¶ 61); Appx3652-53; Appx3564, Appx3566. To the contrary, Thelen already teaches that the number of its processors can be increased or decreased (scalable), and that its processors may shift from using an ineffective recognition model to a more effective one, thus focusing extensive resources on the most promising recognition path (flexible). Appx65-66; Appx2232 (7:63-64, 7:43-49), Appx2233 (9:17-24, 9:13-31, 9:24-26). By contrast, Apple's combination would continue to dedicate numerous processors to low-likelihood models regardless of the relevance or success of those models. Appx65-66; Appx3737-39

(41:1-43:10). For instance, when the incoming speech relates to sports, Apple's combination would continue to use the processors in the health group to attempt recognition of that speech using the ***health*** language models, rather than switching those processors to using the ***sports*** language models, as Thelen in unmodified form would have done. Appx65-66; Appx3737-39 (41:1-43:10).

Lastly, the evidence refuted any "cost" motivation for the combination. As Apple's expert admitted, he had not performed any cost-benefit analysis regarding the combination, nor did Apple identify what the combination would be cheaper ***than***, or what costs would have been reduced. Appx67; Appx3564 (citing Appx3094 (42:14-19), Appx3115 (63:8-15)); Appx3566. In particular, Apple did not state (much less show) that the combination would have been cheaper than Thelen's system, or that Thelen's components would have been more expensive. Appx67. To the contrary, Thelen itself teaches using conventional components throughout its disclosure. Appx67; Appx2231 (6:55-56), Appx2232 (7:23-24), Appx2233 (9:36-38).

* * *

The evidence thus only established significant reasons that the ordinary artisan would have found Apple's combination undesirable and unsuitable.

### C. The Board's finding of a motivation to combine rests on legal errors and is not supported by substantial evidence

#### 1. The Board's "efficiency" rationale lacks substantial evidence

The Board's finding of a motivation to combine rests primarily on its finding that the combination "would have resulted in memory and processing efficiency." Appx27. In particular, the Board stated that the combination "would have been an improvement over Thelen, [1] where each processor has access to only one, distinct lexical model at a time and [2] there is no shared memory in which multiple processors can access the same consolidated models [sic] data in parallel." Id (emphasis and numbering added).

That finding entirely lacks substantial evidence. As the dissent observed, Apple's combination ***also*** gives each processor access to only one lexical model at a time. Appx62 ("Contrary to the majority's statement, Petitioner's combination relies on Thelen's disclosure of associating each recognizer with a model."). Indeed, Apple's Petition expressly states that in the combination "each recognizer is associated with ***a*** recognition model (**per *Thelen***)[.]" Appx235 (emphasis added). And Apple's expert confirmed on cross-examination that in the combination, "each of the processors connected to the [cluster] memory is looking at the ***particular subset*** of vocabulary in that memory ***that's germane to its context***; yes." Appx3177-78 (125:8-126:5). There is thus no difference between

Thelen and the combination based on the access that each processor has to lexical model data, and substantial evidence cannot support any "efficiency" benefit to the combination on that basis. *Cf.* Appx27.

Moreover, the Board's assertion that Thelen lacks a "shared memory in which multiple processors can access the same consolidated models [*sic*] data in parallel" is refuted by the contentions of both parties, their experts, and Thelen itself. Appx62; Appx215, Appx233-34 (citing Appx2227, Fig. 4)); Appx3648-49; Appx947-48 (¶ 83); Appx3269 (¶ 56).

According to Apple's Petition, "*Thelen* teaches a 'storage 340' ***for storing the recognition models (including the lexicons)***" and "does ***not*** teach a *plurality* of lexical memories." Appx215 (emphasis partly added). There is thus only one memory in Thelen.

Apple's Petition further states: "The plurality of recognition models 341-348 (collectively comprising the mapped 'complete lexical data for word recognition') are stored in storage 340." Appx216. And the Petition adds: "*Thelen* expressly states its recognition models, which are formed of lexicon 134 and sub-word models 132, are 'loaded from a storage 340.'" Appx221 (quoting and citing Appx2227 (Fig. 3), Appx2231 (5:22-24), Appx2232 (7:30-34) and Appx940 (¶ 78)). Thelen's single memory is thus a shared memory.

The Petition adds that Thelen's speech recognizers are "connected in parallel" and "operat[e] in parallel." Appx225-26 (quoting Appx2232 (7:17-23)). Thelen thus teaches that its multiple processors (recognizers) can access the same model data in parallel.

The Petition further points to Thelen's Figure 4 and its associated disclosure as teaching consolidation of data by organizing recognition models into a hierarchy. Appx233 (Pet. 42) ("*Thelen* already teaches grouping recognition models according to the hierarchical association."); Appx234 (Pet. 43) ("*Thelen* already teaches grouping recognition models according to context."); Appx61-62. Thelen's model data is thus "consolidated."

Thus, contrary to the Board's finding, Thelen plainly discloses "a shared memory" (storage 340) from which "multiple processors" (recognizers 1-3 as shown in Thelen's Fig. 3) "can access the same consolidated models [*sic*] data in parallel" (recognition models 341-348, including lexicon 134 and sub-word models 132, which are consolidated by hierarchy as taught in Figure 4, and which operate in parallel). Substantial evidence thus cannot support the Board's finding of an "efficiency" benefit from the combination based on the false premise that in Thelen "there is no shared memory in which multiple processors can access the same consolidated models [*sic*] data in parallel." Appx27.

Substantial evidence likewise cannot support the Board's finding that Thelen's storage 340 is not a "shared memory" because "each of Thelen's recognizers only has access (indirectly via model selector 360) to the one particular model to which it has been assigned at any given time." Appx27-28 n.11.

This aspect of the Board's decision is self-contradictory. In the next footnote, the Board states that Apple's combination would ***not use*** model selector 360 because Apple relied on an embodiment "in which each recognizer is associated with an exclusive recognition model in a fixed one-to-one relationship," such that "there would have been no need to swap out models because the processors are already accessing all models in parallel." Appx28 n.12 (citing Appx Appx2232 (7:42-49)). Thus, model selector 360 cannot support the Board's finding that Thelen's storage 340 is not a shared memory.

Regardless, the Board's reasoning also rests on a false distinction: the combination would also ***only*** give each recognizer access to the model assigned to it, as in Thelen. Appx235; Appx3177-78 (125:8-126:5). And as the dissent explains, "model selector 360 does not change the fact that memory 340 contains the complete lexical data as conceded by Petitioner (Pet. 30), and that every recognition processor of Thelen obtains its lexical data from memory 340 as shown in Figure 3." Appx57 n. 15. Thelen's storage 340 is thus plainly a shared memory as defined by Chen. *Id.* (quoting Chen, Appx1020 (1:59-62), as teaching that "a

shared memory model" is one in which "data is stored in a common shared memory that is equally accessible to all processors in the parallel processing system,"—exactly as in Thelen).

Equally devoid of substantial evidence is the Board's further finding that the combination provides "more efficient control and processing because related recognition models (e.g., sub-context models within a context) may be assigned to a single cluster with multiple processors and processed together to allow for sharing of lexical data common to each of the recognition models." Appx30. As the dissent explains in detail, Thelen already provides the same functionality and is equally as efficient, or even more efficient, than the combination in this respect. Appx58-61. Specifically, Thelen already consolidates speech recognition for a particular context within a particular group of recognition processors that would share the same lexical memory. Appx59. In Thelen's embodiment where the number of recognition models equals the number of processors, each processor assigned, for instance, to the sports context would access the generic and specific sports model lexical data stored in Thelen's storage 340. Appx59. And in Thelen's embodiment where the number of processors is less than the number of models, the model selector shifts Thelen's processors to the particular context best suited for the recognition task at hand, again causing multiple processors to share common lexical data from related recognition models. Appx59-60. There is thus no

efficiency advantage to the combination on that basis. Appx58-61. At the same time, Thelen's unmodified system would not ***duplicate*** any data across multiple private memories, as the combination would require, and thus Thelen's unmodified system was ***more*** efficient overall. Appx60-61.

Accordingly, the Board's "efficiency" motivation lacks substantial evidence.

#### 2. The Board's "flexibility and scalability" motivation lacks substantial evidence

The Board's decision additionally rested on the purported motivation of "known flexibility and scalability of distributed processing systems in general." Appx28.

The Board's decision did not address Zentian's evidence, however, that the record did not support any finding of a "known flexibility and scalability" benefit as to distributed processing systems in general. Section I.B.3, *supra*; Appx24 (summarizing Zentian's argument without addressing its merits); Appx28 (summarily finding a general "flexibility and scalability" motivation in passing without analysis or discussion). As Zentian demonstrated through the admissions of Apple's expert, Apple's "flexibility and scalability" evidence was based entirely on two specific features particular to a single reference, Hon, *i.e.*, Hon's programmable pipeline (flexibility) and its ability to add more processors (scalability). Appx64; Appx3157-58 (105:8-106:4); Appx3272-73 (¶ 61); Appx3652-53; Appx3564, Appx3566. There was no evidence of a generalized

flexibility and scalability motivation for the combination. *Id.* Moreover, Apple never showed—and the Board never found—that Thelen itself was not already flexible and scalable in the same ways. Section I.B.3, *supra*; Appx28; Appx64; Appx3272-73 (¶ 61); Appx3652-53; Appx3564, Appx3566. There was thus no basis to find any advantage or benefit to the combination over Thelen with respect to flexibility or scalability.

"[A]n agency's refusal to consider evidence bearing on the issue before it is, by definition, arbitrary and capricious within the meaning of 5 U.S.C. § 706, which governs review of agency adjudications." *Aqua Products v. Matal*, 872 F.3d 1290, 1325-26 (Fed. Cir. 2017). "[S]ubstantial evidence review requires an examination of the record as a whole, taking into account both the evidence that justifies ***and detracts*** from an agency's opinion." *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1356 (Fed. Cir. 2018) (emphasis added). "The Board's selective weighing of the record evidence does not pass muster under the APA[.]" *Id.* at 1353.

The Board's conclusory finding of a generalized "flexibility and scalability" motivation, which did not address Zentian's directly contrary evidence refuting any such benefit, fails the test of substantial evidence review and is arbitrary and capricious. *See* Section I.B.3, *supra*; Appx3157-58 (105:8-106:4); Appx3272-73 (¶ 61); Appx3652-53; Appx3564, Appx3566; Appx64.

### 3. The Board's "decreased cost" motivation lacks substantial evidence

The Board's decision also found that the combination would have offered "decreased cost because off-the-shelf components may be used," and identified this as another "motivating consideration." Appx28.

But once again, the Board's finding as to "decreased cost" failed to address Zentian's extensive evidence refuting any cost-based motivation. *Compre* Appx28 *with* Section I.B.3, *supra*. Like Apple's expert, the Board's decision refers to "***decreased*** cost," but fails to state what the combination would cost ***less than***, i.e., "decreased cost" compared to what? Appx67; Appx3564 (citing Appx3094 (42:14-19), Appx3115 (63:8-15)); Appx3566. There was certainly no evidence the combination would have been cheaper than Thelen's system, or that Thelen's components would have been more expensive, and Apple did not even make any such contention. Appx67. Moreover, the Board's statement that "because off-the-shelf components may be used" does not provide a rationale for its finding, since Thelen itself teaches using conventional components throughout its disclosure. Appx67; Appx2231 (6:55-56), Appx2232 (7:23-24), Appx2233 (9:36-38).

Accordingly, the Board's conclusory finding of a "cost" motivation lacks substantial evidence.

### 4. The Board erroneously disregarded the combination's failure to achieve Thelen's goal of real time recognition

The Board found that the ordinary artisan would not have been dissuaded from pursuing Apple's combination despite its memory contention problems because of the "other motivating considerations" of flexibility and scalability, decreased cost, and added efficiency. Appx28.

But as demonstrated, substantial evidence cannot support any of the Board's "other motivation considerations." Section I.B.3, *supra*. Accordingly, the Board's finding as to the suitability and desirability of the combination despite the combination's inability to meet Thelen's real time recognition objective was erroneous.

The Board's finding that the ordinary artisan would have been able to "***minimize*** the effect of memory collisions" also cannot support its finding of a motivation to combine. Appx28 (emphasis added). The Board did not find, and could not find, that the ordinary artisan could have achieved the combination while maintaining Thelen's real time recognition speed, or even achieving near real time recognition. Appx28. Nor did the Board find that the resulting slow-down from the combination would have been immaterial or irrelevant to the ordinary artisan in assessing the combination's desirability and suitability. Appx28. Indeed, the Board's decision did not even address the evidence from Mathew I, which showed that a five-processor parallel processing speech recognition was slower than a two-

processor one due to increased synchronization overhead. *See* Section I.B.3, *supra*; Appx73; Appx3647-48; Appx3267-68 (¶¶ 50-55); Appx3545, Appx3561-62, Appx3563; Appx3327. The Board's reference to "minimizing the effect of memory collisions" ignored the separate problem of high synchronization overhead, and the latency consequences of that problem, as taught in Mathew I. Moreover, "minimizing" the effect of memory collisions does not equate to *eliminating* their effect, or to the conclusion that the combination's speech recognition would not have been materially slower than Thelen alone. For instance, a trader may "minimize the effect" of a market crash by "only" losing 30% of his assets, but that loss would still be highly significant.

Accordingly, the Board committed reversible error in finding a motivation to combine in the face of Zentian's extensive evidence that the combination would have been slower than Thelen to a degree that would have rendered it unsuitable and undesirable for the ordinary artisan. Appx3639-43, Appx3650-52; Appx3545, Appx3560, Appx3564; Appx3263-66, Appx3270-72; Appx3206-07 (154:8-155:17) (Apple's expert admitting that "the task most described in Thelen is dictation" and that if a dictation system had recognition latency, "usability would be pretty low."); Appx3647-48; Appx3267-68 (¶¶ 50-55); Appx3545, Appx3561-62, Appx3563; Appx3327.

### 5. The Board erroneously disregarded the combination's need for substantial reprogramming

The Board did not disagree with Zentian that the combination would require substantial reprogramming. Appx30. Instead, the Board merely found that the programming required "would have been within the ordinary skill in the art at the time of the invention." Appx30. On that basis alone, the Board concluded that "***any*** need for substantial programming or reprogramming would not have dissuaded a person of ordinary skill in the art from" the combination. Appx30 (emphasis added).

The Board's logic does not follow. "[O]bviousness concerns whether a skilled artisan not only *could have made* but *would have been motivated to make* the combinations or modifications of prior art to arrive at the claimed invention." *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1073 (Fed. Cir. 2015). Here, the Board ignored Zentian's evidence that the combination would have required extensive reprogramming (or even programming), and the impact of that arduous task on the ordinary artisan's motivation to pursue the combination, based only on the Board's finding that the ordinary artisan *could have* performed the necessary programming within the level of skill.

That was error. The Board's finding in that respect is arbitrary, capricious, and an abuse of discretion that requires reversal of its ultimate finding of a motivation to combine. *Aqua Products*, 872 F.3d at 1325-26 ("[A]n agency's

refusal to consider evidence bearing on the issue before it is, by definition, arbitrary and capricious within the meaning of 5 U.S.C. § 706, which governs review of agency adjudications."); *Microsoft*, 789 F.3d at 1306 (a decision that is "clearly unreasonable, arbitrary, or fanciful" or that "rests on clearly erroneous fact finding" is an abuse of discretion).

#### 6. The Board's reliance on *Intel v. PACT XPP* does not support its finding of a motivation to combine on this record

The Board concluded that Apple's combination was motivated because it allegedly "would have addressed known problems using prior art elements according to their established functions." Appx30-31 (citing *Intel Corp. v. Pact XPP Schweiz AG*, 61 F. 4th 1373, 1380 (Fed. Cir. 2023)).

But as *Intel v. Pact XPP* itself reiterated, a finding of a motivation to combine requires substantial evidence that the ordinary artisan would have found the combination to be "a *suitable* option." *Id.* at 1380 (emphasis original). There can be no motivation to combine where the ordinary artisan would not find the combination ***suitable***, even if the combination merely relies on a known technique according to its established function. This Court has never held that there can be a motivation for a combination that the ordinary artisan would have found ***unsuitable*** or ***undesirable***.

Here, Zentian demonstrated that the ordinary artisan would not have found the combination suitable because it would preclude Thelen's goal of real time

recognition, would slow down Thelen's recognition speed significantly, would require significant reprogramming, would alter Thelen's single shared memory into a series of private memories that Chen itself teaches to be less desirable, and that would have required significant data duplication. Section I.B.1-2, *supra*. The Board's decision did not properly consider or address that evidence, and instead ignored it based on erroneous findings. There is no basis to conclude that the ordinary artisan would have found the combination "suitable," and the evidence only proves otherwise. *Intel v. Pact XPP* cannot support the Board's motivation finding under those facts.

Moreover, as Zentian explained below, the combination does not rely on a "known technique" or combine prior art elements "according to their established functions," and thus *Intel* cannot support the Board's motivation to combine finding for that additional reason. Appx3545, Appx3555-56. Chen is not a reference in the field of speech recognition, and provides no teaching as to using its processor clusters in the context of a speech recognition system. *Id.*; Appx3172-73 (120:19-121:2); Appx3257 (¶ 31). Neither Thelen nor Bailey provide any suggestion or teaching as to using a clustered processor to shared memory architecture like Chen's. Appx3188 (136:7-16); Appx3172 (120:14-17); Appx3171 (119:8-13). There was nothing "known" about utilizing Chen's complex clustered

processor architecture for a speech recognition system, and doing so was not consistent with the "established function" of Chen's clustered processor design. *Id.*

Accordingly, the Board's reliance on *Intel v. Pact XPP* was inapposite under these facts.

## CONCLUSION

Ultimately, Apple began with a system that functioned entirely as intended and without deficiency, and proposed numerous complex modifications that would have only made that system worse. Even Apple's own expert agreed that there can be no motivation to combine under such facts. Appx3215 (163:4-12); Appx3653.

> A. Well, it's always not desirable to complicate hardware or software when an existing hardware or software can perform adequately.

For the reasons above, this Court should reverse the Board's conclusion of obviousness as to all challenged claims of the '319 Patent. At a minimum, this Court should remand for a proper consideration of the evidence of record.

Respectfully submitted,

*<u>/s/ Kayvan B. Noroozi</u>*
Kayvan B. Noroozi
NOROOZI PC
11601 Wilshire Blvd., Ste. 2170
Los Angeles, CA 90025

Telephone: (310) 975-7074
Facsimile: (844) 975-7074

Nevin M. Gewertz
Katherine E. Rhoades
Jessica R. Bernhardt
BARTLIT BECK LLP
54 W. Hubbard, Suite 300
Chicago, IL 60654
(312) 494-4400

*Counsel for Appellant*

# ADDENDUM

*Final Written Decision in IPR2023-00033—Appx1*

*US Patent No. 7,587,319 (Ex.1001 in IPR2023-00033))—Appx77*

Trials@uspto.gov
571-272-7822

Paper 34
Date: June 11, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE PATENT TRIAL AND APPEAL BOARD

---

APPLE INC., AMAZON WEB SERVICES, INC., and
AMAZON.COM SERVICES LLC,
Petitioner,

v.

ZENTIAN LIMITED,
Patent Owner.

---

IPR2023-00033[1]
Patent 7,587,319 B2

---

Before KEVIN F. TURNER, JEFFREY S. SMITH, and CHRISTOPHER L. OGDEN, *Administrative Patent Judges*.

Opinion for the Board filed by *Administrative Patent Judge* OGDEN

Opinion dissenting filed by *Administrative Patent Judge* SMITH

OGDEN, *Administrative Patent Judge*.

JUDGMENT
Final Written Decision
Determining All Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

---

[1] IPR2023-01192 has been joined with this proceeding.

# I. INTRODUCTION

In response to a Petition (Paper 1, "Pet.") filed by Petitioner Apple Inc. ("Apple"), the Board instituted an *inter partes* review of claims 46–51, 53, 54, 58, 59, 64, and 67 of U.S. Patent No. 7,587,319 B2 (Ex. 1001, "the '319 patent"). Paper 10 ("Dec."). Patent Owner Zentian Limited ("Zentian") filed a Patent Owner Response (Paper 19; corrected version filed as Paper 31 ("PO Resp.")), Apple filed a Reply to the Patent Owner Response (Paper 22 ("Pet. Reply")), and Zentian filed a Sur-reply (Paper 27 ("PO Sur-reply")).

We held an oral hearing on March 11, 2024, and the transcript is entered into the record ("Tr."). Paper 33.

This is a final written decision under 35 U.S.C. § 318(a) as to whether the claims challenged in the *inter partes* review are unpatentable. For the reasons below, we conclude that Apple has shown that all the challenged claims are unpatentable.

# II. BACKGROUND

## A. Related Proceedings

As related matters, the parties identify *Zentian Ltd. v. Apple Inc.*, No. 6:22-cv-00122-ADA (W.D. Tex. filed Feb. 2, 2022) and *Zentian Ltd. v. Amazon.com*, No. 6:22-cv-00123-ADA (W.D. Tex. filed Feb. 2, 2022), as well as co-pending inter partes review proceedings IPR2023-00034 to -00037. Pet. 77; Paper 4, 1.

B. THE '319 PATENT (EX. 1001)

The '319 patent describes "a speech recognition circuit which uses parallel processors for processing the input speech data in parallel." Ex. 1001, 1:4–6. The processors analyze models of words having common prefix components, and store lexical data in a lexical memory. *Id.* at code (57). The processors are arranged in clusters, each with its own "partial lexical memory" for storing part of the lexical data. *See id.* at 2:64–3:7.

Figure 2, reproduced below, is a schematic diagram of the speech-recognition circuit.




Fig 2

As shown above in Figure 2, there is a feature vector buffer (middle left) for receiving a set of speech data as feature vectors. *See* Ex. 1001, 4:55–57. Clusters 22 (of which there are *N*), each having *k* lexical tree processors 21 (and thus *N*×*k* total processors) read the feature vectors from feature vector

bus 26, process the feature vectors, and store the resulting lexical data in an acoustic model memory (23) that is part of each cluster. *Id.* at 4:65–5:13. "[A]coustic model memories 23 store as a whole a complete set of lexical data, i.e. lexical tree data structures for use in the lexical tree processing by the lexical tree processors 21," and "[e]ach acoustic model memory 23 contains part or a segment of the lexical tree data." *Id.* at 5:6–10. For each cluster 22, "lexical tree processors 21 . . . access the same acoustic model memory 23." *Id.* at 5:10–12.

### C. CHALLENGED CLAIMS AND GROUNDS

Claim 46, the sole challenged independent claim, is as follows:

46. A speech recognition circuit comprising:

[a] an input buffer receiving processed speech parameters;

[b] a plurality of lexical memories containing in combination complete lexical data for word recognition, each lexical memory containing part of said complete lexical data;

[c] a plurality of processors connected in parallel to said input buffer for processing the speech parameters in parallel,

[d] said processors being arranged in groups of processors, each group of processors being connected to a lexical memory;

[e] a control processor controlling each processor to process said speech parameters using partial lexical data read from a respective said lexical memory; and

[f] a results memory storing the results of the processing of the speech parameters from said processors.

Ex. 1001, 15:55–16:2 (Apple's reference numbers added).

Apple argues four grounds for *inter partes* review, as summarized in the following table:

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 46, 50, 54, 64, 67 | 103(a)[2] | Thelen,[3] Bailey,[4] Chen[5] |
| 47–49 | 103(a) | Thelen, Bailey, Chen, Huang[6] |
| 53, 58, 59 | 103(a) | Thelen, Bailey, Chen, Jiang[7] |
| 51 | 103(a) | Thelen, Bailey, Chen, Katz[8] |

Pet. 6.

### D. Expert Testimony

As expert testimony, Apple submits a declaration by Christopher Schmandt. Ex. 1003. Zentian also submits an expert declaration by Dr. David Anderson. Ex. 2020.

Zentian does not challenge Mr. Schmandt's qualification to provide expert testimony, or the admissibility of that testimony. *See* PO Sur-reply 13 ("[T]he issue here is not admissibility but rather credibility."). Likewise, Apple does not challenge Dr. Anderson's expert qualification or the admissibility of his testimony. *See* Pet. Reply. Neither party has submitted a motion to exclude any evidence.

---

[2] 35 U.S.C. § 103(a) (2006), *amended by* Leahy–Smith America Invents Act, Pub. L. No. 112-29 § 103, sec. (n)(1), 125 Stat. 284, 287, 293 (2011) (effective Mar. 16, 2013). This version of § 103 applies because the '319 patent issued from an international application filed on February 4, 2003, which is before the effective date of the AIA amendments. *See* Ex. 1001, code (22).

[3] Thelen et al., US 6,526,380 B1 (issued Feb. 25, 2003) (Ex. 1030).

[4] Bailey et al., US 5,459,798 (issued Oct. 17, 1995) (Ex. 1031).

[5] Chen et al., US 5,428,803 (issued June 27, 1995) (Ex. 1005).

[6] Huang et al., US 6,076,056 (issued June 13, 2000) (Ex. 1034).

[7] Jiang, US 6,374,219 B1 (issued Apr. 16, 2002) (Ex. 1004).

[8] Katz, US 4,831,550 (issued May 16, 1989) (Ex. 1035).

Zentian does, however, argue that Mr. Schmandt's expert testimony is entitled to little credit because he, himself, has "*never* built the processor to memory architecture of *any* speech recognition system identified in his declaration." PO Resp. 10–12 (citing Ex. 2017, 32:3–9, 34:24–35:5, 106:10–23; Ex. 1003 ¶ 84); PO Sur-reply 13.

Apple responds that Mr. Schmandt's credibility does not depend on whether he has built or supervised building the claimed invention because he is a qualified expert, is at least a person of ordinary skill in the art, and has the necessary technical experience in the field to opine on the subject matter of his declaration. Pet. Reply 6–7. According to Apple, Mr. Schmandt has taken "courses covering multiprocessor architectures, parallelism, concurrency, and memory contention," has "co-authored a paper in 1993 on hardware architectures for speech recognition," and "authored a textbook including a chapter . . . discussing the various computer architectures for speech recognition." *Id.* at 7–8 (citing Ex. 1003 ¶¶ 109, 113; Ex. 1012, 9).

We agree, for the reasons Apple has argued, that Mr. Schmandt's education and experience are sufficient to provide credible testimony on the subject matter of his declaration, including computer architectures for speech recognition.

## III. GROUNDS OF THE PETITION

For the reasons below, we determine that Apple has shown, by a preponderance of the evidence, that claims 46–51, 53, 54, 58, 59, 64, and 67 of the '319 patent are unpatentable as obvious.

### A. LEVEL OF ORDINARY SKILL IN THE ART

The level of ordinary skill in the pertinent art at the time of the invention is a factor in how we construe patent claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). It is also one of the factors we consider when determining whether a patent claim is obvious over the prior art. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

To assess the level of ordinary skill, we construct a hypothetical "person of ordinary skill in the art," from whose vantage point we assess obviousness and claim interpretation. *See In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998). This legal construct "presumes that all prior art references in the field of the invention are available to this hypothetical skilled artisan." *Id.* (citing *In re Carlson*, 983 F.2d 1032, 1038 (Fed. Cir. 1993)).

Relying on Mr. Schmandt's testimony, Apple argues that a person of ordinary skill in the art would have had "a master's degree in computer engineering, computer science, electrical engineering, or a related field, with . . . two years of experience in the field of speech recognition, or a bachelor's degree in the same fields with . . . four years of experience in the field of speech recognition." Pet. 5 (citing Ex. 1003 ¶¶ 24–26).

Zentian does not contest Apple's proposed definition of the level of ordinary skill. PO Resp. 5; *see also* Pet. Reply 5–6 (citing Ex. 2017, 9:20–13:4). Zentian also acknowledges that such a person of ordinary skill would have had knowledge more generally "in the area of digital signal processing (DSP)." PO. Resp. 16 (citing Ex. 2020 ¶ 39). However, Zentian contends that "a specialist in speech recognition . . . would not also be expected to have specialized in parallel processing architectures and methods or high performance computing in addition to speech recognition." *Id.* at 5–6, 16

(citing Ex. 2020 ¶¶ 17–19, 39); *see also* PO Sur-reply 3 (citing Ex. 2020 ¶ 39).

As evidence of this, Zentian argues that, although its expert Dr. Anderson exceeds the uncontested level of ordinary skill in the art as an expert in speech recognition, he, along with a team of engineers and a DSP expert from Texas Instruments, could not successfully implement a custom computer vision application within a particular multi-processor system supplied by Texas Instruments. PO Resp. 16–17 (citing Ex. 2020 ¶¶ 40–41); PO Sur-reply 5, 12–13 (citing Ex. 2020 ¶¶ 40–41). Zentian also argues that "Dr. Anderson has never taught a course that would have equipped a masters-level student in speech recognition to apply a parallel processing architecture . . . to known speech recognition techniques." PO Resp. 6 (citing Ex. 2020 ¶ 19).

Apple counters that Dr. Anderson's personal alleged lack of experience or skill in parallel processing is not relevant to the level of ordinary skill, as "[p]erhaps Dr. Anderson simply did not have the necessary skills to lead a parallel processing project in an unrelated field." Pet. Reply 8. Apple also argues that, although a person of ordinary skill need not have "specialized" in parallel processing architectures or high-performance computing, there is evidence in the cited art that an ordinarily skilled artisan "would have been knowledgeable in both high performance computing and parallel processing." *Id.* at 9. For example, Apple argues that Thelen and Bailey, which are in the field of speech recognition, are "directed to parallel processing architectures." *Id.* at 10 (citing Ex. 1030, code (57); Ex. 1031, code (57)); Pet. 7 (arguing that Thelen and Bailey are speech-recognition references).

Because a person of ordinary skill in the art is a hypothetical person, we agree with Apple that Dr. Anderson's inability to implement a particular computer vision application within the constraints of a particular Texas Instruments parallel-processing environment does not mean that more general knowledge and skill in parallel processing would have been beyond the level of ordinary skill. To the contrary, the evidence of record suggests that a person of ordinary skill in the art at the time of the claimed invention, who, for example, had a master's degree and two years of experience in the field of speech recognition, would have also had knowledge and experience with parallel processing.

For example, the '319 patent asserts that, at the time of the claimed invention, parallel processing had already been explored "to speed up the processing performed during . . . a search in a speech recognition system." Ex. 1001, 1:30–43. The '319 patent characterizes the claimed invention as an "improved circuit" that can perform such "parallel processing of speech parameters." *Id.* at 1:44–46.

Also, we find persuasive Apple's argument that Thelen and Bailey present problems and solutions within the speech-processing field involving parallel processing architectures. Ex. 1030, 2:38–39 ("[U]sing parallel speech recognition engines is known."); Ex. 1031, 5:31–35 (describing "a specially optimized multiprocessing hardware unit capable of performing, in parallel, a multitude of steps required for pattern recognition procedures"); *Best Med. Int'l, Inc. v. Elekta Inc.*, 46 F.4th 1346, 1353 (Fed. Cir. 2022) (The "type of problems encountered in the art" and "prior art solutions to those problems" are "factors that may guide the fact finder in finding the appropriate level of skill in the art.").

We have considered Dr. Anderson's opinion that a "person of ordinary skill would not also be expected to have *specialized* in parallel processing architectures and methods or high performance computing *in addition to* speech recognition." Ex. 2020 ¶ 18 (emphasis added). But we find this of little relevance, because the evidence of record indicates that the use of parallel-processing techniques were *an aspect of* the speech recognition field at the time of the claimed invention. Thus, a person of ordinary skill would have had at least the background necessary to apply parallel processing to a search in a speech recognition system as mentioned in the background section of the '319 patent (Ex. 1001, 1:30–43), or to perform speech-recognition tasks in parallel using separate speech recognition engines or processors as in Thelen and Bailey (Ex. 1030, 2:30–33; Ex. 1031, 5:31–35).

Thus, we adopt Apple's uncontested definition of the level of ordinary skill in the art as a master's degree in computer engineering, computer science, electrical engineering, or a related field, with two years of experience in the field of speech recognition, or a bachelor's degree in the same fields with four years of experience in the field of speech recognition. We also find that this level or ordinary skill would have included education and experience necessary to apply speech-recognition techniques in a parallel-processing environment.

### B. CLAIM CONSTRUCTION

In an *inter partes* review, we construe a patent claim "using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b)." 37 C.F.R. § 42.100(b) (2023). This generally includes "construing the claim in accordance with the ordinary and

customary meaning of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent." *Id.* The ordinary and customary meaning of a claim term "is its meaning to the ordinary artisan after reading the entire patent," and "as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313, 1321. There are only two circumstances in which a construction departs from the ordinary and customary meaning: "1) when a patentee sets out a definition and acts as [their] own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Any such special meaning of a term "must be sufficiently clear in the specification that any departure from common usage would be so understood by a person of experience in the field of the invention." *Multiform Desiccants Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998).

To construe the claim terms, "we look principally to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006).

Apple states that it "applies the plain and ordinary meaning of all claim terms," and does not propose any explicit constructions. *See* Pet. 7. Likewise, Zentian does not propose any explicit constructions. *See* PO Resp.

We do not find it necessary to explicitly construe any terms for this decision. To the extent that we need to interpret claim language, we address that language below in the context of the prior art. *See Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) ("[W]e need only construe terms 'that are in controversy, and only to the

extent necessary to resolve the controversy' . . . ." (quoting *Vivid Techs., Inc. v. Am. Sci & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999))).

### C. GROUNDS BASED ON THELEN, BAILEY AND CHEN (CLAIMS 46, 50, 54, 64, AND 67)

A claim is unpatentable under § 103 for obviousness "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103; *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).

We base our obviousness inquiry on factual considerations including (1) the scope and content of the prior art, (2) any differences between the claimed subject matter and the prior art, (3) the level of skill in the art, and (4) any objective indicia of obviousness or non-obviousness that may be in evidence. *See Graham*, 383 U.S. at 17–18.

Considering these factors,[9] we determine that Apple has shown, by a preponderance of the evidence, that claims 46, 50, 54, 64, and 67 are unpatentable under § 103(a) as obvious over Thelen in view of Bailey and Chen.

#### *1. Overview of Thelen*

Thelen describes "[a] huge vocabulary speech recognition system for recognizing a sequence of spoken words." Ex. 1030, code (57). Figure 3, reproduced below, is a block diagram of this system:

---

[9] Neither party presents evidence of objective indicia of obvious or non-obviousness, so no such evidence factors into our decision.




FIG. 3

The above figure depicts standalone system 300 with interconnection 310 and interface 320 for receiving a user's speech signal from, for example, a microphone or recording. Ex. 1030, 6:47–63. Spectral analysis subsystem (SAS) 335 processes the digital speech signal to produce a feature vector, which is fed to recognition system 330. *Id.* at 4:30–33, 6:63–66, 7:2–6.

Recognition system 330 "comprises a plurality of large vocabulary speech recognizers [331, 332, and 333], each being associated with a respective, different large vocabulary recognition model" that can be loaded from storage 340. Ex. 1030, 1:56–61, 6:66, 7:5–7, 7:34–35. "The recognizers may use the same algorithm, where the difference lies in the models being used, such as the vocabulary and the language model." *Id.* at 7:7–9. "The recognizers operate in 'parallel,' in the sense that they independently recognize the same speech input at almost the same moment.

This can be realized by using separate resources for each of the recognizers, such as a separate processor." *Id.* at 7:17–21.

Recognition models can be "hierarchically arranged from models with a more generic context to models with a more specific context." Ex. 1030, 8:54–56. For example, there could be a general "sport" model and also more specific models for "football, baseball, athletics, car racing, etc." *Id.* at 9:24–26. "[M]odel selector 360 is operative to enable recognition with a more specific model if recognition with a certain model obtains good recognition results," so that the "more specific model (i.e. hierarchically lower) may be used as a replacement for the more generic model." *Id.* at 9:8–12. Likewise, "[i]f recognition with a specific model at a certain moment gives low results, recognition is preferably continued with at least one model hierarchically above the specific model." *Id.* at 9:29–32.

*2. Overview of Bailey*

Bailey describes a pattern-recognition system, useful for voice recognition, that "includes a specially optimized multiprocessing hardware unit capable of performing, in parallel, a multitude of steps required for pattern recognition procedures." Ex. 1031, 5:27–34. Figures 3A and 3B, reproduced below, are block diagrams depicting two embodiments of this system:




FIG. 3A




FIG. 3B

As shown above, the pattern-recognition system in each of Figures 3A and 3B includes CPU 510, memory 512, and input pattern block 522 coupled to host communication bus 100. Ex. 1031, 11:11–14. Input pattern block 522 obtains a voice sample from a microphone. *Id.* at 11:17–20. Also connected

to bus 100 are a "number of [pattern recognition] engines, 525*a* to 525*c*, each independently coupled to . . . bus 100." *Id.* at 11:20–22. In Figure 3A, each of pattern recognition engines 525*a*–525*c* is also "interfaced with its own private memory 615*a*–615*c*." *Id.* at 11:1–3. Alternatively, pattern recognition engines 525*a*–525*c* may share common memory 615 as shown in Figure 3B. *Id.* at 11:3–4.

*3. Overview of Chen*

Chen is directed to "parallel processing computer systems for performing multiple-instruction-multiple-data (MIMD) parallel processing." Ex. 1005, 1:29–31. Chen organizes the MIMD multiprocessors into four or more physically separable clusters, each of which can uses a shared memory. *Id.* at 1:32–43.

Figure 4, reproduced below, is a block diagram of Chen's system:




Fig. 4

Figure 4 depicts four clusters 100*a–d*, each with processors 102*a–d* and cluster shared memory 104*a–d*, where the clusters may be connected together in various shared or distributed memory configurations. Ex. 1005, 9:20–56. In particular, "[a] true shared memory model with symmetrical access to a common shared memory 104*a* is provided for all processors 102*a* in cluster 100*a*." *Id.* at 9:46–48.

Chen teaches that this configuration can effectively use "many different types of processors," such as commercially available "single chip

microprocessors" and memory, or alternatively, the system can be created by retrofitting "existing shared memory and extended shared memory multiprocessor systems." Ex. 1005, 10:14–25.

#### *4. Independent Claim 46*

##### (a) Preamble and Limitations 46(a)–(c)

The preamble of claim 46 and limitation 46(a) recite "[a] speech recognition circuit comprising: an input buffer receiving processed speech parameters." Ex. 1001, 15:55–56.

"To the extent the preamble is limiting," Apple contends that Thelen "teaches or at least renders obvious a speech recognition circuit, as claimed" because it "teaches a speech recognition apparatus including a microphone, A/D converter, and processors." Pet. 9–11 (citing Ex. 1030, code (57), 1:5–12, 2:30–37, 6:46–66, 7:20–26, Fig. 3; Ex. 1003 ¶¶ 68–69).

For limitation 46(a), Apple contends that Thelen's recognition system 330 receives "observation vectors" from spectral analysis subsystem 335 which correspond to the recited "processed speech parameters." *See* Pet. 12–16 (citing Ex. 1030, 4:29–43, 4:66–5:2, 6:53–7:7, 7:17–29, Figs. 1, 3; Ex. 1003 ¶¶ 70–75). Apple concedes that "*Thelen* does not expressly recite an 'input buffer'" that received the processed speech parameters, but according to Apple, Bailey's RAM 512 would constitute the recited buffer. Pet. 17. In particular, Apple points to Bailey's teaching that an "unknown input *pattern* may be *temporarily stored* in memory array 512" which, Apple contends, would suggest to a person of ordinary skill in the art that RAM 512 is acting as an input buffer. Pet. 19 (quoting Ex. 1031, 11:16–17) (citing Ex. 1003 ¶ 72). According to Apple, there would have been motivation to

incorporate Bailey's input buffer into Thelen's system because such input "[b]uffers were well-known, inexpensive, and easy-to-implement solutions to improve system efficiency." Pet. 21 (citing Ex. 1003 ¶ 74).

Limitation 46(b) recites "a plurality of lexical memories containing in combination complete lexical data for word recognition, each lexical memory containing part of said complete lexical data." Ex. 1001, 15:57–59. According to Apple, Thelen describes dividing a huge vocabulary (corresponding to the "complete lexical data for word recognition") into separate recognition models, each of which contains only part of the complete lexical data. *See* Pet. 23–30 (citing Ex. 1030, code (57), 1:5–12, 1:53–2:33, 5:14–45, 5:49–52, 6:12–39, 7:17–23, 7:30–52, 8:1–5, 8:54–59, Figs. 1, 3; Ex. 1003 ¶¶ 76–78).

Apple argues that Thelen "does not expressly teach that each of its recognition models and associated lexicons (the mapped 'parts' of said complete lexical data) are stored in a plurality of lexical memories." Pet. 30–31. But according to Apple, Thelen "envisions [that] each recognizer (including its processing resources, such as processors and memory) may be associated with an exclusive recognition model in a 'fixed one-to-one relationship.'" Pet. 31 (citing Ex. 1030, 2:30–33, 7:42–49; Ex. 1003 ¶ 78). Apple also points to Bailey's Figure 3A embodiment, in which each parallel processor explicitly has its own memory. Pet. 30–32 (citing Ex. 1031, code (57), 1:16–20, 2:62–66, 10:18–11:44, 13:25–51, Fig. 3A; Ex. 1003 ¶ 79).

Limitation 46(c) recites "a plurality of processors connected in parallel to said input buffer for processing the speech parameters in parallel." Ex. 1001, 15:60–61. Apple identifies the recited processors with Thelen's recognizers 331–333 and argues that they are designed to process

the speech input in parallel, and that in the Thelen–Bailey combination they would be connected to the input buffer. *See* Pet. 33–38 (citing Ex. 1030, 2:30–37, 2:38–40, 7:2–7, 7:6–9, 7:17–23, 7:26–29, Figs. 2, 3; Ex. 1031, 3:60–4:1, 9:36–41, 11:9–29, 13:25–51, 14:15–29, Figs. 2, 3A; Ex. 1003 ¶¶ 81–82).

Zentian does not specifically contest that Thelen and Bailey teach the preamble and limitations 46(a)–(c), or that there would have been a motivation to combine Thelen and Bailey as per these limitations. *See* PO Resp. Because the evidence of record shows that Thelen teaches a speech recognition circuit (*see, e.g.*, Ex. 1030, Fig. 3 (system 300), 6:46–49 (stating that system 300 "preferably is implemented on a computer, such as a PC")), we need not decide whether the preamble is limiting.

We also find Apple's arguments persuasive that a person of ordinary skill in the art would have had reason to use an input buffer as per limitation 46(a), such as that exemplified in Bailey, to improve efficiency in processing a speech input, and that Thelen's recognizers 331–333 would have been connected to that input buffer to process the input in parallel, as per limitation 46(c).

Finally, we find persuasive Apple's arguments that Thelen and Bailey teach that the lexical memories contain, in combination, a complete set of lexical data as per limitation 46(b).

(b) <u>Limitation 46(d)</u>

Limitation 46(d) requires "said processors being arranged in groups of processors, each group of processors being connected to a lexical memory." *Id.* at 15:62–64. We address Apple's contentions for this limitation below, along with Zentian's responsive arguments.

*(1) Apple's Proposed Combination and Motivation to Combine*

For limitation 1(d), Apple relies on the modifying Thelen–Bailey in view of Chen.

Apple relies on Chen for teaching the arrangement of processors into groups, each group having its own shared memory. *See* Pet. 38–46.[10] According to Apple, Chen teaches arranging the processing resources into clusters 100*a–d*, each comprising multiple processors 102*a–d* and shared memory 104*a–d*. Pet. 38–40 (citing Ex. 1005, 5:9–17, 6:17–21, 9:5–43, 10:14–35, Figs. 4, 5A, 6A–B; Ex. 1003 ¶ 83). In the proposed combination, "*Chen's* groups (clusters) of processors provid[e] the same functionality" as the single processors in Thelen–Bailey. Ex. 1003 ¶ 84.

Apple concedes that Chen "does not specifically teach a 'lexical' memory," but proposes a modification of the Thelen–Bailey combination in which "each group of processors (embodied in recognizers) includes a memory, where the memory is a *lexical* memory as already taught by *Thelen–Bailey*." Pet. 40. According to Apple, a person of ordinary skill in the art would have made this combination "for the purpose of associating the generic and specific contexts (e.g., all sports contexts) together in a group for efficient word recognition" which would "store all similar contexts on a lexical memory connected to the group of recognizers directed to those contexts." Pet. 40–41 (citing Ex. 1030, 7:17–58, 8:1–3, 8:6–8, 8:54–9:32; Ex. 1031, Figs. 3A–B; Ex. 1003 ¶¶ 80, 84–85).

---

[10] Apple also notes that Bailey's Figure 3B embodiment suggests "connecting a group of recognition engines with a lexical memory." Pet. 40; *see also* Pet. 32–33 (citing Ex. 1031, 11:1–4, Fig. 3B); Ex. 1003 ¶ 83.

Apple contends that Thelen already teaches dividing lexical data into a hierarchy of topics where "each recognizer is associated with one recognition model at a time," and according to Apple, where multiple processors are assigned to similar subcontexts (e.g., multiple "sports" subcontexts), it would have been a logical extension that each such processor would have access to a shared memory "to facilitate more efficient control and processing." Pet. 42–44 (citing Ex. 1005, code (57); Ex. 1030, 7:30–34, 8:54–56, 8:62–9:11, Fig. 4; Ex. 1003 ¶ 84).

In other words, "[i]t would have been a common[-]sense extension of *Thelen's* grouped, hierarchical recognition models to similarly group the recognizers (per *Chen*), where each recognizer is associated with a recognition model (per *Thelen*), and each group of recognizers (and associated processors) is connected to a lexical memory, per *Bailey*." Pet. 44 (citing Ex. 1003 ¶ 84). Apple argues that this grouping "would have yielded the predictable result of consolidating speech recognition for a particular context within a particular group of recognition processors" and "would have more efficiently allowed for sharing of lexical data common to each of the recognition models." *Id.* (citing Ex. 1003 ¶ 84).

Apple also contends that grouping the processors with shared memory in this way "would have yielded the predictable result of reducing the time required to recognize a user's speech, desirably speeding the system's response." Pet. 44 (citing Ex. 1003 ¶ 85). Apple argues that Thelen recognizes the importance, in real-time speech processing, "'that no significant delay occurs' between a word being received in the system and recognizing the word," and would have "simply substituted" Chen's "more

efficient processing architecture" for the Thelen–Bailey recognizers. Pet. 44–45 (quoting Ex. 1030, 7:27) (citing Ex. 1030, 7:20–26; Ex. 1003 ¶ 85).

In its Response, Zentian first argues that Apple's proposed motivation to modify Thelen to increase recognition speed "assumes that the clustered processor and memory arrangement of Chen would have necessarily improved the speed and power of Thelen's speech recognition," but that Apple has provided no analysis to why that would have been the case, or how much of a speed gain there would have been. *Id.* at 22–23; *see also* PO Sur-reply 18–19 (citing Ex. 2017, 137:21–138:24, 141:23–142:2, 144:22–145:3). And according to Zentian, the proposed modification would not actually have added processors to Thelen's system. *Id.* at 23–24 (citing Ex. 2017, 130:23–131:4, 131:11–22, 136:3–6).

Zentian also argues that in another particular multiprocessing speech recognition system contemporary to the claimed invention, increasing the number of processors did not speed up the search stage of speech recognition, so knowing about this system, a person of ordinary skill in the art would not have expected that increasing the number of processors would lead to an improvement. PO Resp. 25–26 (citing Ex. 2021, 11; Ex. 2020 ¶¶ 52–55).

In addition, Zentian argues that using Chen's hardware to run Thelen's recognition system would have resulted in memory collisions, and an ordinarily skilled artisan would have expected this to slow things down, thus nullifying Apple's proposed motivation that the combination would increase the processing speed. PO Resp. 28–30 (citing Ex. 1003 ¶¶ 83–84; Ex. 2017, 124:13–126:5, 155:7–17; Ex. 2020 ¶¶ 59–60).

And for Apple's argument that the combination would have increased flexibility and scalability, Zentian argues that Apple has only shown an increase in flexibility and scalability for one particular prior-art system, and this does not provide any general motivation that would have been applicable to increasing flexibility and scalability in the Thelen–Bailey combination. PO Resp. 30–31 (citing Ex. 1003 ¶¶ 71–72; Ex. 2017, 105:8–106:4; Ex. 2020 ¶ 61); PO Sur-reply 23 (reiterating the argument). Zentian contends that Thelen was already flexible, scalable, and performing adequately, so there would have been no motivation to complicate that system by adding features of Bailey or Chen. PO Resp. 31 (citing Ex. 2017, 163:4–12; Ex. 2020 ¶ 62).

Apple counters that Zentian never explains why memory collision problems or slower processing "would [have been] present in the [Thelen–Bailey–Chen] combination but not the clustered-processor speech recognition system of Claim 46, nor does Zentian acknowledge that the claims do not recite real-time recognition." Pet. Reply 14. Apple contends that a person of ordinary skill in the art would not have thoughtlessly added processors to the system, but would have exercised ordinary skill to address memory and speed issues that were well-known at the time of the claimed invention. *Id.*; *see also id.* at 18 (arguing that tradeoffs between advantages and disadvantages do not obviate a motivation to combine (citing Ex. 1003 ¶ 84; *Allied Erecting and Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016))).

Apple also argues that Chen includes substantial guidance about balancing the tradeoffs of parallel processing and memory access. Pet. Reply 15 (citing Ex. 1005, 5:47–53, 14:39–18:42). According to Apple, Chen

teaches that there can be a speedup when there are multiple processors in each cluster simultaneously performing word recognition on a specific part of the lexical data, and indicates that parallel processing can be implemented such that tradeoff is "balanced at the point at which the performance of inter-cluster memory access start to significantly degrade." *Id.* at 15–16 (quoting Ex. 1005, 5:51–53) (citing Ex. 1005, 5:47–53, 14:39–18:42; Ex. 1003 ¶¶ 81, 84–85).

Apple argues that this would have indicated to one of skill in the art that one would not have to sacrifice performance within a *single* cluster, given that memory access within a cluster is faster than memory access between clusters. Pet. Reply 16–17 (citing Ex. 1005, 4:58–63, 5:33–41). According to Apple, Chen also teaches that its clustered architecture "*does not have to sacrifice performance* for the increased interconnection necessary to increase the size of the problem solution space provided by an extended shared memory model." *Id.* at 16 (quoting Ex. 1005, 5:36–40) (citing Ex. 1005, 2:24–29, 4:17–28, 4:44–49, 5:33–41, 8:42–47, 8:58–63).

Further, Apple argues that its burden of persuasion "does not require building the combination and testing its efficacy, or that the combination be optimal or preferred." Pet. Reply 22–23 (citing *In re Mouttet*, 686 F.3d 1322, 1332 (Fed. Cir. 2012); *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1381 (Fed. Cir. 2023); *In re Nievelt*, 482 F.2d 965, 968 (CCPA 1973); *Elekta Ltd. v. ZAP Surgical Sys., Inc.*, 81 F.4th 1368, 1374 (Fed. Cir. 2023)). Apple points to Mr. Schmandt's testimony that using Chen's cluster arrangement would have resulted in cost savings because it could have used commercially-available processors, and would have added flexibility and

scalability to the Thelen–Bailey design. *Id.* at 23 (citing Ex. 1006, 19–20; Ex. 1003 ¶¶ 58, 83–84).

Apple also contends that its proposed combination is not contingent on adding more processors to Thelen's design, but on a clustering arrangement that, among other things, increases processing power and cost savings due to reducing the duplication of lexical data, advantages that Apple contends are unrebutted in Zentian's Response. Pet. Reply 24–25 (citing Ex. 2017, 121:3–136:6, 137:2–20, 138:2–24, 140:8–141:14; Ex. 1003 ¶¶ 83–84).

Finally, Apple argues that, contrary to Zentian's characterization, Mr. Schmandt did not testify that it was *never* desirable to complicate an already-working speech recognition system with additional hardware. Pet. Reply 25 (citing PO Resp. 31; Ex. 2017, 163:4–12). According to Apple, Mr. Schmandt's testimony was in the context of a small-vocabulary recognizer, unlike the large-vocabulary systems addressed by the Thelen–Bailey–Chen combination. *Id.* at 25–26 (citing Ex. 2017, 163:4–164:22; Ex. 1030, 7:30–35; Ex. 1003 ¶ 84).

In its Sur-reply, Zentian argues that it has no burden to show why memory collision problems would have been present in the Thelen–Bailey–Chen combination but not in the '319 patent. PO Sur-reply 16. But according to Zentian, the '319 patent does not require the assignment of multiple sub-context models to the same processing cluster, and thus would have avoided the alleged problems associated with Apple's proposed combination. *Id.* at 16–17 (citing Ex. 1003 ¶ 83; Ex. 2017, 124:13–126:5; Ex. 2020 ¶¶ 43–48).

Zentian also points to the testimony of Dr. Anderson, and cross-examination admissions by Mr. Schmandt that allegedly show that using multiple processors within a single cluster would have resulted in a slowdown, not a speedup, because there would have been memory contention issues between processors in each cluster. *See* PO Sur-reply 19–22 (citing Ex. 2020 ¶¶ 44–46, 59–60; Ex. 2002 ¶¶ 53–55; Ex. 2017, 120:19–121:2, 130:23–131:4, 136:3–6, 155:7–17; Ex. 2021, 11; Ex. 2020 ¶¶ 51–53, 59–60, 62).

As to Apple's allegation that there would have been cost savings from using commercially available components in the proposed combination, Zentian argues that Mr. Schmandt "did not undertake any qualitative or quantitative cost-benefit analysis in reaching his opinions regarding a motivation to combine." PO Sur-reply 23 (citing Ex. 2017, 42:14–19, 63:8–15).

We find Apple's arguments persuasive notwithstanding Zentian's arguments to the contrary. We credit Mr. Schmandt's testimony that consolidating the overlapping data within similar lexical models (such as "sports" models like football or baseball) and storing the consolidated data in a shared memory that multiple processors may access in parallel would have resulted in memory and processing efficiency. Ex. 1003 ¶¶ 83–84. This would have been an improvement over Thelen, where each processor has access to only one, distinct lexical model at a time and there is no shared memory in which multiple processors can access the same consolidated models data in parallel. *See* Ex. 1030, 7:30–34.[11]

---

[11] The dissent characterizes Thelen's common storage 340 as a shared memory. However, each of Thelen's recognizers only has access (indirectly

The evidence of record suggests that the ordinarily skilled artisan would not have been dissuaded from the memory-efficiency benefits of modifying Thelen–Bailey by grouping processors and memory into clusters because memory collisions would have allegedly made recognition slower. Although memory collisions may have been an issue for the ordinarily skilled artisan to consider, Apple has persuasively shown that there are other motivating considerations, such as the known flexibility[12] and scalability of distributed processing systems in general, decreased cost because off-the-shelf components may be used, and the added efficiency of data sharing among related sub-context models. *See* Pet. 40–45.

Apple persuasively shows, and we find Mr. Schmandt's supporting testimony credible, that a skilled artisan would have expected to be able to minimize the effect of memory collisions based on Chen's teachings and the background knowledge in the art. *See* Pet. 14–19. For the same reasons, we do not find credible Dr. Anderson's testimony (*see, e.g.*, Ex. 2020 ¶¶ 44–46)

---

via model selector 360) to the one particular model to which it has been assigned at any given time. *See* Ex. 1030, 7:30–34.

[12] The dissent suggests that Apple's proposed combination is less flexible than Thelen because it removes Thelen's ability to swap a processor's lexical model for another model in the hierarchy. We disagree. Thelen describes two embodiments: one in which "each recognizer [is] associated with an exclusive recognition model in a fixed one-to-one relationship," and another in which there are "more models than active recognizers." Ex. 1030, 44–48; *see also id.* at 7:62–9:32. Apple's combination relies on the former embodiment, where there would have been no need to swap out models because the processors are already accessing all models in parallel. *See* Ex. 1003 ¶¶ 77 (citing Ex. 1030, 7:42–49), 79 (explaining that the combination includes a "1-to-1 relationship" between processors and recognition models), 80 (each processor in Thelen–Bailey independently recognizes speech in parallel).

that a person of ordinary skill in the art would not have been able to increase the number of processors within a cluster without resulting in a slowdown with respect that cluster or the system as a whole.

Next, Zentian argues that implementing Thelen's speech recognition techniques in Chen's architecture would have "require[d] *significant* reprogramming effort" because, as is necessarily the case with distributed memory models, processes and data must be partitioned into separate tasks that can fit in each local memory but still be large enough to compensate for the overhead involved in passing messages within the distributed environment. PO Resp. 26–27 (quoting Ex. 1005, 2:8–9) (citing Ex. 1005, 2:6–17; Ex. 1003 ¶ 77; Ex. 1030, 7:30–34, 5:22–24, Fig. 3; Ex. 2020 ¶ 56). Zentian contends that Apple has not addressed this issue, and that as a result of this issue, a person of ordinary skill in the art would have had no motivation to implement Thelen's recognition system using a cluster-based model. PO Resp. 27–28 (citing Ex. 2020 ¶¶ 57–58); *see also* PO Sur-reply 23–24 (reiterating the argument).

Apple responds that in building a speech recognizer, a person of ordinary skill in the art would have needed "to undertake reasonable programming efforts no matter the recognizer's architecture," so this would simply be *programming*, not *reprogramming*. Pet. Reply 20. And according to Apple, even if reprogramming were necessary, this "does not negate obviousness nor is finding the optimal approach required." *Id.* (citing *Elekta*, 81 F.4th at 1374). Apple also disputes Zentian's contention that the Thelen–Bailey–Chen combination would have required memory access between adjacent processing clusters, so any significant reprogramming effort to divide tasks between each cluster's memory would not have been necessary.

*Id.* at 20–22 (citing Ex. 1005, 1:56–62, 1:66–2:1, 2:6–9, 2:1–29, 5:20–25; Ex. 1004, 7:40–43; Ex. 1003 ¶¶ 75–76, 83).

We find Apple's arguments persuasive that programming the modified Thelen–Bailey–Chen system would have been within the ordinary skill in the art at the time of the claimed invention. *See infra* Section III.C.4(b)(2) (finding that a person of ordinary skill in the art would have been capable of addressing the complications of implementing Thelen–Bailey–Chen). Thus, any need for substantial programming or reprogramming would not have dissuaded a person of ordinary skill in the art from modifying Thelen–Bailey by grouping processors into clusters with shared memory.

Considering the evidence as a whole presented by both sides, we find Apple's arguments persuasive that a person of ordinary skill in the art would have had reason to modify Thelen–Bailey so that its parallel recognizers are grouped in clusters with shared memory in view of Chen. Apple has persuasively shown, for example, that there would have been a motivation to facilitate more efficient control and processing because related recognition models (e.g., sub-context models within a context) may be assigned to a single cluster with multiple processors and processed together to allow for sharing of lexical data common to each of the recognition models.

Moreover, Thelen and Bailey present particular arrangements of memory and processing elements to achieve the known benefits of parallel processing, such as reduced cost, efficiency, flexibility, and scalability. Chen simply presents an alternative parallel-processing arrangement of memory and processing elements that address the same known problems. Apple has persuasively shown that modifying Thelen–Bailey by grouping processors into clusters with shared memory would have addressed known problems

using prior art elements according to their established functions. *See Intel v. PACT*, 61 F.4th at 1380.

*(2) Reasonable Expectation of Success*

Apple argues that there would have been a reasonable expectation of success in modifying Thelen–Bailey according to Chen's teachings because this combination "would have only required arrangement of well-known memory components and relocation of lexical data already present in *Thelen*." Pet. 45–46 (citing Ex. 1030, 2:30–37, 7:2–9, 7:26–29; Ex. 1031, 10:62–65, 11:4–8, 51:21–26; Ex. 1003 ¶ 85).

In response, Zentian first argues that "Chen . . . is not a reference in the field of speech recognition," and "teaches nothing as to how to implement speech recognition techniques on its clustered parallel processing architecture, much less Thelen's speech recognition techniques." PO Resp. 8 (citing Ex. 2017, 120:19–121:2; Ex. 2020 ¶ 30). Zentian also contends that Thelen "does not teach how to run its speech recognition techniques on groups of clustered processors such as Chen's." *Id.* (citing Ex. 2017, 136:7–16; Ex. 2020 ¶ 31). According to Zentian, Apple and its expert Mr. Schmandt have not shown that, or how, a person of ordinary skill in the art would have been able to modify Thelen based on Chen's teachings. *Id.* at 8–9 (citing Ex. 2017, 137:21–138:24, 141:23–142:2, 144:3–20, 144:22–145:3). Zentian also argues that Mr. Schmandt's testimony is conclusory. *Id.* at 9–10 (citing Ex. 1003 ¶ 84; *TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1362–63 (Fed. Cir. 2019)).

Zentian also contends that modifying the Thelen–Bailey combination as Apple proposes would have been too complex for a person of ordinary skill in the art. PO Resp. 12 (citing Ex. 2020 ¶ 33). According to Zentian,

although Bailey teaches assigning each processor its own private memory (Fig. 3A), or alternatively assigning all processors to a shared memory (Fig. 3B), Bailey does not teach dividing processors into multiple groups, each with its own shared memory. *Id.* at 12–14 (citing Ex. 1031, 11:1–3, Figs. 3A, 3B; Ex. 1001, 3:50–54; Ex. 2017, 119:8–13; Ex. 2020 ¶¶ 33–37).

Zentian contends that grouping the processors, as Chen teaches, would have involved "avoiding memory conflicts, controlling task sharing in an efficient manner, addressing communication bandwidth and latency issues among the various hardware components, and developing a messaging strategy to coordinate information sharing between and within clusters," as well as "developing hardware and software for centralized control of the individual processors, memories, and clusters" and making a real-time speech recognition system "in the sense that no significant delay occurs" during word recognition, all of which were beyond the level of ordinary skill in the art. PO Resp. 15–18 (quoting Ex. 1003 ¶ 84) (citing Ex. 2020 ¶¶ 38–42); *id.* at 21–22 (citing Ex. 1003 ¶ 84; Ex. 2021, 11; Ex. 2020 ¶¶ 46–47); *see also* PO Sur-reply 1–5 (citing Ex. 2021, 11; Ex. 2017, 32:3–9, 34:24–35:5, 106:10–23, 120:8–18, 120:19–121:2, 124:13–125:7, 136:7–16, 137:21–138:24, 141:23–142:2, 144:3–20, 144:22–145:3, 145:20–24, 154:8–155:17; Ex. 2020 ¶¶ 17–19, 27, 30–31).

In particular, Zentian argues that there would have been memory-access problems with Apple's proposal to assign the models for each of Thelen's "contexts" and corresponding "sub-contexts" to a single cluster, along with the subset of vocabulary associated with each context and sub-context. PO Resp. 18–20 (citing Ex. 1003 ¶ 83; Ex. 1030, 9:24–26; Ex. 2017, 124:13–126:5; Ex. 2020 ¶¶ 41, 43). But according to Zentian, this

would have required the processors in each cluster to access multiple sets of model data simultaneously—one model for each sub-context—and this would have led to memory collisions, with the result that the combination could not have been expected to operate in real time. *Id.* at 20–21 (citing Ex. 2020 ¶¶ 44–45); *see also* PO Sur-reply 1–2, 4 (reiterating the same argument).

Apple counters that the ’319 patent, itself, does not teach any of the details that Zentian contends were beyond the level of ordinary skill in the art, such as avoiding memory collisions, controlling task sharing, dealing with bandwidth limitations, or reducing latency. Pet. Reply 2. This, according to Apple, suggests that the person of ordinary skill, who is the intended audience of the ’319 patent, would have been capable of selecting between known methods to implement the elements of the claimed invention. *Id.* at 2–4 (citing Ex. 1001, 3:50–54; *Uber Techs., Inc. v. X One, Inc.*, 957 F.3d 1334, 1339 (Fed. Cir. 2020); *In re Epstein*, 32 F.3d 1559, 1568 (Fed. Cir. 1994)).

Apple also contends that the challenged claims do not require solutions to Zentian’s proposed complications. Pet. Reply 4–5 (citing Ex. 2017, 23:6–25, 26:2–27:3, 27:9–28:2). And according to Apple, Zentian has only alleged generic complications, without pointing to specific implementation problems in the proposed combination. *Id.* at 5. Apple contends that it is under no obligation “to predict and proactively explain every unrecited and generic implementation detail” that could arise when “performing known speech recognition techniques on clustered processors.” *Id.* (citing *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1343 (Fed. Cir. 2020)).

Finally, Apple argues that at the time of the claimed invention, a person of ordinary skill in the art would have known of various speech-recognition hardware architectures, and would have been concerned with the alleged complicating issues that Zentian discusses, as "[s]peech recognition researchers recognized issues and tradeoffs of speed, accuracy, power, scalability, monetary cost, ease of building, flexibility, expandability, miniaturization, etc." Pet. Reply 10–11 (citing Ex. 1006, 6, 17–19; Ex. 2021, 17; Ex. 1007, 92, 111; Ex. 1012, 151–152); *id.* at 15–19 (arguing that Chen teaches that one may successfully address the tradeoff between parallel processing and memory access).

Zentian responds that Apple's argument assumes, without showing, that omissions in the '319 patent disclosure mean that the omitted material would have been within the level of ordinary skill at the time of the claimed invention, an assumption that amounts to an improper hindsight bias. PO Sur-reply 5–7 (citing *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1324 (Fed. Cir. 1999)). Zentian also distinguishes the '319 patent from the Thelen–Bailey–Chen combination because "the '319 Patent does not teach placing all of Thelen's sub-context models for a given context into the *same* single cluster memory," which would have resulted in "memory collisions that would [have] prevent[ed Apple]'s goal (and Thelen's teaching) of real time speech recognition." *Id.* at 7 (citing Ex. 1003 ¶ 83; Ex. 2017, 124:13–126:5; Ex. 2020 ¶¶ 43–45); *see also id.* at 11–14 (arguing that even knowledge of parallel architectures would have been insufficient to implement Apple's specific proposed combination with real-time performance).

We disagree with Zentian that, to show there was a reasonable expectation of success, Apple must show how the proposed combination would have overcome various alleged complications such as memory collisions, task sharing issues, bandwidth limitations, or latency. "The reasonable expectation of success requirement refers to the likelihood of success in combining references to meet the limitations of the *claimed invention*." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016) (emphasis added). The claimed invention includes no recitations about the number of memory collisions, how task sharing should occur, how bandwidth is addressed, or any maximum latency, so even if the combination of Thelen, Bailey, and Chen would have reasonably been expected to result in a high-latency, inefficient system, this would still have been a "success" in terms of how the '319 patent defines the claimed invention.

We also disagree with the argument in Zentian's Sur-reply that Apple must show that the proposed combination would have achieved real-time speech recognition because, otherwise, "the reasonable expectation of success inquiry would collapse into the question of whether the claims are enabled." PO Sur-reply 17–18 (citing Ex. 1003 ¶ 84; Ex. 2020 ¶ 42; Ex. 2017, 154:8–155:17; *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1360–61 (Fed. Cir. 2017) ("[I]f an ordinarily skilled artisan would not believe that a particular combination would have a reasonable expectation of 'anticipated success,' the combination may not be obvious.")). While the ability or inability of Apple's proposed combination to have achieved real-time performance may be relevant to the motivation to combine, whether there was a reasonable expectation of success is based on the limitations as

*claimed*, and the challenged claims include no requirement for real-time performance. *See Intelligent Bio-Sys.*, 821 F.3d at 1367. *Arctic Cat* does not suggest otherwise; in that case, the question was whether an ordinarily skilled artisan would have anticipated success for the proposed prior-art combination in meeting the key limitations of the *claimed invention*. *See* 876 F.3d at 1363–64.

We also agree with Apple that the ’319 patent’s silence as to how to implement an architecture that deals with these alleged complications is strong evidence that solving these problems would have been within the level of ordinary skill in the art. *Epstein*, 32 F.3d at 1568 (“[T]he Board's observation that appellant did not provide the type of detail in his specification that he now argues is necessary in prior art references supports the Board’s finding that one skilled in the art would have known how to implement the features of the references . . . .”). Zentian contends that *Epstein* is inapplicable because it addressed whether individual references were enabling rather than whether there was an expectation of success in combining the references. PO Sur-reply 9. But we do not consider that to be a meaningful distinction. In *Epstein*, as here, the question is what the patent applicant’s omission suggests about what a skilled artisan would have already known and could have implemented without further disclosure.

As we discuss above, we find that the level or ordinary skill would have included education and experience necessary to apply speech-recognition techniques in a parallel-processing environment. *See supra* Section III.A. The ’319 patent’s omission of detail about addressing Zentian’s alleged complications supports this understanding. Although we have considered Dr. Anderson’s testimony that addressing such

complications would have been beyond the level of ordinary skill (*see, e.g.*, Ex. 2020 ¶¶ 38–48), this opinion is premised on an understanding of the level of ordinary skill in the art that we do not find credible, based on the evidence of record. *See id.* ¶ 18.

*(3) Enablement of the Prior Art*

In its Response, Zentian argued that the prior art, as a whole, must enable a skilled artisan to make and use the claimed invention. PO Resp. 7 (citing *Raytheon Techs. Corp. v. GE*, 993 F.3d 1374, 1380–81 (Fed. Cir. 2021)). But as Apple correctly notes, Zentian "d[id] not raise a non-enablement argument nor provide a *Wands* factors analysis." Pet. Reply 12 (citing *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)).

Nevertheless, according to Apple, "*Chen* already teaches an operable clustered processor architecture; the combination simply requires utilizing the architecture for speech recognition according to *Thelen's* acoustic model hierarchy and employing *Bailey's* parallel speech recognizers." Pet. Reply 12–13; *see also id.* at 15 (arguing that Chen "is enabling for what it teaches, including a clustered computing system that balances the tradeoffs of parallel processing and memory access"). Apple argues that "Zentian's alleged complications are specific to a clustered processor architecture and would occur regardless of the type of information being processed (e.g., for speech recognition or other uses). *Chen* further directly envisions accounting for memory latency." *Id.* at 13.

In its Sur-reply, Zentian argues that Apple has not shown that Thelen, Bailey, and Chen enable the claimed invention, and that Chen, standing alone, does not enable using its architecture for speech recognition. PO Sur-reply 14–15 (citing Ex. 2017, 120:8–121:2, 136:7–16; Ex. 2020 ¶¶ 30–48; *In*

*re Antor Media Corp.*, 689 F.3d 1282, 1287–88 (Fed. Cir. 2012); *Raytheon*, 993 F.3d at 1380–81).

Although Zentian mentioned enablement as a general legal requirement in its Response, it did not specifically raise the issue with respect to the facts of this case, and also did not properly or sufficiently raise the issue in its Sur-reply. Thus, we find the argument untimely. *See* Paper 11, 10 (Scheduling Order warning that "any arguments for patentability not raised in the response may be deemed waived."); 37 C.F.R. § 42.23(b) ("A sur-reply may only respond to arguments raised in the corresponding reply . . . ."). In any event, we find Apple's arguments persuasive that the prior art references, as a whole, enable the claimed invention.

(c) Limitation 46(e) and 46(f)

Limitation 46(e) recites "a control processor controlling each processor to process said speech parameters using partial lexical data read from a respective said lexical memory." Ex. 1001, 15:65–67.

Apple associates the recited control processor with Thelen's "model selector 360 in combination with controller 350," and also Bailey's CPU 510. Pet. 46–49 (citing Ex. 1030, 7:50–61, 7:63–8:1, 8:36–41, 9:8–10, 10:20–24, Fig. 3; Ex. 1031, 9:5–39, 11:4–8, 11:23–34, 11:59–64, 12:12–25, 13:5–23, Figs. 3A–B; Ex. 1003 ¶¶ 86–87). Apple contends that it would have been obvious to modify the Thelen–Bailey–Chen system to include Bailey's CPU 510 for controlling the processors because it was well-known in the art to use a master processor to control a group of other processors. Pet. 50 (citing Ex. 1031, 12:2–11; Ex. 1003 ¶¶ 86–88).

Limitation 46(f) recites "a results memory storing the results of the processing of the speech parameters from said processors." Ex. 1001, 16:1–2.

Apple identifies the recited results memory with Bailey's RAM 512, and argues that a person of ordinary skill in the art would have been motivated to add such a results memory to Thelen because of a recognized need "to report outcomes of the comparisons." Pet. 51–54 (citing Ex. 1030, 7:50–58; Ex. 1031, 11:23–34, 11:42–59, 12:2–11, 12:41–61, Fig. 4; Ex. 1003 ¶¶ 89–91).

Zentian does not specifically contest these arguments for limitations 46(e) and (f). *See* PO Resp. We find Apple's arguments persuasive for the reasons outlined in the Petition, and determine that there would have been a reason to combine Thelen and Bailey in the manner Apple proposes for these limitations.

(d) Conclusion as to Claim 46

For all the above reasons, we find Apple's arguments sufficiently persuasive that the combination of Thelen, Bailey, and Chen teaches all the limitations of claim 46 and that a person of ordinary skill in the art at the time of the claimed invention would have had reason to combine the references as Apple proposes, with a reasonable expectation of success. Thus, we conclude that claim 46 is unpatentable under § 103(a) as obvious over the combination of Thelen, Bailey, and Chen.

*5. Claim 50*

Claim 50 depends from claim 46 and further recites "wherein each processor compares the processed speech parameters with the lexical data in

a corresponding lexical memory to identify words as a word recognition event and sends information identifying the identified words to said results memory as the processing results." Ex. 1001, 16:19–24.

Apple argues that in the Thelen–Bailey–Chen combination, each recognizer compares the received unknown input pattern (the "processed speech parameters") with the recognition model (the "lexical data") stored in a corresponding memory, and as Bailey teaches, sends the results to the system memory (the "results memory"). Pet. 54–55 (citing Ex. 1030, code (57), 7:50–52; Ex. 1031, 11:42–56, 12:41–61, 12:46–48, 15:41–45). Apple argues that a person of ordinary skill in the art would have recognized the interrupts that are generated after each recognizer completes its comparison as a signal to transfer results to the system memory, and would have been motivated to do so because there was a need in the modified system to indicate that the speech recognition is complete, and the use of interrupts were a well-known way of doing this. *Id.* at 55 (citing Ex. 1030, 7:50–58; Ex. 1031, 11:42–59, 12:41–61, 15:43–45; Ex. 1003 ¶¶ 92–93).

Apart from its general arguments that we have discussed above, Zentian makes no particular arguments for claim 50. For the reasons given above for claim 46 and the additional reasons articulated in the Petition for claim 50 (Pet. 54–55), we determine that Apple has shown by a preponderance of the evidence that claim 50 is unpatentable as obvious over Thelen in view of Bailey and Chen.

#### *6. Claim 54*

Claim 54 depends from claim 46 and further recites "wherein said processors process said speech parameters by comparing said speech

parameters with said lexical data or data derived from lexical data in respective said lexical memories." Ex. 1001, 16:37–41.

Apple argues that Thelen teaches matching observation vectors from the input speech (the "speech parameters") against a speech recognition unit which is part of the lexical data stored in each lexical memory. Pet. 56 (citing Ex. 1030, 5:2–52).

Apart from its general arguments that we have discussed above, Zentian makes no particular arguments for claim 54. For the reasons given above for claim 46 and the additional reasons articulated in the Petition for claim 54 (Pet. 56), we determine that Apple has shown by a preponderance of the evidence that claim 54 is unpatentable as obvious over Thelen in view of Bailey and Chen.

#### *7. Claim 64*

Claim 64 depends from claim 46 and further recites "wherein said input buffer is arranged to receive said speech parameters as feature vectors." Ex. 1001, 17:12–14.

Apple argues that Thelen's speech parameters are feature vectors, and that in the Thelen–Bailey–Chen combination, this would have been what the input buffer receives. Pet. 57 (citing Ex. 1030, 4:12–37; Ex. 1031, 9:1–39, Figs. 2, 3A).

Apart from its general arguments that we have discussed above, Zentian makes no particular arguments for claim 64. For the reasons given above for claim 46 and the additional reasons articulated in the Petition for claim 64 (Pet. 57), we determine that Apple has shown by a preponderance of the evidence that claim 64 is unpatentable as obvious over Thelen in view of Bailey and Chen.

*8. Claim 67*

Claim 67 depends from claim 46 and further recites "wherein said lexical memories store said lexical data as Hidden Markov Models, and each processor performs the Viterbi search algorithm using a respective part of said lexical data." Ex. 1001, 17:22–25.

Apple argues that Thelen teaches using a Hidden Markov Model and that Bailey specifically teaches using the Viterbi search algorithm. Pet. 57–58 (citing Ex. 1030, 5:27–42; Ex. 1031, 7:51–8:36, Fig. 1B; Ex. 1003 ¶ 94). Apple contends that a person of ordinary skill would have applied the Viterby algorithm using *each* lexical tree processor "to maximize the benefit gained and maintain consistency between the lexical tree processors," and each processor would only be acting on the lexical data to which is assigned. Pet. 58 (citing Ex. 1030, 5:29–31; Ex. 1003 ¶ 95).

Apart from its general arguments that we have discussed above, Zentian makes no particular arguments for claim 67. For the reasons given above for claim 46 and the additional reasons articulated in the Petition for claim 67 (Pet. 57–58), we determine that Apple has shown by a preponderance of the evidence that claim 67 is unpatentable as obvious over Thelen in view of Bailey and Chen.

D. GROUND BASED ON THELEN, BAILEY, CHEN, AND HUANG (CLAIMS 47–49)

For its second ground, Apple argues that claims 47–49 are unpatentable under § 103(a) as obvious over Thelen in view of Bailey, Chen, and Huang. Pet. 6, 59–67.

Claim 47 depends from claim 46 and further recites "wherein each lexical memory stores lexical data as at least one lexical tree data structure, each lexical tree data structure comprises a model of words having common prefix components, and an initial component of each lexical tree data structure is unique." Ex. 1001, 16:3–8.

Claim 48 depends from claim 47 and further recites "wherein each lexical memory stores said lexical tree data structure as an n phone model of words, where n is an integer, and said components comprise n phones." Ex. 1001, 16:9–12.

Claim 49 depends from claim 48 and further recites "wherein each lexical memory stores said lexical tree data structure as a mono phone model of words, and said lexical tree processors use said mono phone models to generate context depend[e]nt phone models of words dynamically for use in processing the speech parameters." Ex. 1001, 16:13–18.

Apple relies on its analysis for independent claim 46, which we discuss above, but argues that the Thelen–Bailey–Chen combination "does not . . . expressly teach structuring its lexical data in a lexical tree data structure." Pet. 59. For this, Apple relies on Huang, which teaches representing lexical data for speech recognition in the form of "a tree structure wherein all of the words likely to be encountered by the system are represented in the tree structure." Pet. 59–61 (quoting Ex. 1034, 2:35–37) (citing Ex. 1034, 2:31–58, 5:62–6:17, 7:21–52, 8:8–9, 10:16–33, 12:43–46, Figs. 1, 2; Ex. 1003 ¶ 96).

Apple argues that a person of ordinary skill in the art would have used Huang's tree structure in Thelen–Bailey–Chen to reduce the magnitude of

computation required for speech recognition. Pet. 61–62 (citing Ex. 1031, 11:9–34, Fig. 3A; Ex. 1007, 68; Ex. 1003 ¶¶ 96–97).

In particular, for claims 48 and 49, Apple contends that Huang teaches building a lexical tree as a "n phone model" in which n is 1, which is an integer (i.e., a "mono phone model"), and generating context-dependent phone models dynamically. Pet. 62–63, 65–66 (citing Ex. 1034, 2:53–61, 6:62–8:20, 8:24–25, 11:64–12:46, Fig. 9; Ex. 1001, 6:40–7:35, 9:7–16, 11:18–20; Ex. 1003 ¶¶ 98–99, 101–102). According to Apple, a person of ordinary skill would have been motivated to do this "to minimize the amount of memory required for storing the trees" and "to minimize the computational load with the benefit of increased accuracy provided by accounting for the preceding phone." Pet. 64, 66–67 (citing Ex. 1003 ¶¶ 99–100, 103–104).

Apart from its general arguments that we have discussed above, Zentian makes no particular arguments for claims 47–49. For the reasons given above for claim 46 and the additional reasons articulated in the Petition for claims 47–49 (Pet. 59–67), we determine that Apple has shown by a preponderance of the evidence that claims 47–49 are unpatentable as obvious over Thelen in view of Bailey, Chen, and Huang.

### E. GROUND BASED ON THELEN, BAILEY, CHEN, AND JIANG (CLAIMS 53, 58, AND 59)

For its third ground, Apple argues that claims 53, 58, and 59 are unpatentable under § 103(a) as obvious over Thelen in view of Bailey, Chen, and Jiang. Pet. 6, 68–72.

Claim 53 depends from claim 51 (reproduced infra Section III.F) and further recites "wherein each processor determines and outputs scores for

words in the processing results at word recognition events." Ex. 1001, 16:34–36.

Apple argues that Thelen and Bailey teach determining and outputting word scores from each recognizer, but Thelen–Bailey–Chen "does not expressly characterize this . . . process as a 'word recognition event.'" Pet. 68 (citing Ex. 1030, 7:50–58; Ex. 1031, 12:12–15, 12:53–61). Apple thus relies on Jiang which, according to Apple, also teaches determining and outputting word scores, but does so at "word boundaries," which Apple identifies as the recited "word recognition events." Pet. 68–70 (citing Ex. 1004, 1:19–2:15, 2:47–67, 4:8–12, 6:39–42, 7:34–38, 7:48–8:4, 8:16–9:42, Fig. 4; Ex. 1003 ¶ 105). Apple argues that a person of ordinary skill in the art would have been motivated to output scores at word boundaries, as Jiang teaches, because this "would have provided the control processor with data necessary to evaluate word hypotheses at an appropriate step in the process (i.e., at the end of words)." Pet. 69–70 (citing Ex. 1003 ¶ 106).

Claim 58 depends from claim 46 and further recites "wherein said processors determine and output scores in the processing results during the processing of said speech parameters." Ex. 1001, 16:56–59.

Claim 59 depends from claim 58 and further recites "wherein said processors prune the processing of the speech parameters in dependence upon the determined scores." Ex. 1001, 16:60–62.

For these claims, Apple argues that Jiang teaches a pruning technique using the word scores, and that pruning in this way would have enabled computational savings and an improvement in efficiency. Pet. 71–72 (citing Ex. 1004, 2:25–46, 8:52–64, 10:51–11:24; Ex. 1003 ¶ 107).

Apart from its general arguments that we have discussed above, Zentian makes no particular arguments for claims 53, 58, or 59. For the reasons given above for claim 46 and the additional reasons articulated in the Petition for claims 53, 58, and 59 (Pet. 68–72), we determine that Apple has shown by a preponderance of the evidence that claims 53, 58, and 59 are unpatentable as obvious over Thelen in view of Bailey, Chen, and Jiang.

### F. GROUND BASED ON THELEN, BAILEY, CHEN, AND KATZ (CLAIM 51)

For its fourth ground, Apple argues that claim 51 is unpatentable under § 103(a) as obvious over Thelen in view of Bailey, Chen, and Katz. Pet. 6, 73–75.

Claim 51 depends from claim 50 and further recites "including [a] language model processor providing a language model output for modifying the processing results at a word recognition event by . . . said processor." Ex. 1001, 16:25–28.

Apple argues that Thelen teaches a sentence-level language model in addition to the word-level model discussed above in the context of claim 46, and thus modifies the processing results at the word-recognition level. Pet. 73 (citing Ex. 1030, 4:20–25, 5:54–6:10, 7:30–43; Ex. 1003 ¶¶ 108–109). According to Apple, Thelen "does not expressly state the language model output modifying the processing results is performed by a 'language model processor,'" but Apple relies on Katz as teaching this limitation. Pet. 73–74 (citing Ex. 1035, 1:44–54, 2:34–44, 5:61–7:46, Figs. 2–3; Ex. 1003 ¶¶ 108–109). Apple argues that a person of ordinary skill in the art would have made this modification because Katz presents an operable structure for providing a language model output in this context, and that offloading the language

model processing to a separate processor would have conserved computational resources. Pet. 74–75 (citing Ex. 1030, 5:54–6:12; Ex. 1035, 1:44–54; Ex. 1003 ¶ 109).

Apart from its general arguments that we have discussed above, Zentian makes no particular arguments for claim 51. For the reasons given above for claims 46 and 50, and the additional reasons articulated in the Petition for claim 51 (Pet. 73–75), we determine that Apple has shown by a preponderance of the evidence that claim 50 is unpatentable as obvious over Thelen in view of Bailey, Chen, and Katz.

## IV. CONCLUSION[13]

For the reasons above, Apple has shown by a preponderance of the evidence that claims 46–51, 53, 54, 58, 59, 64, and 67 of the ’319 patent are unpatentable under § 103(a).

[13] Should Zentian wish to pursue amendment of claims in a reissue or reexamination proceeding after this decision, we draw attention to the April 2019 *Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding*. *See* 84 Fed. Reg. 16,654 (Apr. 22, 2019). If Zentian chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Zentian of its continuing obligation to notify the Board of any such related matters in updated mandatory notices. *See* 37 C.F.R. § 42.8(a)(3), (b)(2).

In summary:

| Claim(s) | 35 U.S.C. § | Reference(s)/ Basis | Claims Shown Unpatentable | Claims Not Shown Unpatentable |
|---|---|---|---|---|
| 46, 50, 54, 64, 67 | 103(a) | Thelen, Bailey, Chen | 46, 50, 54, 64, 67 | |
| 47–49 | 103(a) | Thelen, Bailey, Chen, Huang | 47–49 | |
| 53, 58, 59 | 103(a) | Thelen, Bailey, Chen, Jiang | 53, 58, 59 | |
| 51 | 103(a) | Thelen, Bailey, Chen, Katz | 51 | |
| **Overall Outcome** | | | 46–51, 53, 54, 58, 59, 64, 67 | |

## V. ORDER

In consideration of the foregoing, it is

ORDERED that claims 46–51, 53, 54, 58, 59, 64, and 67 of the ’319 patent are unpatentable;

FURTHER ORDERED that parties to this proceeding seeking judicial review of our decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE PATENT TRIAL AND APPEAL BOARD

---

APPLE INC., AMAZON WEB SERVICES, INC., and
AMAZON.COM SERVICES LLC,
Petitioner,

v.

ZENTIAN LIMITED,
Patent Owner.

---

IPR2023-00033[14]
Patent 7,587,319 B2

---

Before KEVIN F. TURNER, JEFFREY S. SMITH, and
CHRISTOPHER L. OGDEN, *Administrative Patent Judges*.

SMITH, *Administrative Patent Judge,* dissenting.

[14] IPR2023-01192 has been joined with this proceeding.

The majority, in this Final Written Decision (FWD), finds that Petitioner has shown that a person of ordinary skill in the art would have modified Thelen using the teachings of Bailey and Chen to produce the advantages of (1) the efficiency of sharing data among related sub-context models, (2) flexibility and scalability of distributed processing systems, and (3) decreased cost by using off-the-shelf components. FWD 27–31; *see* Pet. 40–45. I disagree. I would have found that Petitioner does not show any reason why a person of ordinary skill in the art would have modified Thelen to include the teachings of Bailey. I also would have found that Petitioner has not shown any reason to modify its combination of Thelen and Bailey to include the teachings of Chen. As discussed below, (1) Thelen already provides the efficiency of sharing data among related sub-context models by organizing its speech recognition models into a hierarchical data structure that shares data common to multiple speech recognition models, (2) Thelen is already scalable and flexible, and (3) Petitioner has not shown that Thelen's components would have been more expensive than Chen's components. Therefore, I respectfully dissent.

*(1) The Efficiency of Sharing Data*

To support the contention that the efficiency of sharing data among related sub-context recognition models provides motivation, Petitioner contends that grouping context-related recognizers together with a shared memory storing all context-related recognition models would have more efficiently allowed for sharing of lexical data common to each of the recognition models. Pet. 44 (citing Ex. 1003 ¶ 84). Petitioner contends that this grouping of recognizers into a cluster provides the benefit of reducing the duplication of lexical data, necessitating less memory to operate, further

reducing the overall financial cost of the system and increasing processing power. Pet. Reply 24 (citing, *inter alia*, Ex. 1003 ¶¶ 83, 84).

Petitioner's contentions are based on the premise that the combination of Thelen and Bailey would have required more memory to store Thelen's lexical models than the combination of Thelen, Bailey, and Chen. *See* Pet. 40–45. However, Petitioner does not provide any reason replace Thelen's single shared memory which efficiently stores models in a hierarchical data structure with Bailey's multiple private memories, which cannot. *See id.* at 33, 40–45. Petitioner also does not show that the combination of Thelen, Bailey and Chen would have used less memory than Thelen alone. In the following paragraphs, I briefly summarize the teachings of Thelen and Bailey and address Petitioner's failure to provide a reason for combining Thelen and Bailey. Then, I briefly summarize Chen and address Petitioner's failure to provide a reason for combining Thelen, Bailey, and Chen.

Figure 3 of Thelen is reproduced below.




FIG. 3

Figure 3 above shows a block diagram of Thelen's speech recognition system. Ex. 1030, 4:15–16. As shown in Figure 3, storage 340 stores recognition models 341 to 348 which are used by recognizers 331 to 334. *Id.* at 7:5–7, 7:30–49, 8:40–42.

Figure 3A of Bailey is reproduced below.




FIG. 3A

Figure 3A above shows a block diagram of a system for pattern recognition employing a multiprocessing apparatus with private memories. Ex. 1031, 4:44–47, Abstract. Each of processors 525a to 525c contains its own private memory 615a to 615c respectively, where each private memory stores a library of patterns. *Id.* at 11:9–23.

In combining Bailey with Thelen, Petitioner concedes that Thelen already discloses "a memory containing the complete lexical data" in describing that a lexicon and sub-word models are stored in storage 340. Pet. 30 (citing Ex. 1030, 7:30–34, 5:22–24, Fig. 3; Ex. 1003 ¶¶ 77–78). Petitioner further concedes that Thelen "does not expressly teach that each of its recognition models and associated lexicons . . . are stored in a plurality of lexical memories." *Id*. at 30–31.

Petitioner replaces Thelen's common storage 340 containing the complete lexical data with Bailey's plurality of private memories, where each private memory is associated with one processor, and each of the private memories stores one of Thelen's lexical models. Pet. 31–32, 40 (citing Ex. 1031, Fig. 3A). However, Petitioner has not explained why a person of ordinary skill in the art would have replaced Thelen's single shared memory that "contains the complete lexical data" with Bailey's private memories. The Petition states that a "motivation to combine Bailey's plurality of lexical memories with Thelen is provided in Section V.A.5.b." Pet. 33. Section V.A.5.b is entitled "Motivation to Combine Chen with Thelen-Bailey for Claims 46(b) and 46(d)." *Id.* at 40. This section discusses replacing Bailey's individual private memories, where each private memory stores one of Thelen's models, with Chen's cluster memories. *Id.* at 40–46. This section does not state a reason for replacing Thelen's single memory with Bailey's multiple private memories. Petitioner has not provided a reason to replace Thelen's single memory 340 with Bailey's private memories 615a-c.

This is significant, because, as discussed in more detail below, Thelen's hierarchy of recognition models shown in Figure 4, which is stored

in Thelen's single memory shown in Figure 3, avoids duplicating data by sharing lexical data common to each of the recognition models. In contrast, Petitioner's combination of Thelen and Bailey, by storing each recognition model in a separate memory, duplicates lexical data common to each of the recognition models. Petitioner does not identify any advantage in replacing Thelen's single memory with Bailey's multiple private memories that would have outweighed this disadvantage. *See* Pet. 40–45.

The Federal Circuit has held that "[O]bviousness concerns whether a skilled artisan not only *could have made* but *would have been motivated to make* the combinations or modifications of prior art to arrive at the claimed invention." *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1073 (Fed. Cir. 2015). The mere fact that a skilled artisan could have replaced Thelen's single memory with Bailey's private memories does not provide a reason that a skilled artisan would have modified Thelen to replace its single memory that efficiently stores recognition models in a hierarchical data structure with Bailey's less efficient private memories which must duplicate data common to the recognition models. *Virtek Vision International ULC v. Assembly Guidance Systems, Inc.*, 97 F.4th 882, 887 (Fed. Cir. 2024) ("The mere fact that these possible arrangements existed in the prior art does not provide a reason that a skilled artisan would have substituted [a component of one reference] with [a component] disclosed in [another reference]."). Here, this case involves nothing other than an assertion that because private memories were disclosed in a prior art reference and were therefore "known," that satisfies the motivation to replace Thelen's more efficient single memory with Bailey's less efficient multiple private memories.

Therefore, I would find all challenged claims patentable over Petitioner's combination for this reason alone.

Turning now to the motivation to modify the combination of Thelen and Bailey to include Chen, Petitioner contends that a person of ordinary skill in the art "would have been motivated to . . . modify Thelen to include grouping recognizers together for the purpose of associating the generic and specific contexts (e.g., all sports contexts) together in a group for efficient word recognition." Pet. 40.

Figure 4 of Chen is reproduced below.




Fig. 4

Figure 4 above shows a parallel processing system that includes multiple clusters of processors 100a-100d. Ex. 1005, 9:10–13. Each cluster, such as cluster 100a, includes at least two processors 102a connected to cluster shared memory 104a. *Id*. at 9:14–17.

According to Petitioner's combination of Thelen, Bailey, and Chen, all sports contexts, such as all of Thelen's sports models, would be stored in one of Chen's cluster memories, such as cluster memory 104a of cluster 100a. *See* Pet. 41, 43–45. In Petitioner's combination, each of processors 102a of cluster 100a would recognize speech using an associated one of the sports models stored in memory 104a. *See id*. Petitioner contends that replacing the processors and private memories in the combination of Thelen and Bailey with Chen's clusters of processors, where the processors of each cluster are associated with a cluster memory that stores all generic and specific models for one topic, such as sports, "would have more efficiently allowed for sharing of lexical data common to each of the recognition models." *Id.* at 44; *see id*. at 45.

Although the combination of Thelen, Bailey, and Chen may have been more efficient than Petitioner's inefficient combination of Thelen and Bailey, Petitioner does not explain why the combination of Thelen, Bailey, and Chen would have been more efficient than Thelen alone. I agree with Patent Owner and Dr. Anderson that Thelen discloses a single shared memory structure, because all of Thelen's processors obtain lexical data from Thelen's single common memory 340. PO Resp. 26–27 (citing Ex. 2020 ¶¶ 53–54; Ex. 1003 ¶ 77; Ex. 1030, 7:30–34, 5:22–24, Fig. 3). Dr. Anderson persuasively testifies that "Thelen's existing architecture relies on a shared memory structure in which all components ultimately obtain their lexical

data from a single common memory." Ex. 2020 ¶ 56 (citing Ex. 1003 ¶ 77 (Mr. Schmandt testifying that Thelen's storage 340 stores the "complete lexical data."); Ex. 1030 7:30–34, 5:22–24, Fig. 3). As discussed above, Petitioner concedes that Thelen already discloses "a memory containing the complete lexical data" and "does not expressly teach that each of its recognition models and associated lexicons . . . are stored in a plurality of lexical memories."[15] Pet. 30–31.

---

[15] The majority, in its footnote 10, contends that Thelen's common storage 340 is not a shared memory because each recognizer has access to storage 340 indirectly via model selector 360. However, the presence of model selector 360 does not change the fact that memory 340 contains the complete lexical data as conceded by Petitioner (Pet. 30), and that every recognition processor of Thelen obtains its lexical data from memory 340 as shown in Figure 3. *See* Ex. 1030, 7:30–49. Further, the majority's statement that Thelen's storage 340 is not a shared memory is inconsistent with Chen's disclosure that "[i]n a shared memory model, data is stored in a common shared memory that is equally accessible to all processors in the parallel processing system." Ex. 1005, 1:59–62. The majority's statement is also inconsistent with the testimonies of both experts and the contentions of both parties. *See* Ex. 1003 ¶ 77; Ex. 2020 ¶ 56; Pet. 30–31; PO Resp. 26–27.

Further, in Thelen's embodiment where the number of models equals the number of recognizers, model selector 360 would not be used, because each recognizer is associated with a model stored in memory 340. Ex. 1030, 7:43–47.

Figure 4 of Thelen is reproduced below.




FIG. 4

Figure 4 above shows a hierarchy of recognition models. Ex. 1030, 4:37.

As shown in Figure 4 above, Thelen organizes all recognition models into a single hierarchical data structure and stores the single data structure in Thelen's single memory 340 shared by Thelen's recognizers. Ex. 1030, Figs. 3 and 4, 7:30–35, 8:54–64. This data structure shares lexical data common to each of the recognition models. *Id.* For example, health farms submodel 424 is hierarchically below parent model 422 that relates to hospitals/medical centers, and also below parent model 432 that relates to travel. Ex. 1030, Fig. 4, 8:65–9:8.

Because Thelen uses a single hierarchy of recognition models, submodel 424 does not need to be duplicated in its memory 340 in order to descend from both parent models 422, 432. In contrast, Petitioner's combination needs to duplicate model 424 in Chen's cluster memory that stores all travel models, and also needs to duplicate model 424 in Chen's cluster memory that stores all health models, because Petitioner's combination divides Thelen's single hierarchy of recognition models among

Chen's multiple cluster memories 104a-104d. Thus, as shown in Thelen's Figure 4, "Thelen already teaches recognition models associated with a particular context and ranging from generic to specific contexts for a particular topic, such as sports," and "grouping the recognition models according to the hierarchical association" as contended by Petitioner (Pet. 42), and does so by duplicating less data than would have been duplicated by storing Thelen's lexical models among the multiple cluster memories of Chen.

As a result, Thelen already provides the benefit of "consolidating speech recognition for a particular context," such as sports, "within a particular group of recognition processors" so that "[t]he group of processors would then share the same lexical memory" which "more efficiently allow[s] for sharing of lexical data common to each of the recognition models." *See* Pet. 44. For example, in Thelen's embodiment where the number of recognition models corresponds to the number of recognition processors (Ex. 1030, 7:43–47), each generic and specific sports model stored in Thelen's shared lexical memory would always be assigned to a corresponding processor. This embodiment of Thelen would achieve the same result as Petitioner's combination of Thelen, Bailey, and Chen, by causing Thelen's processors to perform speech recognition by accessing all of the generic and specific models for the sports contexts, as well as all of the generic and specific models for all other contexts, from Thelen's single hierarchy of recognition models stored in Thelen's single common memory 340. This embodiment of Thelen would have the added advantages of duplicating less data as well as using a single "shared memory model having a globally shared physical address space," which is, "[f]rom the

programmer's perspective, the most attractive parallel processing system." Ex. 1005, 1:66–2:1.

As another example, in Thelen's embodiment where the number of processors is less than the number of models, Thelen teaches that if one processor is obtaining good results using a generic model, such as a sports model, then a model selector causes another processor using another model giving worse results, such as health, to stop using the health model and instead use more a specific model within the sports context, so that the system performs recognition using the more specific sports model in addition to the generic sports model. Ex. 1030, 9:6–24. If several more specific sports models exist, such as football, baseball, athletics, and car racing, then the selector can cause all of these specific sports models to also be tested by Thelen's processors. *Id.* at 9:24–26; *see id.* at 3:4–9, 3:27–30, 3:47–52, 7:63–8:1, 8:36–53. In this embodiment, Thelen's model selector consolidates speech recognition to the particular context best suited for recognition, such as sports, within Thelen's group of recognition processors.

Thus, in any embodiment, Thelen already provides the same, if not better, advantages of sharing data than those provided by Petitioner's combination. The alleged advantages of adding Chen to the combination of Thelen and Bailey already exist in Thelen alone, and Petitioner has not shown otherwise.

Rather, Petitioner's combination would have performed less efficiently than Thelen alone. Petitioner admits that its combination would have required duplicating a core vocabulary of lexical data in each cluster memory of Chen. Pet. Reply 22. Thelen's single memory, shared by all recognizers, would not need to duplicate the core vocabulary among

multiple memories as required by Chen. Thus, storing Thelen's single hierarchical data structure of lexical models in Thelen's single shared memory results in sharing common lexical data more efficiently than diving and storing the hierarchical data structure among Chen's multiple cluster memories as required by Petitioner's combination. *Id.*; *see* PO Sur-Reply 26–27. Petitioner has not provided persuasive evidence or argument to the contrary.

In fact, Petitioner cites Thelen to support the contention that a single memory storing a single hierarchy of recognition models would store overlapping data in fewer locations. *See* Pet. 27–29 (citing, *inter alia*, Ex. 1030, 7:40–42, 2:3–8), 42–44 (citing, *inter alia*, Ex. 1030, Fig. 4, 8:54–56, 8:62–9:11). For example, according to Petitioner, "Thelen already teaches recognition models associated with a particular context and ranging from generic to specific contexts for a particular topic, such as sports." Pet. 42 (citing Ex. 1030, Fig. 4). Thus, Petitioner relies on Thelen to teach the benefit of storing generic and specific models for a topic in a single memory.

The majority's statement that Thelen discloses that "there is no shared memory in which multiple processors can access the same consolidated model data in parallel" (FWD 27) is inconsistent with Thelen's description of consolidating data by organizing recognition models into the hierarchy of recognition models as shown in Figure 4, and storing the hierarchy of recognition models in memory 340 as discussed above. The majority's statement is also inconsistent with Thelen's description that each recognizer accesses data for a particular model from memory 340, such that Thelen's group of processors can process all generic and specific models for a given topic such as sports in parallel according to any embodiment of Thelen as

discussed above. *See* Ex. 1030, 9:17–30. In addition, the majority's statement that Thelen does not consolidate the data of the recognition models is inconsistent with the contentions of both parties and the testimony of both experts. *See* Pet. 27–29, 42–43 (citing Ex. 1030, Fig. 4); PO Resp. 26–27; Ex. 1003 ¶ 83 (citing Ex. 1030, Fig. 4); Ex. 2020 ¶ 56. Further, the disclosures of Thelen and Chen, the testimonies of both experts, and the contentions of both parties show that Thelen's memory 340 is a shared memory as discussed above.

The majority's statement that Thelen does not disclose a shared memory (FWD 27) is based on the premise that "each processor [of Thelen] has access to only one distinct lexical model at a time." However, the majority does not explain why the processors in Petitioner's combination would have processed the models any differently than Thelen. In particular, neither Petitioner nor Mr. Schmandt contends that a given processor in Petitioner's combination would have had access to more than one model at a time. Rather, according to the Petition, the "collective groups of recognizers" of Chen (Pet. 43), "where each recognizer is associated with a recognition model (per Thelen) . . . would have yielded the predictable result of consolidating speech recognition for a particular context within a particular group of processors" (Pet. 44), which Thelen alone already describes. Contrary to the majority's statement, Petitioner's combination relies on Thelen's disclosure of associating each recognizer with a model.

The alleged benefit of using Chen's cluster memories in place of Bailey's private memories, which is "consolidating speech recognition for a particular context within a particular group of recognition processors" to "more efficiently allow[] for sharing of lexical data common to each of the

recognition models" (Pet. 44), already exists in Thelen alone, because Thelen organizes all recognition models into a single hierarchical data structure stored in Thelen's single shared memory 340 in order to store overlapping lexical data in fewer unique locations. Ex. 1030, Figs. 3 and 4, 7:30–35, 8:54–64; PO Sur-Reply 26–27; Pet. Reply 21–22; *see* Pet. 27–29, 42–43. A person of ordinary skill in the art would have recognized that Thelen alone already has a single memory storing a single hierarchy of recognition models, providing the benefit of efficiently sharing lexical data common to each of the recognition models. Petitioner has not shown a reason to replace Thelen's single memory that stores all lexical models in a single hierarchical data structure with Chen's multiple cluster memories, where each cluster memory stores only a portion of Thelen's lexical models, thus requiring duplication of more data than Thelen alone. *See id.* Contrary to Petitioner's contentions, the evidence of record shows that a person of ordinary skill in the art would have stored Thelen's hierarchy of recognition models in Thelen's single shared memory rather than in Chen's multiple cluster memories to achieve the benefit of duplicating less data than Petitioner's combination, as well as the benefit of "us[ing] a shared memory model having a globally shared physical address space," which is, "[f]rom the programmer's perspective, the most attractive parallel processing system." Ex. 1005, 1:66–2:1.

In conclusion, Petitioner has not shown any reason to modify Thelen to include the teachings of Bailey. Petitioner also has not shown that the efficiency of sharing data, which is found in Thelen alone, would have been a reason to modify Thelen to include the teachings of Bailey and Chen. Petitioner has the burden of showing that the combination of Thelen, Bailey,

and Chen would have shared data more efficiently than Thelen alone, and Petitioner has not met this burden. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378–79 (Fed. Cir. 2015).

*(2) Flexibility and Scalability*

To support the contention that scalability and flexibility provide motivation, Petitioner contends that "the Petition and supporting declaration provide ample support that a [person of ordinary skill in the art] would have been motivated by the flexibility and scalability provided by Hon to utilize Chen's processing clusters in Thelen's speech recognition system, regardless of respective speeds and/or costs of the systems." Pet. Reply 23 (citing Pet. 45; Ex. 1003 ¶¶ 58, 84; Ex. 1006, 19–20).

In paragraph 58 of his Declaration, Mr. Schmandt testifies that Hon's clustered architecture is scalable because it can be expanded by adding more processors. In paragraph 84, Mr. Schmandt testifies that "[o]ther motivation for the modification would have come from [Hon] . . . praising parallel processing configurations for their flexibility and scalability in speech recognition systems." (citing Ex. 1006, 19–20). Dr. Anderson, relying on the deposition testimony of Mr. Schmandt, testifies that Hon's system was flexible because it had a programmable pipeline. Ex. 2020 ¶ 61 (citing Ex. 2017, 105:8–106:4. Dr. Anderson further testifies that Hon's discussion of flexibility is specific to Hon's system compared to another specific system, rather than to parallel processing generally. *Id.*

Dr. Anderson testifies that Mr. Schmandt "has made no showing that Thelen itself, without modification, was not already both flexible and scalable." Ex. 2020 ¶ 61; *see* PO Resp. 30–31. I agree with Dr. Anderson. Mr. Schmandt does not testify, in either paragraph 58 or 84, that Thelen

without modification is not already flexible and scalable. Petitioner does not provide persuasive evidence or argument to rebut Dr. Anderson's testimony. I agree with Dr. Anderson, that Mr. Schmandt has not shown that Thelen's parallel processing speech recognition system, without modification, was not already flexible and scalable.

Further, I would have found that Thelen alone is already scalable, because Thelen discloses that the speech recognition system comprises M recognition models and N active recognizers. Ex. 1030, 7:63–64. Thus, the number of Thelen's recognizers, N, can be increased or decreased, which provides scalability. *Id.*; *see id.* at 7:43–49; Ex. 2020 ¶ 61.

In addition, I would have found that Thelen is already flexible, because when Thelen assigns a processor to a model, such as health, that gives low recognition results, then Thelen may terminate using this model in favor of a model that gives better results, such as sports in general or football specifically. Ex. 1030, 9:17–24; *see id.* at 9:13–31. If several more specific sports models exist, such as football, baseball, athletics, and car racing, then all of these models may be assigned to corresponding processors. Ex. 1030, 9:24–26.

In contrast, in the combination relied on by Petitioner, one group of processors would always be associated with the "sports" context, and another group of processors would always be associated with the "health" context. *See* Pet. 42–43. Thus, when the speech to be recognized is about sports, the processors in the health group would continue to perform recognition using the health models even though the health models give low results and the sports models give better results. *See* Tr. 41:1–43:10.

To the extent Petitioner relies on Thelen's embodiment where the number of recognition models corresponds to the number of recognition processors, Petitioner has not shown any difference in flexibility between Thelen and Petitioner's combination, "where each processor is associated with a recognition model (per Thelen)." Pet. 44. I agree with Dr. Anderson, that Mr. Schmandt has not shown that Thelen, without modification, was not already flexible and scalable. Ex. 2020 ¶ 61.

Therefore, I would have found that scalability and flexibility, which is already present in Thelen alone, would not have motivated a person of ordinary skill in the art to modify Thelen. Petitioner has the burden of showing that the combination of Thelen, Bailey, and Chen would have been more flexible and scalable than Thelen alone, and Petitioner has not met this burden. *Dynamic Drinkware, LLC* , 800 F.3d at 1378–79).

*(3) Decreased Cost*

To support the contention that decreased cost from using off-the-shelf components provides motivation, Petitioner contends that a person of ordinary skill in the art would have utilized Chen's clusters of commercially-available processors to reduce the cost of computing resources. Pet. Reply 23 (citing Ex. 1003 ¶ 83). Mr. Schmandt testifies that each of Chen's processors may be formed using commercially available processors. Ex. 1003 ¶ 82 (citing Ex. 1005, 9:5–19). Mr. Schmandt does not testify, however, that Thelen requires processors that would have been more expensive than those of Chen. In addition, Mr. Schmandt does not testify that Thelen's system would not use commercially available

processors. In fact, Thelen discusses using convention components throughout its disclosure. *See* Ex. 1030, 6:55–56, 7:23–24, 9:36–38.

I agree with Patent Owner that Mr. Schmandt has not undertaken any cost-benefit analysis in reaching his opinions regarding a motivation to combine. PO Sur-Reply 23 (citing Ex. 2017, 42:14–19, 63:8–15). I agree with Patent Owner that Petitioner has not stated what the combination relied on by Petitioner would be cheaper than, or what costs would have been reduced. *Id*. at 25. In particular, Petitioner does not state that the combination relied on by Petitioner, in using conventional components, would have been cheaper than Thelen's speech recognition system, or that Thelen's components would have been more expensive than Chen's.

Given that (a) Petitioner does not state what the combination relied on by Petitioner would have been cheaper than, (b) Mr. Schmandt does not testify that the components of Thelen would have been more expensive than Chen's conventional components, and (c) Thelen already teaches using conventional components, I would have found that Petitioner has not provided sufficient evidence or argument showing that Chen's clusters of processors would have been cheaper than Thelen's speech recognition system. Petitioner has the burden of showing that the combination of Thelen, Bailey, and Chen would have been cheaper than Thelen alone, and Petitioner has not met this burden. *Dynamic Drinkware, LLC*, 800 F.3d at 1378–79 ).

*(4) Improved Speed and Power*

I also agree with Patent Owner that Mr. Schmandt has not persuasively shown that the clustered processor and memory arrangement of the combination of Thelen, Bailey, and Chen would have necessarily

improved the speed and power of Thelen's speech recognition system. Patent Owner persuasively contends that Mr. Schmandt testified at his deposition that (a) the combination of Thelen and Bailey with Chen would not increase the number of processors in Thelen, (b) he did not know whether the combination relied on by Petitioner would have increased the number of processors in Thelen, and (c) his Declaration does not explain how the combination relied on by Petitioner would have increased processing power. PO Resp. 23–24 (quoting Ex. 2017, 130:23–131:4), 25 (citing Ex. 2017, 136:3–6). In addition, Petitioner concedes that the "combination's motivation to combine is not contingent on increasing processing power via adding more processors beyond what is taught in Thelen." Pet. Reply 24. I would find that Petitioner has not explained how Petitioner's combination would have increased the speed and power of Thelen's speech recognition system.

Further, when Petitioner's combination does not "add[] more processors beyond than what Thelen alone teaches" (Pet. Reply 24), Thelen's system would have at least as much, if not more, speed and power than Petitioner's combination. For example, when Chen has four clusters and each cluster has two processors for a total number of eight processors, then, for a given topic such as sports, the two processors in the sports cluster would perform speech recognition using the sports model and submodels stored in the associated cluster memory, while the six processors in the other clusters would be using models other than the sports model and thus would provide low, if any, results. *See* Tr. 41:1–43:10.

In contrast, in Thelen's embodiment where the number of processors is less than the number of models, Thelen would assign many, if not all, of

its eight processors to the sports model and submodels, thus providing greater processing speed and power to the speech recognition than the combination relied on by Petitioner. *See* Ex. 1030, 7:62–8:5, 9:13–32. To the extent Petitioner relies on Thelen's embodiment where the number of recognition models corresponds to the number of recognition processors, I agree with Dr. Anderson, that Mr. Schmandt has not shown that the clustered processor and memory arrangement of Chen would have improved the speed and power of Thelen without modification, given that both Thelen and Petitioner's combination would process the same number of models using the same number of processors. *See* Ex. 2020 ¶ 51; *see id.* at ¶¶ 52–58, 62; Pet. Reply 24 (Petitioner contending that Petitioner's combination would not add more processors "beyond what is taught in Thelen.").

Therefore, I agree with Patent Owner, that Petitioner and Mr. Schmandt have not persuasively shown that modifying Thelen to use the clustered architecture of Chen would have increased processing speed and power over Thelen. To the contrary, the evidence shows that Thelen would have had more processing speed and power than the combination relied on by Petitioner. Petitioner has the burden of showing that the combination of Thelen, Bailey, and Chen would have performed with more power and speed than Thelen alone, and Petitioner has not met this burden. *Dynamic Drinkware, LLC*, 800 F.3d at 1378–79.

*(5) Not the Most Desirable Combination*

Petitioner contends that the combination relied on by Petitioner does not have to be the most optimal, desirable, or preferred. Pet. Reply 22–23 (citing *Elekta Ltd. v. ZAP Surgical Systems, Inc.*, 81 F.4th 1368, 1374 (Fed. Cir. 2023)). However, Petitioner has not shown any advantage in modifying

Thelen. The mere fact that Petitioner's possible arrangements existed in the prior art does not provide a reason that a skilled artisan would have replaced Thelen's single memory with Bailey's multiple private memories, then replaced Bailey's multiple private memories with Chen's multiple cluster memories, in order to produce a system that requires more memory than Thelen alone, has less flexibility than Thelen alone, and has less processing power and speed than Thelen alone. *See Virtek Vision*, 97 F.4th at 887; Ex. 2020 ¶ 62. The Petition does not show, by a preponderance of the evidence, that a person of ordinary skill in the art would have modified Thelen as contended in the Petition.

*(4) Conclusion Regarding a Reason to Combine*

I agree with Patent Owner that Petitioner has not shown that Petitioner's combination of Thelen, Bailey, and Chen provides greater efficiency of sharing data among related sub-context models, because Thelen already has this efficiency, and because Petitioner's combination results in sharing less data than Thelen alone. I agree with Patent Owner that Petitioner has not shown that Petitioner's combination provides the advantage of flexibility and scalability of distributed processing systems over Thelen alone, because Thelen is already scalable and flexible, and because Petitioner has not shown how its combination would have been flexible. I agree with Patent Owner that Petitioner has not shown that Petitioner's combination provides the advantage of decreased cost by using off-the-shelf components, because Thelen already discloses using conventional components, and because Petitioner has not shown that Thelen's components would have been more expensive than Chen's components. I agree with Patent Owner, that Petitioner has not shown that

Petitioner's combination would not have had more processing speed and power than Thelen.

Petitioner has the burden of establishing by a preponderance of the evidence that a person of ordinary skill would have had a reason to modify Thelen. *See Dynamic Drinkware, LLC*, 800 F.3d at 1378–79. I would have found that Petitioner has not met this burden. I agree with Dr. Anderson, that "the evidence demonstrates that Thelen would perform ***worse***, not better, after the proposed combination, and that Thelen has no need or deficiency that the [person of ordinary skill in the art] would look to address through a combination or modification." Ex. 2020 ¶ 62. Therefore, because Petitioner has not shown an advantage in modifying Thelen, I would conclude that Petitioner has not shown any of the challenged claims unpatentable.

*(7) Disadvantages of the Combination relied on by Petitioner*

I also agree with Patent Owner, that a person of ordinary skill in the art would have recognized multiple disadvantages in using Chen's clusters to perform Thelen's speech recognition process. For example, I agree with Patent Owner and Dr. Anderson, that Thelen discloses a single shared memory structure. PO Resp. 26–27 (citing Ex. 2020 ¶¶ 53–54; Ex. 1003 ¶ 77; Ex. 1030, 7:30–34, 5:22–24, Fig. 3); *see* Ex. 2020 ¶ 56 ("Thelen's existing architecture relies on a shared memory structure in which all components ultimately obtain their lexical data from a single common memory."). I agree with Patent Owner, that replacing Thelen's single shared memory with Chen's multiple private memories would have required a significant reprogramming effort. PO Resp. 26–28.

For example, Chen discloses that a parallel processing system that uses a shared memory model is the most attractive from a programmer's perspective because most programs are written for a shared memory model, as opposed to a distributed or private memory model. Ex. 1005, 1:66–2:6. Chen discloses that effectively porting an existing software program from a shared memory model to a distributed memory model can require significant reprogramming effort. *Id*. at 2:6–9. Chen discloses that a distributed memory model requires processes and data to be partitioned into separate tasks that are small enough to fit into the private local memory of a processor and large enough to recover the overhead required to establish a parallel task in a message passing environment. *Id*. at 2:9–17.

I agree with Dr. Anderson, that a person of ordinary skill in the art "would have been aware of Chen's warning that porting Thelen's speech recognition technique to Chen's distributed memory architecture would require 'significant reprogramming effort,' including the complex task of finding the optimal approach to partitioning the processes and data of Thelen's speech recognition techniques to balance the competing problems of memory size and overhead." Ex. 2020 ¶ 57. I also agree with Dr. Anderson, that Mr. Schmandt's Declaration does not address these issues, which are explicitly identified by Chen itself. *Id*.

Although Petitioner in Reply contends that using Chen's architecture to perform Thelen's speech recognition techniques "does not require any significant reprogramming effort" (Pet. Reply 22), Petitioner's contention is attorney argument unsupported by evidence. Petitioner's contention that "the clustered processor architecture [of Chen] provides increased benefits over a single-processor architecture" (*id*. at 20) is irrelevant, because Thelen

(a) already uses a multiple-processor architecture and (b) has the additional advantage of using a single "shared memory model" which is "the most attractive parallel processing system" as taught by Chen. Ex. 1005, 1:66–68; *see id*. at 2:24–29 ("Thus, it would be desirable to have a parallel processing system" in which "processors all have equal and symmetric access to any and all memory locations in a common shared memory."). Petitioner has not explained why a person of ordinary skill would have replaced Thelen's single shared memory, which is "the most attractive parallel processing system" with Chen's less attractive parallel processing system that uses multiple private cluster memories distributed over at least four clusters.

I agree with Patent Owner and Dr. Anderson, that, contrary to Mr. Schmandt's contention, contemporary real-world evidence provided by Mathew I (Ex. 2021) shows that a person of ordinary skill in the art could not have reasonably expected the combination of Thelen, Bailey, and Chen to speed up Thelen's speech recognition process, and that Mr. Schmandt has not explained why Chen would speed up Thelen. PO Resp. 25; Ex. 2020 ¶¶ 50–52. Mathew I discloses that a two-processor parallel processing design was faster than the original sequential version, but a five-processor design was slower than the two-processor version due to the high synchronization overhead. Ex. 2021, 11.

Additional evidence supports Patent Owner's contention. For example, Hon discloses that "[t]he long communication latency also make[s Hon's parallel processing system] unsuitable for algorithms that require frequent synchronization, like . . . natural language processing." Ex. 1006, 25. Chen discloses that in an extended shared memory model, to account for latency of inter-cluster memory access, the number of inter-cluster memory

accesses should be less than about 10–12% of the number of intra-cluster memory accesses, and preferably should be about 1–5% of the total number of memory accesses for any given parallel processing task. Ex. 1005, 8:63–65, 8:68–9:4; *see id.* at 8:42–9:4, Figs. 3A, 3B. Petitioner has not shown that inter-cluster memory accesses in the combination relied on by Petitioner would have been less than 12% of intra-cluster memory accesses.

Petitioner contends that Mathew's extremely limited discussion of its dissimilar architecture would not serve to dissuade a person of ordinary skill from the combination relied on by Petitioner. Pet. Reply 18. I disagree. The prior art recognized the difficulty in using a distributed memory parallel processing system in place of a shared memory parallel processing system. Mathew I, together with Hon, Chen, and Dr. Andersons's testimony, persuasively shows that a person of ordinary skill in the art would have preferred Thelen's shared memory system over the combination's distributed memory system.

I agree with Patent Owner and Mr. Schmandt that "Thelen in unmodified form expresses no doubt or concern about achieving real time recognition." PO Resp. 28 (citing Ex. 2017, 155:7–17). Petitioner has not shown any advantage to modifying Thelen, which already achieves real time recognition, already shares data common to each lexical model, is already scalable and flexible, and already uses conventional components. Further, Patent Owner has shown multiple disadvantages to modifying Thelen. I agree with Patent Owner and Dr. Anderson, that a person of ordinary skill in the art would have recognized that using Chen's clusters to perform Thelen's speech recognition techniques would have yielded several disadvantages and would not have yielded any advantage. Ex. 2020 ¶ 62; *see id.* at ¶¶ 51–58.

Therefore, I would have concluded that all challenged claims are patentable over Petitioner's combination.

For PETITIONER:

Jennifer Bailey
Adam Seitz
Adam Sandwell
ERISE IP, P.A.
jennifer.bailey@eriseip.com
adam.seitz@eriseip.com
adam.sandwell@eriseip.com

J. Hadden
Dargaye Churnet
Saina Shamilov
FENWICK & WEST LLP
dhadden-ptab@fenwick.com
dchurnet@fenwick.com
sshamilov-ptab@fenwick.com

For PATENT OWNER:

Peter Knops
Kayvan Noroozi
NOROOZI PC
peter@noroozipc.com
kayvan@noroozipc.com

Katherine Rhoades
BARTLIT BECK LLP
katherine.rhoades@bartlitbeck.com

US007587319B2

(12) **United States Patent**
**Catchpole**

(10) **Patent No.: US 7,587,319 B2**
(45) **Date of Patent: Sep. 8, 2009**

(54) **SPEECH RECOGNITION CIRCUIT USING PARALLEL PROCESSORS**

(75) Inventor: **Mark Catchpole**, Cambridgeshire (GB)

(73) Assignee: **Zentian Limited**, Cambridge (GB)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 823 days.

(21) Appl. No.: **10/503,463**

(22) PCT Filed: **Feb. 4, 2003**

(86) PCT No.: **PCT/GB03/00459**

§ 371 (c)(1),
(2), (4) Date: **May 24, 2005**

(87) PCT Pub. No.: **WO03/067572**

PCT Pub. Date: **Aug. 14, 2003**

(65) **Prior Publication Data**

US 2005/0251390 A1 Nov. 10, 2005

(30) **Foreign Application Priority Data**

Feb. 4, 2002 (GB) ................................ 0202546.8

(51) **Int. Cl.**
***G10L 15/00*** (2006.01)

(52) **U.S. Cl.** ....................... **704/235**; 704/242; 704/243; 704/258

(58) **Field of Classification Search** ................. 704/235, 704/242, 243, 256, 258
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,293,213 A 3/1994 Klein et al.
5,832,428 A * 11/1998 Chow et al. ................. 704/254

(Continued)

FOREIGN PATENT DOCUMENTS

GB 2 112 194 A 7/1983

(Continued)

OTHER PUBLICATIONS

S. Glinski et al., "Spoken Language Recognition on a DSP Array Processor", IEEE Transactions on Parallel and Distributed Systems, Jul. 5, 1994, No. 7, New York, USA, pp. 697-703.

(Continued)

*Primary Examiner*—Daniel D Abebe
(74) *Attorney, Agent, or Firm*—Dickstein Shapiro LLP

(57) **ABSTRACT**

A speech recognition circuit comprises an input buffer for receiving processed speech parameters. A lexical memory contains lexical data for word recognition. The lexical data comprises a plurality of lexical tree data structures. Each lexical tree data structure comprises a model of words having common prefix components. An initial component of each lexical tree structure is unique. A plurality of lexical tree processors are connected in parallel to the input buffer for processing the speech parameters in parallel to perform parallel lexical tree processing for word recognition by accessing the lexical data in the lexical memory. A results memory is connected to the lexical tree processors for storing processing results from the lexical tree processors and lexical tree identifiers to identify lexical trees to be processed by the lexical tree processors. A controller controls the lexical tree processors to process lexical trees identified in the results memory by performing parallel processing on a plurality of said lexical tree data structures.

**69 Claims, 6 Drawing Sheets**



U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,881,312 | A | | 3/1999 | Dulong | |
| 5,995,930 | A | * | 11/1999 | Hab-Umbach et al. | 704/254 |
| 6,047,283 | A | * | 4/2000 | Braun | 707/3 |
| 7,035,802 | B1 | * | 4/2006 | Rigazio et al. | 704/256 |
| 7,120,582 | B1 | * | 10/2006 | Young et al. | 704/255 |
| 7,174,037 | B2 | | 2/2007 | Arnone et al. | |
| 2001/0011218 | A1 | * | 8/2001 | Phillips et al. | 704/256 |
| 2003/0178584 | A1 | | 9/2003 | Arnone et al. | |
| 2008/0255839 | A1 | | 10/2008 | Larri et al. | |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| GB | 2 331 392 | A | 5/1999 |
| GB | 2 347 835 | A | 9/2000 |
| GB | 2 380 920 | A | 4/2003 |
| WO | WO 00/50859 | | 8/2000 |
| WO | WO 03/067572 | A2 | 8/2003 |

OTHER PUBLICATIONS

S. Chatterjee et al., "Connected Speech Recognition on a Multiple Processor Pipeline", ICASSP 89, May 23, 1989, Glasgow, UK, pp. 774-777.

S-H. Chung et al., "A Parallel Phoneme Recognition Algorithm Based on Continuous Hidden Markov Model", Proceedings of 13th International Parallel Processing Symposium and 10th Symposium on Parallel and Distributed Processing, 1999, Los Alamitos, CA, USA, pp. 453-457.

S-H. Chung et al., "A Parallel Computational Model for Integrated Speech and Natural Language Understanding", IEEE Transactions on Computers, New York, USA, vol. 42, No. 10, Oct. 1, 1993, pp. 1171-1183.

N. Deshmukh et al., "Hierarchical Search for Large-Vocabulary Conversational Speech Recognition: Working Toward a Solution for the Decoding Problem", IEEE Signal Processing Magazine, vol. 16, No. 5, Sep. 1999, pp. 84-107.

R.M. Woodward et al., "Tissue Classification Using Terahertz Pulsed Imaging", Proceedings of the SPIE—The International Society for Optical Engineering SPIE-INT. Soc. Opt. Eng. USA, vol. 5318, No. 1, 2004, pp. 23-33. Abstract also attached.

V.P. Wallace et al., "Biomedical Applications of THz Imaging", Microwave Symposium Digest, 2004, IEEE MTT-S International Fort Worth, TX, USA, Jun. 6-11, 2004, Piscataway, NJ, USA, IEEE, vol. 3, Jun. 6, 2004, pp. 1579-1581.

V.P. Wallace et al., "Biomedical Applications of Terahertz Pulse Imaging", Second Joint EMBS-BMES Conference 2002. Conference Proceedings. 24th Annual International Conference of the Engineering in Medicinal and Biology Society. Annual Fall Meeting of the Biomedical Engineering Society, Houston, TX, Oct. 23-26, 2002, Annual vol. 1 of 3. Conf. 24, Oct. 23, 2002, pp. 2333-2334.

A.J. Fitzgerald et al., "Terahertz Imaging of Breast Cancer, a Feasibility Study", Conference Digest of the 2004 Joint 29th International Conference on Infrared and Millimeter Waves and 12th International Conference on Terahertz Electronics IEEE Piscataway, NJ, USA, 2004, pp. 823-824.

B.E. Cole et al., "Terahertz Imaging and Spectroscopy of Human Skin, In-vivo", Proceedings of SPIE, vol. 4276, pp. 1-10.

* cited by examiner


1
2
Anti aliasing filter
3
ADC fs = 48 kHz 20 bit
4
normalise
5
10 ms data frame
48000 * 10* e-3 = 480 samples
6
pre-emphasis
7
(Hamming) Window
8
FFT 512 pt.
9
Filterbank 12 freqs
10
13 feature vectors
11
d/dt
12
d/dt
13
Energy
14
39 feature vectors @ 200Hz

Fig 1


program & data memory
28
bus
Search Controller
27
path scores
lexical tree identifiers
Results Memory
25
N best sentences
Language Model Memory
31
Language Model Processor
29
Lexical Tree Processor Control bus
To all Lexical Tree Processors
word constraints
feature vector
feature vector buffer
language model bus
30
path score and history bus
26
feature vector bus
24
lexical tree processor 1
lexical tree processor 2
lexical tree processor k
21
22
23
Acoustic Model Memory
Lexical Tree Processor Cluster 1
Lexical Tree Processor Cluster N
Search Engine

Fig 2



uw
y-uw+k
y-uw+h
YOU
LEXICAL TREE 1
uw-k+aa
k
k-aa+r
aa
aa-r+d
r
r-d+r
d
CARD
LEXICAL TREE 2
uw-h+aa
h
h-aa+r
aa
aa-r+t
aa-r+d
r
r-t+r
t
HART
HEART
r-d+l
r-d+r
d
HARD


Fig 3a



d
r-d+r
r-d+l
HARD
LEXICAL TREE 3
d-r+ao
r
r-ao+t
r-ao+k
ao
ao-t+sil
t
ROT
ao-k+sil
k
ROCK
LEXICAL TREE 4
d-l+ao
l
l-ao+t
l-ao+k
ao
ao-t+sil
t
LOT
ao-k+sil
k
LOCK


Fig 3b



S1
INITIALISE
NO
S2
DATA FOR A NEW LEXICAL TREE RECEIVED FROM SEARCH CONTROLLER?
YES
S3
FEATURE VECTOR AVAILABLE IN BUFFER?
NO
S4
ERROR
YES
S5
READ FEATURE VECTOR FROM BUFFER
S6
EVALUATE STATE TRANSITIONS FOR FIRST LEXICAL TREE NODE USING ACOUSTIC MODEL DATA
S7
DETERMINE SCORE FOR FIRST LEXICAL TREE NODE
S8
REQUEST LANGUAGE MODEL SCORE USING PREVIOUS N-1 WORDS IN RECEIVED DATA AND LEXICAL TREE DATA IN ACOUSTIC MODEL MEMORY
S9
RECEIVE LANGUAGE MODEL SCORES FOR WORDS IN THE LEXICAL TREE AND PICK HIGHEST SCORE
S10
GENERATE TEMPORARY LEXICAL TREE SCORE USING THE SCORE FOR FIRST LEXICAL TREE NODE AND THE HIGHEST LANGUAGE MODEL SCORE
S11
SEND SCORE TO RESULTS MEMORY AS TEMPORARY LEXICAL TREE SCORE


Fig 4


S20
START
NO
S21
DATA FOR A LEXICAL TREE RECEIVED FROM SEARCH CONTROLLER?
YES
S22
FEATURE VECTOR AVAILABLE IN BUFFER?
NO
S23
ERROR
YES
S24
READ FEATURE VECTOR FROM BUFFER
S25
EVALUATE STATE TRANSITIONS FOR EACH PATH USING ACOUSTIC MODEL DATA
NO
S26
DETERMINE SCORES FOR PATHS, SEND BEST SCORE TO RESULTS MEMORY AND STORE PATH HISTORIES LOCALLY
S27
PRUNING APPLIED TO LEXICAL TREE TO DELETE PATHS
YES
S28
PATH(S) REACHED WORD END?
YES
S29
APPLY LANGUAGE MODEL SCORE
S30
SEND SCORE AND HISTORY TO RESULTS MEMORY
S31
DELETE PATH(S) AND HISTORY DATA
S32
ANY PATHS LEFT TO PROCESS?
NO
S33
MESSAGE SENT TO SEARCH CONTROLLER TO INDICATE THAT LEXICAL TREE HAS BEEN PROCESSED

Fig 5


S40
INITIALISATION
S41
READ INITIAL LEXICAL TREE DATA IN RESULTS MEMORY
S42
INITIAL LEXICAL TREE DATA DISTRIBUTED AMONGST LEXICAL TREE PROCESSORS FOR TEMPORARY LEXICAL TREE SCORE DETERMINATION
S43
TEMPORARY LEXICAL TREE SCORES RETURNED TO RESULTS MEMORY
S44
PRUNE THE LEXICAL TREES IN THE RESULTS MEMORY ON BASIS OF TEMPORARY LEXICAL TREE SCORES
S45
LEXICAL TREE PROCESSING DISTRIBUTED AMONGST LEXICAL TREE PROCESSORS
NO
S46
HISTORY AND SCORE ENTERED IN RESULTS MEMORY FOR A WORD?
NO
YES
S47
DETERMINE NEXT POSSIBLE LEXICAL TREES USING CROSS WORD TRIPHONES
S48
LEXICAL TREE DATA DISTRIBUTED AMONGST LEXICAL TREE PROCESSORS FOR TEMPORARY LEXICAL TREE SCORE DETERMINATION
S49
TEMPORARY LEXICAL TREE SCORES RETURNED TO RESULTS MEMORY
S50
PRUNE THE LEXICAL TREES IN THE RESULTS MEMORY ON BASIS OF TEMPORARY LEXICAL SCORES
S51
ALL LEXICAL TREE PROCESSORS FINISHED PROCESSING AND NO LEXICAL TREES IN RESULTS MEMORY?
YES
S52
RESULTS OUTPUT

Fig 6

## SPEECH RECOGNITION CIRCUIT USING PARALLEL PROCESSORS

The present invention generally relates to a speech recognition circuit which uses parallel processors for processing the input speech data in parallel.

Conventional large vocabulary speech recognition can be divided into two processes: front end processing to generate processed speech parameters such as feature vectors, followed by a search process which attempts to find the most likely set of words spoken from a given vocabulary (lexicon).

The front end processing generally represents no problem for current processing systems. However, for large vocabulary, speaker independent speech recognition, it is the search process that presents the biggest challenge. An article by Deshmukh et al entitled “Hierarchical Search for Large-Vocabulary Conversational Speech Recognition” (IEEE Signal Processing Magazine, September 1999, pages 84 to 107), the content of which is hereby incorporated by reference, discusses the general concepts of large vocabulary speech recognition. As discussed in this paper, one algorithm for performing the search is the Viterbi algorithm. The Viterbi algorithm is a parallel or breadth first search through a transition network of states of Hidden Markov Models. An acoustic model for words in a lexicon are represented as states of Hidden Markov Models. These states represent phones or n phones in a phone model of the words. The search requires the evaluation of possible word matches. It is known that such a search is computationally intensive.

In order to speed up the processing performed during such a search in a speech recognition system, parallel processing has been explored. In an article by M K Ravishankar entitled “Parallel Implementation of Fast Beam Search for Speaker-Independent Continuous Speech Recognition” (Indian Institute of Science, Bangalor, India, Jul. 16, 1993) a multi-threaded implementation of a fast beam search algorithm is disclosed. The multi-threading implementation requires a significant amount of communication and synchronization among threads. In an MSC project report by R Dujari entitled “Parallel Viterbi Search Algorithm for Speech Recognition” (MIT, February 1992) the parallel processing of input speech parameters is disclosed in which a lexical network is split statically among processors.

It is an object of the present invention to provide an improved circuit which can perform parallel processing of speech parameters.

In accordance with a first embodiment of the present invention, a speech recognition circuit comprises an input port such as input buffer for receiving parameterized speech data such as feature vectors. A lexical memory arrangement is provided which contains lexicon data for word recognition. The lexical data comprises a plurality of lexical tree data structures representing a plurality of lexical trees. Each lexical tree data structure comprises a model of words having common prefix components and an initial component which is unique as an initial component for lexical trees. A plurality of lexical tree processors are connected in parallel to the input port and perform parallel lexical tree processing for word recognition by accessing the lexical data in the lexical memory arrangement. A results memory arrangement is connected to the lexical tree processors for storing processing results from the lexical tree processors and lexical tree identifiers to identify lexical trees to be processed by the lexical tree processors. A controller controls the lexical tree processors to process lexical trees identified in the results memory arrangement by performing parallel processing of a plurality of lexical tree data structures.



Thus in accordance with this embodiment of the present invention, the processing in order to perform word recognition is distributed across the processors by controlling the processors to perform processing on different lexical trees. The controller controls the processor by the processes to provide for efficient process management by distributing lexical processing to appropriate processors.

The lexical tree data structure can comprise a phone model of words, wherein the components comprise phones. For reduced storage, the lexical tree data structure can comprise a mono phone lexical tree. The mono phone lexical tree can be used to generate context dependent phone models dynamically. This enables the use of context dependent phone models for matching and hence increased accuracy whilst not increasing memory requirements. Alternatively, the lexical tree data structure can comprise context dependent phone models.

The processing performed by each processor in one embodiment comprises the comparison of the speech parameters with the lexical data, e.g. phone models or data derived from the lexical data (e.g. dynamically generated context dependent phone models) to identify words as a word recognition event and to send information identifying the identified words to the results memory as the processing results. In this embodiment a language model processor arrangement can be provided for providing a language model output for modifying the processing results at a word recognition event by a lexical tree processor. The modification can either take place at each lexical tree processor, or at the language model processing arrangement.

In one embodiment each lexical tree processor determines an output score for words in the processing results at word recognition events. Thus in this embodiment the language model processing arrangement can modify the score using a score for a language model for n preceding words, where n is an integer.

In one embodiment the controller instructs a lexical tree processor to process a lexical tree by passing a lexical tree identifier for the lexical tree and history data for a recognition path associated with the lexical tree from the results memory. The history data preferably includes an accumulated score for the recognition path. This enables a score to be determined based on the score for the recognition path to accumulate a new score during recognition carried out using the lexical tree data structure. The scores can be output in the processing results to the results memory during the processing of the speech parameters so that the scores can be used for pruning.

In one embodiment of the present invention, each lexical tree processor operates on more than one lexical tree at the same time, e.g. two lexical trees represented by two different lexical tree data structures, or two lexical trees represented by the same data structure but displaced in time (which can be termed to instances of the same lexical tree).

At word recognition events, the controller determines new lexical tree identifiers for storing in the results memory for words identified in the results memory for respective word events. In order to reduce the processing, the controller can prune the new lexical tree identifiers to reduce the number of lexical trees which are required to be processed. This pruning can be achieved using context dependant n phones to reduce the number of possible next phones. The number can be further reduced by using a language model look ahead technique.

In one embodiment of the present invention, the lexical tree processors are arranged in groups or clusters. The lexical memory arrangement comprises a plurality of partial lexical memories. Each partial lexical memory is connected to one of

the groups of lexical tree processors and contains part of the lexical data. Thus a group of lexical tree processors and a partial lexical memory form a cluster. Each lexical tree processor is operative to process the speech parameters using a partial lexical memory and the controller controls each lexical tree processor to process a lexical tree corresponding to partial lexical data in a corresponding partial lexical memory.

In another embodiment of the present invention the lexical memory arrangement comprises a plurality of partial lexical memories. Each partial lexical memory being connected to one of the lexical tree processors and containing part of the lexical data. Each lexical tree processor processes the speech parameters using a corresponding partial lexical memory and the controller is operative to control each lexical tree processor to process a lexical tree corresponding to partial lexical data in a corresponding partial lexical memory.

In one embodiment of the present invention the lexical memory arrangement stores the lexical tree data structures as Hidden Markov Models and the lexical tree processors are operative to perform the Viterbi search algorithm using each respective lexical tree data structure. Thus in this way, this embodiment of the present invention provides a parallel Viterbi lexical tree search process for speech recognition.

The first aspect of the present invention is a special purpose circuit built for performing the speech recognition search process in which there are a plurality of processors for performing parallel lexical tree processing on individual lexical tree processors.

In another aspect of the present invention a speech recognition circuit comprises an input port such as an input buffer for receiving parameterized speech data such as feature vectors. A plurality of lexical memories are provided which contain in combination complete lexical data for word recognition. Each lexical memory contains part of the complete lexical data. A plurality of processors are provided connected in parallel to the input port for processing the speech parameters in parallel. The processors are arranged in groups in which each group is connected to a corresponding lexical memory to form a cluster. A controller controls each processor to process the speech parameters using partial lexical data read from a corresponding lexical memory. The results of processing the speech parameters are output from the processors as recognition data.

Thus this aspect of the present invention provides a circuit in which speech recognition processing is performed in parallel by groups of processors operating in parallel in which each group accesses a common memory of lexical data. This aspect of the present invention provides the advantage of parallel processing of speech parameters and benefits from a limited segmentation of the lexical data. By providing a plurality of processors in a group with a common memory, flexibility in the processing is provided without being bandwidth limited by the interface to the memory that would occur if only a single memory were used for all processors. The arrangement is more flexible than the parallel processing arrangement in which each,processor only has access to its own local memory and requires fewer memory interfaces (i.e. chip pins). Each processor within a group can access the same lexical data as any other processor in the group. The controller can thus control the parallel processing of input speech parameters in a more flexible manner. For example, it allows more than one processor to process input speech parameters using the same lexical data in a lexical memory. This is because the lexical data is segmented into domains which are accessible by multiple processors.

In a preferred embodiment this aspect of the present invention is used in combination with the first aspect of the present invention. In such an arrangement each processor performs lexical tree processing and the lexical data stored in each lexical memory comprises lexical tree data structures which each comprise a model of words having common prefix components and an initial component that is unique.

In preferred embodiments of the second aspect of the present invention, the preferred embodiments of the first aspect of the present invention are incorporated.

Embodiments of the present invention will now be described with reference to the accompanying drawings in which:

FIG. **1** is a diagram of a speech data processing circuit for generating parameterized speech data (feature vectors);

FIG. **2** is a diagram of a speech recognition circuit in accordance with an embodiment of the present invention;

FIGS. **3***a* and **3***b* are schematic diagrams illustrating lexical tree structures;

FIG. **4** is a flow diagram illustrating the process performed by a lexical tree processor to determine a temporary lexical tree score in accordance with an embodiment of the present invention;

FIG. **5** is a flow diagram illustrating the process performed by the lexical tree processor for processing the input feature vectors in accordance with an embodiment of the present invention; and

FIG. **6** is a flow diagram illustrating the process performed by the controller in accordance with an embodiment of the present invention.

FIG. **1** illustrates a typical circuit for the parameterization of input speech data. In this embodiment the parameters generated are speech vectors.

A microphone **1** records speech in an analogue form and this is input through an anti-aliasing filter **2** to an analogue-to-digital converter **3** which samples the speech at 48 kHz at 20 bits per sample. The digitized output signal is normalized (**4**) to generated a 10 millisecond data frame every 5 milliseconds with 5 milliseconds overlap (**5**). A pre-emphasis operation **6** is applied to the data followed by a hamming window **7**. The data is then fast Fourier transformed (FFT) using a 512 point fast Fourier transform (**8**) before being filtered by filter bank **9** into 12 frequencies. The energy in the data frame **5** is also recorded (**13**) as an additional feature and together with the 12 frequency outputs of the filter bank **9**, 13 feature vectors (**10**) are thus produced and these are output as part of the 39 feature vectors **14**. First and second derivatives (**11** and **12**) are taken of the 13 feature vectors **10** to complete the generation of the 39 feature vectors **14**.

The arrangement illustrated in FIG. **1** is purely given for illustration. The present invention encompasses any means by which speech and data can be parameterized to a suitable form for input to the search process as will be described in more detail hereinafter.

FIG. **2** is a schematic diagram of a speech recognition circuit in accordance with an embodiment of the present invention for performing the search process. The parameterized speech data, which in this embodiment comprise feature vectors are input to a feature vector buffer **20**. The feature vector buffer **20** is provided to buffer the incoming feature vectors to allow lexical tree processors **21** to read and process the feature vectors in the buffer **20** via a feature vector bus **24**. A plurality k of lexical tree processors **21** are arranged in a respective lexical tree processor cluster **22**. Each lexical tree processor cluster **22** has an acoustic model memory **23** in which is stored lexical data for use by the lexical tree processors **21** within the lexical tree processor cluster **22**. Each lexical tree processor **21** in the lexical tree processor cluster **22** are connected to the acoustic model memory **23** within the

lexical tree processor **22**. There are N lexical tree processor clusters and thus there are Nk lexical tree processors **21** connected by the feature vector bus **24** to the feature vector buffer **20**. Each lexical tree processor **21** is capable of processing a different lexical tree and thus Nk lexical trees can be processed in parallel. The acoustic model memories **23** store as a whole a complete set of lexical data, i.e. lexical tree data structures for use in the lexical tree processing by the lexical tree processors **21**. Each acoustic model memory **23** contains part or a segment of the lexical tree data. Since lexical tree processors **21** in a lexical tree processor cluster **22** access the same acoustic model memory **23**, it is possible for more than one lexical tree processor **21** to process the same lexical data. This provides for some degree of flexibility in the controlling of the processing by the lexical tree processors **21**. Further, the acoustic model memories **23** need not contain only one copy of the lexical data. It is possible to build in a redundancy in the data to further enhance the flexibility. This avoids any bottleneck in the processing due to the search processing focusing on a small number of lexical trees.

A results memory **25** is provided for storing processing results from the lexical tree processors **21** which are received over the path score and history bus **26**. The results memory **25** also stores information on lexical trees to identify which lexical trees are to be processed. A search controller **27** is provided to control the processing performed by the lexical tree processors **21** in dependence upon a program and data stored in program and data memory **28**. The search controller reads the path scores and lexical tree identifiers from the results memory and controls the lexical tree processors accordingly. A language model processor **29** is provided which is connected to each lexical tree processor **21** by a language model bus **30**. The language model processor **29** accesses a language model memory **31** to read language model data for provision to lexical tree processors **21** in response to language model data requests. External control of the language model memory **31** is provided by a word constrains input. The language model processor **29** determines a score for a word occurring following N previous words using N grams. When a lexical tree processor requires a language model score a request is sent to the language model processor **29** over the language model bus **30** identifying the current word and the N−1 previous words. A language model score for the N gram can be returned to the lexical tree processor **21** for the modification of the score at the end of a branch of lexical tree processing. The lexical tree processor can modify the score in accordance with the language model and output a score to the results memory **25** for a word at the end of a branch of the lexical tree processing. Thus the results memory stores the results as an ordered list of scores for words together with their histories.

The results memory **25** stores the following data:

1. initial lexical tree data. This comprises pointers to an initial set of lexical trees. No history data is associated with the initial set of lexical trees. The initial set of lexical trees is predetermined and stored in the results memory **25** based on the most likely initial phones of an utterance. This initial lexical tree data is required to initialize the search process.
2. History data for search results. This comprises a record of a recognition path through the lexical tree recognition process performed by the lexical tree processors **21**. The history data includes the current word, the previous N−1 words, the current accumulated score, the phone history (for use in the determination of likely next lexical trees using cross word context dependent tri-phones), and an identifier or pointer to the lexical tree used for identifying the word.



3. Best scores for best paths being processed by each lexical tree processor **21**. This information enables the search controller **27** to monitor the processing being performed by lexical tree processors **21** to determine whether a global pruning strategy should be applied in order to reassign processing performed by a lexical tree processor if its best score for its best path is below a threshold or well below the best scores for the paths being processed by other lexical tree processors **21**.
4. Temporary lexical tree scores. These comprise tree scores which are determined as temporary scores to prune the next lexical trees to be processed at word ends. The temporary lexical tree scores include lexical tree identifiers or pointers to identify the next lexical trees to be processed. The scores enable the pruning of this list.
5. Pruning threshold. This can be a global threshold value for use in the pruning of the lexical trees globally, or a local threshold value for use by a lexical processor for locally pruning the processing performed by the lexical processor **21**.

The acoustic model memory **23** stores a Hidden Markov Model for acoustically modelling words as lexical trees. The acoustic model memory **23** stores a plurality of lexical tree data structures. Each lexical tree data structure comprises an n phone model of a number of words having common prefix phones. The first node of the lexical tree (the root) comprises a common n phone to all words in the lexical tree and uniquely identifies the lexical tree.

Each lexical tree processor **21** includes on-board memory (or local memory) to be used during the lexical tree processing. This working memory has to store all of the parameters currently working on including current scores for all paths being processed within the lexical tree, and previous N−1 words for the lexical tree. The local storage of the previous N−1 words enables the lexical tree processor **21**, when a word end is reached along a branch of the lexical tree, to send a request for the language model score for an N gram by sending the identity of the N−1 previous words together with the word identified at the end of the branch.

FIG. **3***a* and **3***b* schematically illustrate lexical trees which can be processed by the lexical tree processor **21** during the recognition of the two words HARD ROCK. In FIG. **3***a* a previous lexical tree terminated at a branch recognizing the word YOU and terminating with the mono phone uw which is associated with two context dependent tri-phones y−uw+k and y−uw+h. Thus the context dependent tri-phone associated with the last phone in the lexical tree word model for YOU indicates two possible next lexical trees, i.e. the lexical trees beginning with the mono phone k and h and having a left context phone of uw. As can be see in FIG. **3***a* this word end YOU therefore leads to two possible next lexical trees. These two lexical trees are traversed in parallel by two different lexical tree processors accumulating scores for matching of input feature vectors into Hidden Markov Models of the context dependent tri-phones associated with each node in the tree. When the end of the branch is reached, a word end event is reached and a word is recognized. As can be seen in FIG. **3***a*, in this example since four words are of similar phone length, it is possible for the search strategy based on inputting feature vectors in parallel to simultaneously reach a number of possible word ends. These possible word ends are sent as processing results to the results memory. The results memory stores the accumulated score at the word end together with phone history to identify the last phone and its associated context dependent tri-phones. In this example, considering the branch where the word HARD is recognized, the last phone is d which has associated with it two context dependent

tri-phones r−d+1 and r−d+r. Thus the search controller **27** can identify next possible lexical trees using the next phone in the context dependent tri-phone. In this case, as can be seen in FIG. **3***b*, the next possible lexical trees begin with the phones r and **1** and have associated with them context dependent tri-phones d−r+ao and d−1+ao respectively. Thus these are the next lexical trees that require processing following the end node or word event detected in the processing lexical tree **2**. FIG. **3***b* thus represents the processing that is required at the end of FIG. **3***a* at the word node for HARD in processing the second lexical tree.

As can be seen in FIG. **3***b*, the two lexical trees are processed in parallel by traversing through the branches to reach word ends by sequentially entering in feature vectors in parallel to lexical tree processors processing the respective lexical trees. When the word end is reached, the accumulated score is output to the results memory as described before. In this case since it is the last word, the important context dependent tri-phone associated with the final phone has silence (sil) as the following phone. The final phone can in fact have 50 context dependent tri-phones associated with it if there are 50 possible next phones (including silence). FIG. **3***b* only illustrates the relevant one for the end of the utterance.

FIG. **4** is a flow diagram illustrating the processing performed by a lexical tree processor **21** in order to determine a temporary lexical tree score for a lexical tree.

When a word end is identified by a lexical tree processor, the processing results are sent to the results memory **25**. The results memory identifies the last phone of the recognized words and thus enables the search controller **27** to identify possible next lexical trees using context dependent tri-phones as illustrated in FIG. **3***b*. Although in theory if there are 50 phones there are $50^2$ possible lexical trees, due to the use of the context dependant triphones, only 100-200 lexical trees are likely to be identified as possible lexical trees. The search controller needs to further prune out the lexical trees which are unlikely to generate likely paths with high scores. In order to do this, instructions are sent to the lexical tree processors to determine a temporary lexical tree score which can be used to prune out lexical trees from the processing which have a low score.

The processing by the lexical tree processor to generate the temporary lexical tree score is shown in FIG. **4** and for this process, following initialization, a lexical tree processor **21** awaits receipt of data for a new lexical tree from the search controller **27** (step S**2**). The data comprises a lexical tree pointer on an identifier to lexical tree data stored in the acoustic model memory **23**, i.e. the lexical tree data structure, previous N−1 words (for use in language model score determination by the language model processor **29**), and the current path score. The previous N−1 words includes the previously recognized word for which a score has been accumulated.

The lexical tree processor **21** then attempts to read the next feature vector from the feature vector buffer **20** (step S**3**) and if this is not available, an error occurs (step S**4**). If the feature vector is available in the feature vector buffer **20**, the lexical tree processor **21** reads the feature vector from the buffer **20** (step S**5**) and evaluates the state transitions for the first lexical tree node using the acoustic model data in the acoustic model memory **23** (step S**6**). Since the state transitions for the first node will require several feature vectors to complete, a score is determined for a state transition of the first node in the lexical tree (step S**7**). The lexical tree processor **21** then sends a request to the language model processor **29** for a language model score. The request includes the previous N−1 words and all of the possible words represented by the lexical tree data structure in the acoustic model memory **23** (step S**8**). The language model processor returns scores for each of the N grams ending in the words represented by the lexical tree. The lexical tree processor thus receives language model scores for the words in the lexical tree and picks the highest score (step S**9**). Alternatively, the language model processor **29** can select the highest n gram score and return this to the lexical tree processor for the determination of the temporary lexical tree score. The temporary lexical tree score for the lexical tree is then generated using the score determined for the first state transition of the first lexical tree node and the highest language model score (step S**10**). The temporary lexical tree score is then sent by the lexical tree processor **21** to the results memory **25** over the bus **26** (step S**11**). In this mode of processing, the processor then awaits the next data of the new lexical tree from the search controller (step S**2**).

This process is just one of the processes performed by the lexical tree processor. The main processing performed by the lexical tree processor is the lexical tree evaluation. This process will now be described with reference to the flow diagram of FIG. **5**.

After the start of the process (step S**20**) a lexical tree processor awaits receipt of data for a lexical tree from the search controller (step S**21**). The data comprises a lexical tree pointer to a lexical tree data structure stored in the acoustic model memory **23**, the previous N−1 words in the recognition path, and the current accumulated score.

The lexical tree processor then attempts to read the next feature vector from the feature vector buffer **20** (step S**22**). If this is not available, an error occurs (step s**23**). If the feature vector is available in the feature vector buffer **20**, the feature vector is read from the feature vector buffer **20** by the lexical tree processor **21** (step S**24**) and the lexical tree processor **21** evaluates the state transitions for each path using the acoustic model data in the acoustic model memory **23** (step S**25**). Scores for the paths are determined in accordance with the conventional Viterbi search technique and the best score for the best path is sent to the results memory **25** while the path histories are stored locally in the on-board memory of the lexical tree processor **21** (step S**26**). Pruning is applied to the lexical tree by the lexical tree processor to delete paths in order to keep the breadth of the search manageable (step S**27**). The pruning applied locally by the lexical tree processor can be purely on the basis of a local threshold, which can be provided by the search controller **27**, or it can be determined on a relative basis dependent upon the range of scores for paths being processed within the lexical tree processor **21**. If the path has not reached a word end (step S**28**) the lexical tree processor **21** attempts to read the next feature vector from the feature vector buffer **20** (step S**22**). If the path reaches a word end (step S**28**) the score must be modified by the language model score (step S**29**). There are two ways in which this can be done, in this embodiment the lexical tree processor **21** sends a request to the language model processor **29** for a language model score. The request includes the current word and the N−1 previous words. The language model processor thus returns the language model score and the language model score is used to modify the current accumulated score at the word end. Alternatively, the lexical tree processor can send the language model processor **29** not just the current word and the N−1 previous words, but also the current accumulated score. The language model processor then determines the language model score using the language model memory **31** and modifies the accumulated score using the language model score. The language model processor **29** can then return the modified score to the lexical tree processor **21** which can then pass it to the results memory **25**, or a connec-

tion between the language model processor **29** and the results memory **25** (not shown) can enable the language model processor **29** to send the score directly to the results memory **25** for the lexical tree processor **21**. In this latter case, the language model processor **29** must also receive a lexical tree pointer to identify the lexical tree for which the score applies.

Assuming in this embodiment that the lexical tree processor calculates the modified score (step S**29**), the score and history is then sent by the lexical tree processor **21** to the results memory **25** (step S**30**). The history data sent to the results memory **25** comprises the lexical tree pointer identifying the lexical tree, the modified score at the word end, the phone history identifying at least the last phone to allow for context dependent tri-phone determination of next lexical trees, and the identity of the word identified in the evaluation process.

The lexical tree processor then deletes the path and history data in its on-board memory (step S**31**) and determines if there are any paths still left to be processed (step S**32**). If so, the lexical tree processor **21** tries to access the next feature vector available in the feature vector buffer **20** (step S**22**). If there are no paths left to be processed, a message is sent by the lexical tree processor to the search controller **27** to indicate that the lexical tree has been processed (step S**33**). In this level of processing the lexical tree processor will then await the next data for a lexical tree from the search controller **27**.

The flow diagram of FIG. **5** illustrates the processing of a single instance of a lexical tree. The single point in time a lexical tree can start to be processed from a feature vector, i.e. lexical tree processing starts at a time frame. However, due to a word end returned from lexical tree processing in another lexical tree processor, the lexical tree processor may also be asked during a subsequent time frame to start processing another instance of the lexical tree with a different path history. Thus a lexical tree processor **21** can be processing multiple instances of the lexical tree with different paths having different path histories. In this instance, the pruning applied in step S**27** needs to take into account all paths currently being processed in all instances of lexical tree processing by the lexical tree processor **21**. Thus although pruning is applied locally, it is applied over more than one instance of the lexical tree.

The operation of the search controller **27** will now be described with reference to the flow diagram of FIG. **6**.

After initialization (step S**40**) initial lexical tree data in the results memory **25** is read (step S**41**). The search controller distributes the initial lexical tree data amongst the lexical tree processors for temporary lexical tree score determination (step S**42**) as described with reference to FIG. **4**. Temporary lexical tree scores are returned by the lexical tree processors **21** to the results memory **25** (step S**43**) and the search controller reads the temporary lexical tree scores in the results memory **25** and prunes the lexical trees in the results memory **25** on the basis of the read temporary lexical scores (step S**44**). Thus the set of initial lexical trees can be quite large and this requires a large number of temporary lexical tree score determinations to be performed by the lexical tree processors **21**. However, since the lexical tree processors only need to determine a score for a single feature vector, this can be performed quite quickly. Thus the number of lexical trees for which full evaluation by the lexical tree processors **21** is required can thus be reduced by the selection of the lexical trees with the highest temporary lexical tree score. The search controller than distributes the lexical tree processing among the lexical tree processors **21** by sending each lexical tree processor data including a lexical tree pointer to a lexical tree data structure in the acoustic model memory **23** in the cluster **22**. The search controller **27** then awaits the entry of processing results, i.e. history and scores in the results memory **25** for words (step S**46**). When history and scores for words are entered in the results memory, the search controller **27** determines next possible lexical trees using cross-word tri-phones (step S**47**). For example, as illustrated in FIGS. **3***a* and **3***b*, when the word HARD is entered in the results memory, the search controller identifies the final phone of the word as being d and thus next possible tri-phones can comprise any tri-phones having the left phone d. If there are 50 possible phones, this results in $50^2$ possible tri-phones. In practice, only 1 to 200 are likely. However, this may still represent too many for full evaluation and thus the lexical tree data for the next possible lexical trees are distributed amongst the lexical tree processors for temporary lexical tree score determination (step S**48**). Temporary lexical tree scores are returned to the results memory **25** by the lexical tree processors **21** which execute the process as described with reference to FIG. **4** (step S**49**).

The search controller **27** prunes the list of next lexical trees in the results memory **25** on the basis of the temporary lexical scores (step S**50**). The search controller then determines if the words in the results memory have been processed and there are no lexical trees left to be processed and whether or not lexical tree processes are finished (step S**51**). If not, the lexical tree processing is distributed amongst the lexical tree processors (step S**45**). When the end of the utterance is reached, next possible lexical trees will all have been processed and the results can be output from the results memory **25** (step S**52**).

It can be seen from the foregoing description that the embodiment of the invention provides for an efficient parallel processing system incorporating a parallel lexical tree processing architecture and a segmented lexicon storage architecture. Each lexical tree processor performs lexical tree evaluation and language model look ahead for evaluation of company scores for lexical trees to assist in pruning of the number of potential lexical trees that require processing. The architecture is ideally suited to synchronous breadth first searching e.g. a Viterbi search (i.e. real time recognition). The breadth first search is performed synchronously by the parallel processors on the input search parameters when the language model look ahead takes place, it is possible for the feature vector buffer **20** to store a small number, e.g. one or two, feature vectors whilst the language model look ahead is performed on the feature vector so that synchronous breadth first searching can be carried out by re-reading the feature vector out of the buffer **20** when it is determined which lexical trees are to be evaluated by the lexical trees processors **21** after a word end. Thus, the feature vector buffer **20** provides a method of decoupling the search parameterisation circuitry from the search circuit.

If the buffer causes processing to get too far behind, e.g. there are a lot of word end language model look ahead operations to be performed, it is possible for the lexical tree processors to be controlled to temporarily halve their local beamwidths (i.e. more vigorously prune) and thus complete their processing more quickly. This would allow the content of the buffer to be decreased as the processors catch up.

Although the present invention has been described hereinabove with reference to a specific embodiment, it will be apparent to a skilled person in the art that modifications lie within the spirit and scope of the present invention. Although in the embodiment described hereinabove, the acoustic model memories **23** were described as storing parts of the lexical data, it is also possible for more than one copy of the lexical data to be stored in different acoustic model memories **23**. Thus, more than one lexical tree processor cluster **22** can have

access to the same lexical data. This increases the flexibility and allows the controller to avoid any bottlenecks in processing which, for example, can occur if the highest pass scores all require processing by one or a number of lexical tree data structures residing in one of the acoustic model memories **23**.

Although in the embodiments described hereinabove, the memory is partitioned in to a plurality of acoustic model memories **23**, the present invention is not limited to the partitioning of the lexical data and a plurality of lexical tree processors can access a single memory containing lexical data.

The lexical data stored can comprise mono phone models of words. When the lexical data is partitioned, these can be distributed evenly across the memories. If there are 50 mono phones, there will be 50 lexical tree data structures having a unique initial model phone data node. Alternatively, the lexical tree data structures can comprise a context dependent n phone word models. If there are 50 mono phones, there are potentially $50^n$ lexical tree data structures. For tri-phones, this comprises $50^3$ (i.e. 125,000). These are distributed so that trees with the same left context tri-phone, are eventually spread across memories when the lexical data is partitioned. Thus in this way the word end where the left context tri-phone is fixed i.e. the same, the next possible lexical trees will inherently be distributed across the memories, thus ensuring efficient parallel processing of the next lexical trees.

Although the embodiment described hereinabove uses a single results memory accessible by all processors, the present invention encompasses a plurality of results memories. For example, a results memory can be associated with each processor to store the processing results and the controller can read the results in the plurality of results memories in order to control the processors.

Although in the embodiment described above the input speech parameters are described as being feature vectors, the present invention encompasses any type of parameterization of speech data as an input to the circuit. Such parameterization methods are well known in the art.

Although in the embodiment described above there is only one language model processor, more than one can be used and these can be used to operate in parallel for processing scores at word boundaries.

The invention claimed is:

1. A speech recognition circuit comprising:

input means for receiving processed speech parameters;

lexical memory means containing lexical data for word recognition, said lexical data comprising a plurality of lexical tree data structures, each lexical tree data structure comprising a model of words having common prefix components, an initial component of each lexical tree data structure being unique;

a plurality of lexical tree processors connected in parallel to said input means for processing the speech parameters in parallel to perform parallel lexical tree processing for word recognition by accessing said lexical data in said lexical memory means;

results memory means connected to said lexical tree processors for storing processing results from said lexical tree processors and lexical tree identifiers to identify lexical trees to be processed by said lexical tree processors; and

control processor means for controlling said lexical tree processors to process lexical trees identified in said results memory means by performing parallel processing on a plurality of said lexical tree data structures.

**2**. A speech recognition circuit according to claim **1**, wherein said lexical memory means stores said lexical tree data structure as an n phone model of words, where n is an integer, and said components comprise n phones.

**3**. A speech recognition circuit according to claim **2**, wherein said lexical memory means stores each lexical tree data structure as mono phone models of words, and said lexical tree processors are arranged to use said mono phone models to generate context dependant phone models of words dynamically for use in processing the speech parameters.

**4**. A speech recognition circuit according to claim **1**, wherein each lexical tree processor is operative to compare the processed speech parameters with said lexical data or data derived from said lexical data to identify words as a word recognition event and to send information identifying the identified words to said results memory means as the processing results.

**5**. A speech recognition circuit according to claim **4**, including language model means for providing a language model output for modifying the processing results at a word recognition event by a said lexical tree processor.

**6**. A speech recognition circuit according to claim **5**, wherein each lexical tree processor is operative to receive said language model output to modify the processing result at a word recognition event determined by said lexical tree processor and to output the modified processing result to said results memory means.

**7**. A speech recognition circuit according to claim **4**, wherein each lexical tree processor is operative to determine and output scores for words in the processing results at word recognition events.

**8**. A speech recognition circuit according to claim **1**, wherein said lexical tree processors are operative to process said speech parameters by comparing said speech parameters with said lexical data or data derived from said lexical data in said lexical memory means.

**9**. A speech recognition circuit according to claim **1**, wherein said control processor means is operative to instruct a said lexical tree processor to process a lexical tree by passing a lexical tree identifier for the lexical tree and history data for a recognition path associated with the lexical tree from said results memory means.

**10**. A speech recognition circuit according to claim **9**, wherein said history data includes an accumulated score for the recognition path.

**11**. A speech recognition circuit according to claim **1**, wherein said control processor means is operative to pass a lexical tree identifier to a said lexical tree processor, said lexical tree processor is operative to read lexical data for the identified lexical tree from said lexical memory means and to process said speech parameters using said read lexical data.

**12**. A speech recognition circuit according to claim **1**, wherein said lexical tree processors are operative to determine and output scores in the processing results during the processing of said speech parameters.

**13**. A speech recognition circuit according to claim **12**, wherein said lexical tree processors are operative to prune the processing of the lexical tree in dependence upon the determined scores.

**14**. A speech recognition circuit according to claim **1**, wherein said lexical tree processors are operative to process more than one lexical tree at the same time.

**15**. A speech recognition circuit according to claim **4**, wherein said control processor means is operative to determine new lexical tree identifiers for storing in said results memory means for words identified in said results memory means.

**16**. A speech recognition circuit according to claim **15**, wherein said control processor means is operative to prune the new lexical tree identifiers.

**17**. A speech recognition circuit according to claim **16**, wherein each lexical tree processor is operative to determine and output scores for words in the processing results at word recognition events, and said control processor means is operative to prune said new lexical tree identifiers on the basis of the scores for the words stored in said results memory means.

**18**. A speech recognition circuit according to claim **1**, wherein said input means is arranged to receive said speech parameters as feature vectors.

**19**. A speech recognition circuit according to claim **1**, wherein said input means is arranged to receive said speech parameters as n phones, where n is an integer.

**20**. A speech recognition circuit according to claim **1**, wherein said lexical tree processors are arranged in groups, said lexical memory means comprises a plurality of partial lexical memory means, each partial lexical memory means being connected to one of said groups of lexical tree processors and containing part of the lexical data, each lexical tree processor is operative to process said speech parameters using a said partial lexical memory means, and said control processor means is operative to control each lexical tree processor to process a lexical tree corresponding to partial lexical data in a corresponding partial lexical memory means.

**21**. A speech recognition circuit according to claim **1**, wherein said lexical memory means comprises a plurality of partial lexical memory means, each partial lexical memory means being connected to one of said lexical tree processors and containing part of the lexical data, each lexical tree processor is operative to process said speech parameters using a said partial lexical memory means, and said control processor means is operative to control each lexical tree processor to process a lexical tree corresponding to partial lexical data in a corresponding partial lexical memory means.

**22**. A speech recognition circuit according to claim **1**, wherein said lexical memory means stores said lexical tree data structures as Hidden Markov Models, and said lexical tree processors are operative to perform the Viterbi search algorithm using each lexical tree data structure.

**23**. A speech recognition circuit comprising:

an input buffer for receiving processed speech parameters;

lexical memory containing lexical data for word recognition, said lexical data comprising a plurality of lexical tree data structures, each lexical tree data structure comprising a model of words having common prefix components, the initial component of each lexical tree data structure being unique;

a plurality of lexical tree processors connected in parallel to said input buffer for processing the speech parameters in parallel to perform parallel lexical tree processing for word recognition by accessing said lexical data in said lexical memory;

results memory connected to said lexical tree processors for storing processing results from said lexical tree processors and lexical tree identifiers to identify lexical trees to be processed by said lexical tree processors; and

a control processor for controlling said lexical tree processors to process lexical trees identified in said results memory by performing parallel processing on a plurality of said lexical tree data structures.

**24**. A speech recognition circuit according to claim **23**, wherein said lexical memory stores said lexical tree data structure as an n phone model of words, where n is an integer, and said components comprise n phones.

**25**. A speech recognition circuit according to claim **24**, wherein said lexical memory stores said lexical tree data structure as a mono phone model of words, and each lexical tree processor generates context dependant phone models of words dynamically for use in processing the speech parameters.

**26**. A speech recognition circuit according to claim **23**, wherein each lexical tree processor compares the processed speech parameters with the lexical data or data derived from the lexical data to identify words as a word recognition event and sends information identifying the identified words to said results memory as the processing results.

**27**. A speech recognition circuit according to claim **26**, including a language model processor for providing a language model output for modifying the processing results at a word recognition event by a said lexical tree processor.

**28**. A speech recognition circuit according to claim **27**, wherein each lexical tree processor receives said language model output to modify the processing result at a word recognition event determined by said lexical tree processor and outputs the modified processing result to said results memory.

**29**. A speech recognition circuit according to claim **26**, wherein each lexical tree processor determines and outputs scores for words in the processing results at word recognition events.

**30**. A speech recognition circuit according to claim **23**, wherein said lexical tree processors process said speech parameters by comparing said speech parameters with said lexical data in said lexical memory.

**31**. A speech recognition circuit according to claim **23**, wherein said control processor instructs a said lexical tree processor to process a lexical tree by passing a lexical tree identifier for the lexical tree and history data for a recognition path associated with the lexical tree from said results memory.

**32**. A speech recognition circuit according to claim **31**, wherein said history data includes an accumulated score for the recognition path.

**33**. A speech recognition circuit according to claim **23**, wherein said control processor passes a lexical tree identifier to a said lexical tree processor, said lexical tree processor reads lexical data for the identified lexical tree from said lexical memory and processes said speech parameters using said read lexical data.

**34**. A speech recognition circuit according to claim **23**, wherein said lexical tree processors determine and output scores in the processing results during the processing of said speech parameters.

**35**. A speech recognition circuit according to claim **34**, wherein said lexical tree processors prune the processing of the lexical trees in dependence upon the determined scores.

**36**. A speech recognition circuit according to claim **23**, wherein said lexical tree processors process more than one lexical tree at the same time.

**37**. A speech recognition circuit according to claim **26**, wherein said control processor determines new lexical tree identifiers for storing in said results memory for words identified in said results memory.

**38**. A speech recognition circuit according to claim **37**, wherein said control processor means is operative to prune the new lexical tree identifiers.

**39**. A speech recognition circuit according to claim **38**, wherein each lexical tree processor determines and outputs scores for words in the processing results at word recognition events, and said control processor prunes said new lexical tree identifiers on the basis of the scores for the words stored in said results memory means.

**40**. A speech recognition circuit according to claim **23**, wherein said input buffer receives said speech parameters as feature vectors.

**41**. A speech recognition circuit according to claim **23**, wherein said input buffer receives said speech parameters as n phones, where n is an integer.

**42**. A speech recognition circuit according to claim **23**, wherein said lexical tree processors are arranged in groups, said lexical memory comprises a plurality of partial lexical memories, each partial lexical memory being connected to one of said lexical tree processors and containing part of the lexical data, each lexical tree processor processes said speech parameters using a said partial lexical memory, and said control processor controls each lexical tree processor to process a lexical tree corresponding to partial lexical data in a corresponding partial lexical memory.

**43**. A speech recognition circuit according to claim **23**, wherein said lexical memory comprises a plurality of partial lexical memories, each partial lexical memory is connected to one of said lexical tree processors and containing part of the lexical data, each lexical tree processor processes said speech parameters using a said partial lexical memory, and said control processor controls each lexical tree processor to process a lexical tree corresponding to partial lexical data in a corresponding partial lexical memory.

**44**. A speech recognition circuit according to claim **23**, wherein said lexical memory stores said lexical tree data structures as Hidden Markov Models, and each lexical tree processor performs the Viterbi search algorithm using a respective said lexical tree data structure.

**45**. A speech recognition circuit comprising:

input means for receiving processed speech parameters;

a plurality of lexical memory means containing in combination complete lexical data for word recognition, each lexical memory means containing part of said complete lexical data;

a plurality of processors connected in parallel to said input means for processing the speech parameters in parallel, said processors being arranged in groups of processors, each group of processors being connected to a lexical memory means;

control processor means for controlling each processor to process said speech parameters using partial lexical data read from a said lexical memory means; and

receiving means for receiving the results of the processing of the speech parameters from said processors, wherein

each lexical memory means stores lexical data as at least one lexical tree data structure, each lexical tree data structure comprises a model of words having common prefix components, and an initial component of each lexical tree data structure is unique, and

wherein said processors are operative to use lexical data corresponding to more than one lexical tree at the same time.

**46**. A speech recognition circuit comprising:

an input buffer receiving processed speech parameters;

a plurality of lexical memories containing in combination complete lexical data for word recognition, each lexical memory containing part of said complete lexical data;

a plurality of processors connected in parallel to said input buffer for processing the speech parameters in parallel, said processors being arranged in groups of processors, each group of processors being connected to a lexical memory;

a control processor controlling each processor to process said speech parameters using partial lexical data read from a respective said lexical memory; and

a results memory storing the results of the processing of the speech parameters from said processors.

**47**. A speech recognition circuit according to claim **46**, wherein each lexical memory stores lexical data as at least one lexical tree data structure, each lexical tree data structure comprises a model of words having common prefix components, and an initial component of each lexical tree data structure is unique.

**48**. A speech recognition circuit according to claim **47**, wherein each lexical memory stores said lexical tree data structure as an n phone model of words, where n is an integer, and said components comprise n phones.

**49**. A speech recognition circuit according to claim **48**, wherein each lexical memory stores said lexical tree data structure as a mono phone model of words, and said lexical tree processors use said mono phone models to generate context dependant phone models of words dynamically for use in processing the speech parameters.

**50**. A speech recognition circuit according to claim **46**, wherein each processor compares the processed speech parameters with the lexical data in a corresponding lexical memory to identify words as a word recognition event and sends information identifying the identified words to said results memory as the processing results.

**51**. A speech recognition circuit according to claim **50**, a including language model processor providing a language model output for modifying the processing results at a word recognition event by a said processor.

**52**. A speech recognition circuit according to claim **51**, wherein each processor receives said language model output to modify the processing result at a word recognition event determined by said processor and outputs the modified processing result to said results memory.

**53**. A speech recognition circuit according to claim **51**, wherein each processor determines and outputs scores for words in the processing results at word recognition events.

**54**. A speech recognition circuit according to claim **46**, wherein said processors process said speech parameters by comparing said speech parameters with said lexical data or data derived from lexical data in respective said lexical memories.

**55**. A speech recognition circuit according to claim **47**, wherein said control processor instructs a said processor to process a lexical tree by passing a lexical tree identifier for the lexical tree and history data for a recognition path associated with the lexical tree to said processor.

**56**. A speech recognition circuit according to claim **55**, wherein said history data includes an accumulated score for the recognition path.

**57**. A speech recognition circuit according to claim **47**, wherein said control processor passes a lexical tree identifier to a said processor, said processor reads lexical data for the identified lexical tree from a corresponding said lexical memory and processes said speech parameters using said read lexical data.

**58**. A speech recognition circuit according to claim **46**, wherein said processors determine and output scores in the processing results during the processing of said speech parameters.

**59**. A speech recognition circuit according to claim **58**, wherein said processors prune the processing of the speech parameters in dependence upon the determined scores.

**60**. A speech recognition circuit according to claim **47**, wherein said processors use lexical data corresponding to more than one lexical tree at the same time.

**61**. A speech recognition circuit according to claim **50**, wherein said control processor identifies lexical data in said

lexical memories required for processing next words at word recognition events, and controls said processors to process the speech parameters using the identified lexical data.

**62**. A speech recognition circuit according to claim **61**, wherein said control processor prunes the identified lexical data.

**63**. A speech recognition circuit according to claims **62**, wherein each processor determines and outputs scores for words in the processing results at word recognition events, and said control processor prunes the identified lexical data on the basis of the scores for the words.

**64**. A speech recognition circuit according to claim **46**, wherein said input buffer is arranged to receive said speech parameters as feature vectors.

**65**. A speech recognition circuit according to claim **46**, wherein said input buffer is arranged to receive said speech parameters as n phones, where n is an integer.

**66**. A speech recognition circuit according to claim **46**, wherein said control processor controls each processor to process a lexical tree corresponding to partial lexical data in a corresponding said lexical memory.

**67**. A speech recognition circuit according to claim **46**, wherein said lexical memories store said lexical data as Hidden Markov Models, and each processor performs the Viterbi search algorithm using a respective part of said lexical data.

**68**. A speech recognition method comprising:

receiving processed speech parameters;

storing lexical data for word recognition, said lexical data comprising a plurality of lexical tree data structures, each lexical tree data structure comprising a model of words having common prefix components, an initial component of each lexical tree data structure being unique;

passing the speech parameters in parallel to a plurality of lexical tree processors to perform parallel lexical tree processing for word recognition by accessing said lexical data;

storing processing results from said lexical tree processors and lexical tree identifiers to identify lexical trees to be processed by said lexical tree processors; and

controlling said lexical tree processors to process lexical trees identified by the stored identifiers by performing parallel processing on a plurality of said lexical tree data structures.

**69**. A speech recognition method comprising:

receiving processed speech parameters;

storing complete lexical data for word recognition in a plurality of lexical memory means, each lexical memory means containing part of said complete lexical data;

processing the speech parameters in parallel using a plurality of processors connected in parallel, said processors being arranged in groups of processors, each group of processors being connected to a said lexical memory means;

controlling each processor to process said speech parameters using partial lexical data read from a said lexical memory means; and

storing the results of the processing of the speech parameters from said processors.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO. : 7,587,319 B2
APPLICATION NO. : 10/503463
DATED : September 8, 2009
INVENTOR(S) : Mark Catchpole



It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Title Page:

The first or sole Notice should read --

Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1137 days.

Signed and Sealed this

Twenty-first Day of September, 2010

David J. Kappos
*Director of the United States Patent and Trademark Office*

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2025, a true and correct copy of the foregoing was timely filed with the Clerk of the Court using the appellate CM/ECF system, which will send notifications to all counsel registered to receive electronic notices.

*/s/ Kayvan Noroozi*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(f) and the Rules of this Court, because it contains 7,538 words (as determined by the Microsoft Word for Mac Version 16.70 word-processing system used to prepare the brief), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) and the Rules of this Court because it has been prepared in a proportionally spaced typeface using the Microsoft Word for Mac Version 16.70 word-processing system in 14-point Roman font.

*/s/ Kayvan Noroozi*