**No. 24-2204**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ZENTIAN LTD.,

*Appellant*,

v.

APPLE INC.,

*Appellee*.

Appeal from the U.S. Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. IPR2023-00033, IPR2023-01192

## APPLE INC.'S RESPONSE BRIEF

BITA RAHEBI
REBECCA WEIRES SETRAKIAN
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017

BRIAN R. MATSUI
SETH W. LLOYD
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
Tel.: (202) 887-8784
BMatsui@mofo.com

*Counsel for Apple Inc.*

MAY 12, 2025

**Claim 46 of U.S. Patent No. 7,587,319**

46. A speech recognition circuit comprising:

[a] an input buffer receiving processed speech parameters;

[b] a plurality of lexical memories containing in combination complete lexical data for word recognition, each lexical memory containing part of said complete lexical data;

[c] a plurality of processors connected in parallel to said input buffer for processing the speech parameters in parallel,

[d] said processors being arranged in groups of processors, each group of processors being connected to a lexical memory;

[e] a control processor controlling each processor to process said speech parameters using partial lexical data read from a respective said lexical memory; and

[f] a results memory storing the results of the processing of the speech parameters from said processors.

Appx92.

# CERTIFICATE OF INTEREST

Counsel for Apple Inc. certify under Federal Circuit Rule 47.4 that the following information is accurate and complete to the best of their knowledge:

1. **Represented Entities**. Provide the full names of all entities represented by the undersigned counsel in this case.

Apple Inc.

2. **Real Parties in Interest.** Provide the full names of all real parties in interest for the entities. Do not list real parties if they are the same as the entities.

None.

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

4. **Legal Representatives.** List all law firms, partners, or associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

ERISE IP, P.A.: Jennifer C. Bailey, Adam P. Seitz, Adam M. Sandwell, Christina Canino

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

Yes, see separately filed notice.

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

Not applicable.

Dated: May 12, 2025

/s/ Brian R. Matsui
Brian R. Matsui

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... iv

STATEMENT OF RELATED CASES .......... v

INTRODUCTION .......... 1

STATEMENT OF THE ISSUE .......... 2

STATEMENT OF THE CASE .......... 2

A. Processor And Memory Configurations For Parallel Speech Recognition Were Well Known By the ’319 Patent’s Priority Date .......... 2

1. Some prior-art speech recognition systems divided tasks among multiple parallel processors .......... 3

2. Prior-art parallel speech recognizers accessed data from private or shared memory .......... 5

B. The ’319 Patent Claims A Parallel Speech Recognition System With Well-Known Cluster Memory .......... 10

C. The Board Determined All Claims Would Have Been Obvious, Finding Two Independent Reasons To Combine .......... 12

SUMMARY OF ARGUMENT .......... 16

STANDARD OF REVIEW .......... 19

ARGUMENT .......... 19

SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD’S FINDINGS THAT PERSONS OF ORDINARY SKILL IN THE ART WOULD HAVE BEEN MOTIVATED TO COMBINE CHEN’S CLUSTERS WITH THELEN AND BAILEY .......... 19

A. The Board Correctly Found Motivations To Combine ....................... 19

1. Persons of ordinary skill in the art would have been motivated to combine Chen's cluster memory to consolidate overlapping lexical models and in turn improve processing efficiency ................................................ 20

2. Persons of ordinary skill in the art would have recognized known techniques to achieve parallel-processing benefits using prior art memory configurations according to their established functions ................................................ 23

B. Zentian Fails To Show That The Board's Motivation Findings Lack Substantial Evidence ................................................ 27

1. Substantial evidence supports the Board's efficiency finding ................................................ 28

2. Substantial evidence supports the Board's weighing of other "motivating considerations" ........................................... 34

a. Substantial evidence shows the combination would offer suitable flexibility and scalability .......................... 35

b. Substantial evidence shows the combination would be suitable in terms of cost ............................................ 36

c. Substantial evidence shows a skilled artisan could minimize memory collisions .......................................... 37

d. Substantial evidence shows programming effort would not be excessive .................................................. 41

CONCLUSION ................................................................................ 43

## TABLE OF AUTHORITIES

**Cases**

*Allied Erecting and Dismantling Co. v. Genesis Attachments, LLC*,
825 F.3d 1373 (Fed. Cir. 2016) ....................................................................38

*Apple Inc. v. Corephotonics, Ltd.*,
81 F.4th 1353 (Fed. Cir. 2023) ....................................................................29

*Axonics, Inc. v. Medtronic, Inc.*,
73 F.4th 950 (Fed. Cir. 2023) ..............................................................37, 38, 39

*Cisco Sys., Inc. v. K.Mizra LLC*,
No. 2022-2290, 2024 WL 3841809 (Fed. Cir. Aug. 16, 2024) ..........................25

*Honeywell Int'l Inc. v. 3G Licensing, S.A.*,
124 F.4th 1345 (Fed. Cir. 2025) ....................................................................36

*Intel Corp. v. PACT XPP Schweiz AG*,
61 F.4th 1373 (Fed. Cir. 2023) ..................................................14, 24, 27, 35, 36

*KSR Int'l. Co. v. Teleflex Inc.*,
550 U.S. 398 (2007).......................................................................20, 24, 36

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ....................................................................29

*Novartis AG v. Torrent Pharms. Ltd.*,
853 F.3d 1316 (Fed. Cir. 2017) ...............................................................40, 41

*In re NTP, Inc.*,
654 F.3d 1279 (Fed. Cir. 2011) ..........................................................19, 39, 41

*In re NuVasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ...............................................................28, 29

*Schwendimann v. Neenah, Inc.*,
82 F.4th 1371 (Fed. Cir. 2023) ....................................................................19

*In re Universal Elecs., Inc.*,
No. 2022-1716, 2023 WL 5219774 (Fed. Cir. Aug. 15, 2023) ..........................24

## STATEMENT OF RELATED CASES

No appeal has previously been before this Court or any other court from this Patent Trial and Appeal Board proceeding between Zentian Ltd. and Apple Inc. involving U.S. Patent No. 7,587,319.

Claims of the ’319 patent are also at issue in *Zentian Ltd. v. Apple Inc.*, No. 3:23-cv-02921-TLT (N.D. Cal.).

The ’319 patent was previously at issue in *Zentian Ltd v. Amazon.com, Inc.*, No. 6:22-cv-00123 (W.D. Tex.), which terminated November 20, 2024.

# INTRODUCTION

Zentian asks this Court to do something improper: to substitute itself for the Board as factfinder, re-assess expert credibility, and re-weigh the evidence in Zentian's favor. Zentian makes this request for one simple reason: the Board correctly applies the law, and Zentian has no legal argument to press.

Even on the facts, Zentian's argument is understandably narrow. Its patent claims a straightforward combination of what the prior art discloses in the well-developed fields of speech recognition and parallel processors. It never disputed that the prior art teaches all elements of its claimed speech recognition circuit. And it no longer contests that an ordinary artisan would succeed in substituting those prior art elements for one another to achieve the claimed invention. The single question Zentian raises on appeal is a factual one: whether enough evidence supports the Board's findings of motivation to combine.

On that question, far more than substantial evidence does so. Across ten pages, the Board weighed the parties' conflicting arguments and evidence for and against motivation. The Board considered disputed issues like memory consolidation and collisions, processing efficiency, flexibility, scalability, cost, and programming effort. And after evaluating the significant evidence Apple submitted, the Board found two independent reasons why a person of ordinary skill in the art would have had a motivation to combine. Although Zentian points to the views of

an administrative patent judge who dissented on the facts as some sort of silver bullet, that at most shows that one factfinder weighed the conflicting evidence differently. This Court simply does not reweigh evidence on appeal. Under the deferential standard of review, the question is whether substantial evidence supports the Board's decision. It does.

The Board's decision should be affirmed.

## STATEMENT OF THE ISSUE

Whether substantial evidence supports the Board's finding of a motivation to combine.

## STATEMENT OF THE CASE

### A. Processor And Memory Configurations For Parallel Speech Recognition Were Well Known By the '319 Patent's Priority Date

The '319 patent relates to speech recognition systems that divide tasks among multiple computer processors working in parallel. Speech recognition—using computer technology to recognize human speech—was "known and widely used" before the '319 patent's priority date. Appx897-98 (¶27), Appx918-22 (¶¶55-59); Appx874-988. Ordinary artisans knew how to record and digitize audio, split audio into short segments, and analyze the results to identify the most likely words spoken out of a known vocabulary. Appx897-900 (¶¶27-29). And, important to this appeal, they could implement speech recognition with parallel processing. Appx9-10, Appx35-38.

### *1. Some prior-art speech recognition systems divided tasks among multiple parallel processors*

Computer speech recognition requires significant processing power, but the work can be split up. At the time of the invention, speech recognition generally involved traversing a library of lexical data representing sounds and words in the system's vocabulary to identify the most likely match with the user's speech. Appx899-905 (¶¶29, 32-33), Appx909-10 (¶¶39-42); Appx2251 (col.1:39-67). This work could be divided across multiple processors working at the same time, each traversing part of the library. Appx85 (col.1:30-43). At the time of the claimed invention, parallel processing had been explored "to speed up the processing performed during … a search in a speech recognition system." Appx85 (col.1:30-43); Appx2229 (col.2:38-39); Appx2253 (col.5:31-35); Appx9.

The primary reference in this case, U.S. Patent No. 6,526,380 to Thelen et al. ("Thelen") (Appx2225-33), offers one way to divide the work required for speech recognition. Thelen discusses a speech recognition system with a "huge vocabulary." Appx2225 (abstract); Appx12. The huge vocabulary comes from a set of different "large vocabulary recognition model[s]," each for a "specific context[]" such as "sports," "health," or "travel." Appx2229 (col.1:56-col.2:5), Appx2233 (col.9:16-26); Appx938-39 (¶76). Each "recognition model" consists of lexical data for word recognition, as well as higher-level information about grammar. Appx2232 (col.7:36-39).

Thelen's recognition models are built using texts specific to a context or sub-context. Appx2232 (col.8:54-65). A "sports" context model might be created from "representative texts for all issues within" sports, whereas a "more specific" model for football or baseball would be created from only "texts related to" those "more specific subjects." Appx2232 (col.8:54-66); *see* Appx2233 (col.9:24-26). In that sense, different models can be associated in a hierarchy of contexts and sub-contexts, as shown:




FIG. 4

Appx2227 (Fig.4, annotated), Appx2232 (col.8:54-59); Appx947-49 (¶83). Of course, many common words appear in multiple contexts. Thelen thus teaches that "an overlap may and will normally exist between the various recognition models." Appx2232 (col.7:40-43); Appx938-39 (¶76). In other words, parts of lexical data in two models may be the same. Appx2232 (col.7:40-43).

In Thelen, the system tests speech against recognition models for different contexts to determine which one fits best for what was said. Appx2232 (col.7:30-34, 50-58); Appx13-14. By simultaneously trying out different context-specific models, the system attempts to identify jargon or other unusual words specific to the context of the speech. Appx2229 (col.2:5-29); Appx938-39 (¶76). Because each context-specific model has its own lexical data that must be traversed, Thelen discloses using multiple "recognizers"—modules that each have their own processing resources—to work in parallel to test the various different models. Appx2232 (col.7:17-19, 37-40). In one of Thelen's embodiments (the one Apple's petition relied on, Appx220, Appx222; Appx186-275), the number of recognizers equals the number of models. Appx2232 (col.7:42-45). "[E]ach recognizer" is "associated with an exclusive recognition model in a fixed one-to-one relationship." Appx2232 (col.7:42-49). In other words, each recognizer accesses the same model every time the system is used.

### *2. Prior-art parallel speech recognizers accessed data from private or shared memory*

In parallel speech recognizers like Thelen, each processor must access its assigned part of the lexical data from memory. Appx3640 (citing Appx3263-64 (¶43)). Persons of ordinary skill in the art knew that processors could connect to private memory or shared memory. Appx2256 (col.11:1-4); Appx1040; Appx9-10, Appx30.

U.S. Patent No. 5,459,798 to Bailey et al. ("Bailey") (Appx2234-86) illustrates the distinction between private and shared memory. Appx2255-56 (col.10:59-col.11:37); Appx14-16. Bailey describes systems for recognizing speech or other patterns in parallel, using what it terms "pattern recognition engine[s]" with each engine comprising a processor. Appx2255-57 (col.10:59-62, col.13:34-38). One Bailey embodiment (figure 3A) discloses private memory. In this embodiment, each pattern recognition engine (525) is "interfaced with its own private memory" (615) that stores "its own library of prototype patterns":




FIG. 3A

Appx2237 (Fig.3A), Appx2255-56 (col.10:59-62, col.11:1-2, 22-23); Appx940-41 (¶78).

Alternatively, Bailey discloses shared memory (figure 3B). In this embodiment, the pattern recognition engines "interface[] with a common memory" (615) and "share[] the same prototype library":




FIG. 3B

Appx2237 (Fig.3B); Appx2256 (col.11:3-4, 34-37).

Speech recognition systems could use both types of memory, or they could use memory that is shared among some but not all processors. Thelen is an example of a system that has private memories and combined storage. As shown below, Thelen's system separately holds all its context-specific "models" (341-348) in a single "storage" (340). Appx2232 (col.7:30-35); Appx928-30 (¶69).



FIG. 3

Appx2227 (Fig.3, annotated); Appx928-30 (¶69). Each distinct model is then "loaded from storage" to its respective recognizer. Appx2232 (col.7:30-35); Appx939-40 (¶77). Each of these recognizers includes its own resources, such as a processor and memory. Appx2229 (col.2:30-33); Appx939-40 (¶77). So even though content in Thelen's different models may overlap and parts may be identical, Thelen suggests each recognizer gets a separate copy of its model loaded from storage. Appx938-40 (¶¶76-77); Appx3176-77 (124:6-125:16); Appx3726 (30:13-17).

The prior art disclosed other ways parallel processors could be connected to memory and the data stored in memory. For instance, U.S. Patent No. 5,428,803 to Chen et al. ("Chen") (Appx1006-34) teaches another way this could be done. Appx16-18, Appx30; Appx1020 (col.1:32-43). Chen discloses clusters, with each cluster containing multiple processors. Appx1024 (col.9:13-17). Each cluster has a "cluster shared memory," to which every processor in the cluster connects. Appx1024 (col.9:13-17). As illustrated in Chen's figure 4, processors (102a) share symmetrical access to a cluster shared memory (104a) via a connection node (106a):




Fig. 4

Appx1013 (Fig.4, annotated), Appx1024 (col.9:14-19); Appx945-47 (¶82). Although Chen relates to parallel processing architectures generally, similar techniques had also been employed in the field of speech recognition. By the ’319 patent’s earliest priority date in 2002, persons of ordinary skill knew that clustered architectures had been employed in various speech recognition circuits. Appx920-22 (¶¶58-59); *see* Appx9 (finding the person of skill in the art of the claimed invention would have “had knowledge and experience with parallel processing”).

### B. The ’319 Patent Claims A Parallel Speech Recognition System With Well-Known Cluster Memory

The ’319 patent purports to provide an improved speech recognition circuit capable of parallel processing. Appx85 (col.1:44-46). To that end, the patent describes the well-known speech recognition problem that “search[ing] requires the evaluation of possible word matches,” which “is computationally intensive.” Appx85 (col.1:12-29). The patent acknowledges “parallel processing” as a known approach to speed up searching. Appx85 (col.1:30-43). It describes a clustered, multiprocessor approach where “processors [21] are arranged in groups in which each group is connected to a corresponding lexical memory [23] to form a cluster [22]”:




Appx80 (Fig.2), Appx86 (col.3:37-39), Appx86-87 (col.4:61-col.5:1).

The challenged independent claim of the ’319 patent recites:

46. A speech recognition circuit comprising:

[a] an input buffer receiving processed speech parameters;

[b] a plurality of lexical memories containing in combination complete lexical data for word recognition, each lexical memory containing part of said complete lexical data;

[c] a plurality of processors connected in parallel to said input buffer for processing the speech parameters in parallel,

[d] *said processors being arranged in groups of processors, each group of processors being connected to a lexical memory*;

> [e] a control processor controlling each processor to process said speech parameters using partial lexical data read from a respective said lexical memory; and
>
> [f] a results memory storing the results of the processing of the speech parameters from said processors.

Appx92 (col.15.55-col.16.2) (emphasis added). Limitation 46[d] requires that the system's lexical memory and parallel processors be arranged in clusters. Each cluster includes a "group of processors" and a "lexical memory" that contains part of the circuit's complete lexical data. Appx92 (col.15.62-64).

### C. The Board Determined All Claims Would Have Been Obvious, Finding Two Independent Reasons To Combine

Following institution, the Board determined that all challenged claims (46-51, 53, 54, 58, 59, 64, and 67) were unpatentable. Appx47. Zentian made no separate arguments on the dependent claims, so the case came down to independent claim 46.

The Board found—and Zentian did not contest (Appx20; Appx3620-57)—that the prior art discloses each limitation of claim 46. Appx39. Thelen teaches the recited "speech recognition circuit" with "parallel processors" (Thelen's recognizers 331-333) each operating on a respective portion of the "complete lexical data" (Thelen's models 341-348, loaded from storage). Appx18-20. Bailey teaches many of the same elements as Thelen and adds detail on hardware, including a "plurality of lexical memories" to hold each processor's respective lexical data. Appx18-20.

And Chen teaches grouping processors into "clusters" around a plurality of lexical memories, satisfying limitation 46[d] ("said processors being arranged in groups of processors, each group of processors being connected to a lexical memory"). Appx21.[1]

As relevant to Zentian's appeal, Apple showed—and the Board found—"that a person of ordinary skill in the art would have had reason to modify Thelen-Bailey so that its parallel recognizers are grouped in clusters with shared memory in view of Chen." Appx30 (discussing limitation 46[d]). The Board credited Apple's expert and found that combining Chen's teachings about clusters and shared memory with Thelen and Bailey would have allowed for "consolidating the overlapping data within similar lexical models (such as 'sports' models like football or baseball) and storing the consolidated data in a shared memory that multiple processors may access in parallel would have resulted in memory and processing efficiency." Appx27. The Board found that skilled artisans would have viewed the combination as "an improvement over Thelen, where each processor has access to only one,

[1] The Board also found a skilled artisan would reasonably expect success combining the teachings of Thelen, Bailey, and Chen to arrive at the claimed invention. Appx35-37. It rejected Zentian's arguments that a person of ordinary skill in the art would not have sufficient expertise in parallel processing to implement the invention. Appx10 (level of ordinary skill in the art); Appx36 (reasonable expectation of success); Appx38 (prior art enablement). Zentian challenges none of those findings on appeal, and it offered no evidence of objective indicia of non-obviousness before the Board. Appx12 n.9.

distinct lexical model at a time and there is no shared memory in which multiple processors can access the same consolidated models data in parallel." Appx27; *see* Appx30.

The Board also found motivation to combine because the combination was nothing more than the substitution of one known technique for another: "Moreover, Thelen and Bailey present particular arrangements of memory and processing elements to achieve the known benefits of parallel processing, such as reduced cost, efficiency, flexibility, and scalability. Chen simply presents an alternative parallel-processing arrangement of memory and processing elements that address the same known problems." Appx30. Based on those findings, the Board found that "Apple has persuasively shown that modifying Thelen-Bailey by grouping processors into clusters with shared memory would have addressed known problems using prior art elements according to their established functions." Appx30-31 (citing *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1380 (Fed. Cir. 2023)).

The Board rejected Zentian's fact-based counterarguments, many of which Zentian repeats on appeal. The Board found that a skilled artisan would not have been dissuaded by possible slowdowns from "memory collisions." Appx28-29. Crediting Apple's expert over Zentian's, the Board found "a skilled artisan would have expected to be able to minimize the effect of memory collisions based on Chen's teachings and the background knowledge in the art." Appx28-29.

The Board also rejected Zentian's "reprogramming effort" argument, finding that "any need for substantial programming or reprogramming would not have dissuaded a person of skill in the art" from making the combination. Appx29-30. The Board had found that the relevant artisan would have had greater knowledge and skill in parallel processing than Zentian had argued, and that artisan could have implemented the combination without undue experimentation. Appx36-37. Citing these findings, the Board found that "any need for substantial programming or reprogramming would not have dissuaded a person of ordinary skill in the art" from the combination. Appx30.

Weighing Zentian's supposed downsides against other reasons Chen was a suitable substitution—such as "flexibility and scalability," "cost," and "the added efficiency of data sharing among related sub-context models"—the Board concluded that a skilled artisan would have been motivated to use Chen's clustered processors. Appx28, Appx30.

One administrative patent judge dissented on the facts. Appx49-75. Differently weighing the conflicting evidence, the dissent would have found that Apple had not shown motivation by a preponderance of the evidence. Appx71. The dissenting judge stated two reasons he would not have found motivation. First, he found no motivation to "modif[y] Thelen to include the teachings of Bailey"—an argument Zentian never made and does not make on appeal. Appx50, Appx53-55,

Appx20 (finding Zentian did "not specifically contest that … there would have been a motivation to combine Thelen and Bailey" to satisfy limitations 46[a]-[c]). Second, the dissent stated that Apple had "not shown any reason to modify its combination of Thelen and Bailey to include the teachings of Chen" because the combination would not have been an improvement over Thelen alone. Appx50, Appx55-75.

The Board held all challenged claims unpatentable. Appx39-47.

## SUMMARY OF ARGUMENT

A. Zentian challenges only the Board's factual findings that, for two independent reasons, a person of ordinary skill in the art would have been motivated to use Chen's clustered processors with Thelen and Bailey. Substantial evidence supports the Board's findings. The Board considered the evidence, found Apple's expert more credible than Zentian's, and addressed and rejected on the facts the arguments Zentian highlighted in its Patent Owner Response.

1. The Board agreed with Apple that a person of ordinary skill in the art would have been motivated to consolidate lexical model data with Chen's processors. Thelen envisions, and Bailey expressly teaches, a separate copy of model data for each parallel speech recognizer. This means that across all of Thelen's speech recognizers the parallel processors must independently analyze separate models with overlapping data. By incorporating Chen's teachings of

processors clustered in small groups around shared memory, however, the lexical models would not need to be saved as entirely separate copies. Instead, a set of related models in a cluster memory could be de-duplicated and their common data saved only once. As the Board found, an ordinary artisan would be motivated by this efficiency: fewer copies of the overlapping data would mean that fewer processing resources would be required to transfer those copies, and less memory would be needed in total.

2. The Board also found that the combination "addressed known problems using prior art elements according to their established functions." Thelen, Bailey, and Chen present different, suitable ways to connect parallel processors to memory. Substantial evidence supports this finding too. Indeed, Zentian does not now dispute that a skilled artisan would have understood they could substitute one suitable option for another.

B. None of Zentian's fact-based arguments demonstrates the absence of substantial evidence supporting the Board's decision.

1. As to the Board's memory efficiency rationale, Zentian attacks a strawman with its argument that lexical data would already have been consolidated in Thelen's combined storage. But Zentian forfeited that argument by failing to raise it in its Patent Owner Response. And the argument fails on the merits anyway: the main benefit of Chen's clusters is not to Thelen's combined storage; it is to separate

memories holding copies of lexical data loaded from that storage. Rather than have a one-to-one ratio between memories and models, each memory would contain the lexical data of multiple models without duplicated data. In addition, the record fails to support Zentian's reading that Thelen's combined storage de-duplicates overlapping lexical data.

2. Zentian also asks this Court to revisit the Board's weighing of various "motivating considerations" that made using Chen's clusters a suitable substitution of known elements. Zentian tries to fault the Board for not finding that the combination improves on each aspect of Thelen, but the law does not require improvements in every aspect. The record contains substantial evidence that the combined, cluster-based system would offer suitable flexibility, scalability, and cost savings. The Board considered Zentian's insistence on real-time operation, which demands more than the claims require, and correctly rejected it by crediting Apple's expert over Zentian's. And the record supports the Board's determination that any programming effort would not have dissuaded a skilled artisan, because the Board found the relevant artisan would have had more skill than Zentian had argued, and because Zentian's argument goes only to the reprogramming required to make changes that are the opposite of the modification here.

## STANDARD OF REVIEW

"[W]hether a skilled artisan would be motivated to combine prior art references" is a question of fact this court reviews for substantial evidence. *Schwendimann v. Neenah, Inc.*, 82 F.4th 1371, 1380 (Fed. Cir. 2023), *cert. denied*, 144 S. Ct. 1059 (2024). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). "This court does not reweigh evidence on appeal, but rather determines whether substantial evidence supports the Board's fact findings." *In re NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011).

## ARGUMENT

### SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDINGS THAT PERSONS OF ORDINARY SKILL IN THE ART WOULD HAVE BEEN MOTIVATED TO COMBINE CHEN'S CLUSTERS WITH THELEN AND BAILEY

#### A. The Board Correctly Found Motivations To Combine

Zentian's brief challenges only factual findings with respect to limitation 46[d]: it argues there would have been no motivation to improve the teachings of Thelen and Bailey with the cluster memories of Chen. The Board found two independent reasons why those of ordinary skill in the art would have been motivated to substitute Chen's clusters into Thelen and Bailey, which would result in the claimed processors "arranged in groups" with "each group of processors being connected to a lexical memory." First, the combination would have reduced the

amount of memory the system needs for model data, including lexical data. Appx27. Second, the combination simply entailed the substitution of the known, suitable techniques in Thelen, Bailey, and Chen for arranging memory and processing elements for parallel processing. Appx30-31. Substantial evidence supports both findings.

#### *1. Persons of ordinary skill in the art would have been motivated to combine Chen's cluster memory to consolidate overlapping lexical models and in turn improve processing efficiency*

The motivation-to-combine analysis is flexible: "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *KSR Int'l. Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007). Here, the Board correctly found that the skilled artisan would have been motivated to incorporate Chen's clusters because doing so would offer a specific "improvement over Thelen": "consolidating the overlapping data within similar lexical models" in cluster memory would result in "memory and processing efficiency." Appx27. Substantial evidence supports the Board's finding.

As Apple showed, and the Board found, Thelen's approach of not consolidating overlapping data had a downside—it used more memory. Appx27; Appx950-51 (¶84). Instead of consolidating such data, Thelen contemplates enough memory to hold multiple copies of the same data. Appx3176-77 (124:18-24, 125:8-

16). This occurs because each of Thelen's different context-specific models contains overlapping lexical data. Appx2232 (col.7:40-42). Each model is built to recognize speech in a certain context or subcontext (such as "sports" generally, or "baseball" or "football" more specifically). Appx2232-33 (col.7:30-34, col.8:54-col.9:20), Appx2227 (Fig.4). Because these models can share some vocabulary, some lexical data is the same across multiple models. Appx2232 (col.7:37-42); Appx938-39 (¶76); Appx3176 (124:6-17). This means that some data must be duplicated when models with overlapping data are stored separately in memory.

In the Thelen embodiment Apple identified, each recognizer comprises a parallel processor that has access to its own context-specific model. Appx2232 (col.7:43-47); Appx939-40 (¶77). Each context-specific model is "loaded from a storage 340" to—Thelen suggests—its respective recognizer's memory. Appx2232 (col.7:34-35); Appx939-40 (¶77); Appx3176-77 (124:18-24, 125:8-15), Appx3726 (30:13-17), Appx3748(52:8-14); Appx13, Appx27-28 & n.11. When that occurs, lexical data "that is common" between multiple context-specific models "would be duplicated in" those recognizers' memories. Appx3176-77 (124:18-24, 125:8-16); Appx3726 (30:13-17), Appx3748 (52:8-14); Appx938-39 (¶76) (Thelen's system provides benefits touted in the '319 patent from storing "more than one copy of the lexical data"); Appx222.

That downside of using excess memory also would be present in the proposed combination of Thelen's system with Bailey.[2] As the Board found and Zentian never disputed, Bailey teaches separate memory connected to each recognizer to store the recognizer's model data. Appx19; Appx2256 (col.11:1-2, 22-23), Appx2237 (Fig.3A); Appx940-41 (¶78). Bailey thus expressly teaches what Thelen suggests—separate memories holding each recognizer's lexical data. *See* Appx221-23; Appx2229 (col.2:30-33), Appx2232 (col.7:34-35, 43-47); Appx939-41 (¶¶77-78). This means that each recognizer's memory would separately store lexical models; because the many lexical models would have some identical data, some data would be duplicated across all the recognizers' separate memories. *See* Appx941-42 (¶79).

The Board found—and substantial evidence supports—that Chen provided a straightforward solution to Thelen and Bailey's inefficiency. Appx27. Chen teaches clusters of processors connected to a shared memory. Appx1024 (col.9:20-56), Appx1013 (Fig.4). By incorporating Chen's cluster memory, overlapping lexical data could be consolidated. Appx947-49 (¶83). As Zentian never disputed, related lexical models stored on a single cluster memory would not need duplicated data; overlapping data between those models could be stored once, rather than multiple

[2] Aside from adding detail on lexical memories connected to each recognizer, Bailey improves on Thelen in other ways, such as providing a results memory that meets the need to for each of Thelen's recognizers to report its outcomes. Appx39.

times. Appx947-49 (¶83); *see* Zentian Br. 25-26 (agreeing Thelen's models can be consolidated if stored together); Appx3709 (13:9-18). As Apple's expert explained, "the data compression enabled by associating Thelen's high-level contexts with Chen's groups of processors (reducing the duplication of lexical data, as discussed) would have necessitated less memory to operate." Appx950-51 (¶84).

Chen's memory consolidation would provide other efficiencies too. The Board found that a person of ordinary skill in the art would have been motivated to combine Chen's cluster memory with Thelen and Bailey in order to provide more "efficient control and processing." Appx30, Appx27. As Apple's expert explained, because "the modified system would have been configured to store the overlapping lexical data in fewer unique locations," it could "transfer recognition models to/from the lexical memory for processing more efficiently"—i.e., load the overlapping data fewer times. Appx947-49 (¶83); Appx235.

#### ***2. Persons of ordinary skill in the art would have recognized known techniques to achieve parallel-processing benefits using prior art memory configurations according to their established functions***

The Board also found that "Chen simply presents an alternative parallel-processing arrangement of memory and processing elements that address the same known problems" that Thelen and Bailey address. Appx30. As Apple "persuasively show[ed]," persons of ordinary skill in the art would have been motivated to use Chen's teachings because doing so merely "would have addressed known problems

using prior art elements according to their established functions." Appx30-31 (citing *Intel*, 61 F.4th at 1380).

The Board's finding directly follows from this Court's precedent holding that a motivation to combine exists when a claimed combination merely reflects a substitution of known elements for their established functions. *E.g.*, *Intel*, 61 F.4th at 1380. As the Court has explained, "if there's a known technique to address a known problem using 'prior art elements according to their established functions,' then there is a motivation to combine." *Id.* (quotation omitted); *see KSR*, 550 U.S. at 417 ("[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.").

In *Intel*, for instance, the Court reversed the Board's finding of no motivation to combine two references (Kabemoto and Bauman). 61 F.4th at 1381. Both references "'relate[d] to the same field'" of multiprocessor systems and presented two different mechanisms to "'address the same problem: maintaining cache coherency.'" *Id.* at 1380 (quotation omitted). The Court held that the petitioner had proven motivation simply because "replacing Kabemoto's secondary cache with Bauman's secondary cache" was a "'suitable option'" to achieve similar benefits. *Id.* at 1381 (quotation omitted); *see In re Universal Elecs., Inc.*, No. 2022-1716, 2023

WL 5219774, at *8 (Fed. Cir. Aug. 15, 2023) (affirming obviousness and rejecting argument that the examiner merely stated "what the combination would do" rather than articulating an improvement); *Cisco Sys., Inc. v. K.Mizra LLC*, No. 2022-2290, 2024 WL 3841809, at *3-4 (Fed. Cir. Aug. 16, 2024) (Board erred by failing to consider whether there was a motivation "independent of whether a skilled artisan would recognize any benefit in making the proposed combination.").

Zentian never challenged that these principles can provide a motivation to combine; it argued only that Chen would not have been a "suitable option" on the facts. But the Board found that persons of ordinary skill in the art knew there were many ways to connect "memory and processing elements to achieve the known benefits of parallel processing." Appx30; *see* Appx228-29, Appx236-37; Appx3447, Appx3457-58; Appx3430-62. These techniques could address the known problem of accessing memory in parallel speech recognition. As the Board found, "at the time of the claimed invention, parallel processing had already been explored 'to speed up the processing performed during … a search in a speech recognition system.'" Appx9 (citing Appx85 (col.1:30-43)); Appx2229 (col.2:38-39); Appx2253 (col.5:31-35). Persons of ordinary skill implementing parallel speech recognition had to consider how processors accessed memory, because computer pattern recognition systems must access libraries of data from memory. Appx899-903 (¶¶29, 32); Appx909-10 (¶¶39-42); Appx2251 (col.1:58-67). Zentian

itself acknowledged this issue as it related to lexical models in speech recognition: "Data access to the various acoustic models was known to be one of the limiting factors in the performance speed of a speech recognition system." Appx3640 (citing Appx3263-64 (¶43)). And ordinary artisans knew there were different ways that parallel processors could access memory, each with its own benefits and limitations. Appx1040; Appx2256 (col.11:1-4); Appx9-10, Appx30.

The Board found that Thelen and Bailey, on the one hand, and Chen, on the other, disclosed alternative, well-known "arrangements of memory and processing elements." Appx30. Substantial evidence supports those findings. In Thelen, each recognizer (which includes a processor) is connected to a single context-specific model. Appx2232 (col.7:43-47). Thelen discloses a memory (storage 340) with a full set of models; each recognizer has access to one model that gets loaded into its respective recognizer. Appx13 (citing Appx2229 (col.1:56-61), Appx2232 (col.7:5-7, 34-35), Appx2227 (Fig.3)); Appx3176-77 (124:6-125:16). With Bailey, each parallel processor also interfaces with only its own lexical data in a respective separate memory. Appx14-16 (citing Appx2256 (col.11:1-4), Appx2237 (Figs.3A-3B)); Appx3256 (¶28). And Chen discloses clusters of processors with each cluster sharing a memory. Appx16-18 (citing Appx1024 (col.9:20-56), Appx1013(Fig.4)).

The prior art also taught that different memory configurations could be substituted for one another: Bailey illustrates the interchangeability of separate

memory with shared memory. Appx2237 (Figs.3A-3B), Appx2256 (col.11:1-4); Appx213-14, Appx231. And although Thelen and Bailey are parallel speech-recognition references and Chen is not (Appx2229 (col.1:5-7); Appx2251 (col.1:17-20)), Chen is generally directed to parallel processing. Appx1006 (abstract). Cluster techniques like those disclosed in Chen had been applied to parallel speech recognition by the time of the '319 patent. Appx920-22 (¶¶58-59).[3]

Each of these arrangements would have provided those of skill in the art with a "suitable option" to connect parallel processors to memory and stored data. *Intel*, 61 F.4th at 1381 (quotation omitted); *see* Appx28, Appx30 (skilled artisan would have pursued the combination, weighing memory collisions, flexibility, scalability, and cost). Under this Court's precedent, that sufficed to show a motivation to combine. *Intel*, 61 F.4th 1380-81.

### B. Zentian Fails To Show That The Board's Motivation Findings Lack Substantial Evidence

Faced with two independent findings for why skilled artisans would have been motivated to combine Thelen and Bailey with Chen, Zentian re-argues the facts.

[3] In addition, the Board found, and Zentian does not now contest, that persons of ordinary skill in the art would have had "knowledge and experience with parallel processing." Appx9; *see* Appx199 (undisputed showing that Chen is analogous art).

### *1. Substantial evidence supports the Board's efficiency finding*

Zentian argues that efficiency benefits would not have motivated a person of ordinary skill to combine the teachings of Thelen and Bailey with Chen. Zentian Br. 22-23, 25-27, 29-34. It contends that ordinary artisans would have found it unnecessary to modify Thelen with Chen's clusters—so that clusters of processors could access consolidated lexical models stored in shared memory—because Thelen supposedly already consolidates overlapping data across lexical models in storage (340). Zentian Br. 29-31, 34. That argument fails for three reasons.

***First***, Zentian forfeited—or waived—any argument that Thelen already consolidates overlapping lexical data. In its Patent Owner Response before the Board, Zentian never argued that those of skill in the art would not look to Chen because Thelen already consolidated overlapping data. *See* Appx3644-53; Appx3456-57; Appx26. The Board's scheduling order warned Zentian that any issue not raised in the Patent Owner Response was "waived." Appx3846. This Court has consistently held that a patent owner waives an argument by not raising it in its Patent Owner Response—even if pressed elsewhere. *E.g.*, *In re NuVasive, Inc.*, 842 F.3d 1376, 1380-81 (Fed. Cir. 2016).

Zentian's forfeiture cannot be excused because it may have acknowledged Apple's motivation rationale in its sur-reply to the Board or discussed the issue at the Board hearing. Appx3567-68; Appx3722 (26:8-14), Appx3748 (52:4-22).

Under *NuVasive*, that was too late. Regardless, Zentian's sur-reply never argued that any data would already have been consolidated in Thelen alone or with Bailey. Appx3567-68. And Zentian conceded at the hearing before the Board that "Thelen is going to have duplication" of some vocabulary. Appx3748 (52:4-22), Appx3722 (26:8-14).

Nor can Zentian rely on the dissent's creation of this argument. The Board can base its decision only on arguments "advanced by a party, and to which the opposing party was given a chance to respond." *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016). That the dissent may have *sua sponte* generated an issue does not mean that the Board could have ruled on that basis. *Apple Inc. v. Corephotonics, Ltd.*, 81 F.4th 1353, 1360-62 (Fed. Cir. 2023) (holding that the Board erred by basing decision on argument patent owner never raised instead of the issues the parties disputed).

***Second*****,** Zentian misstates the Board's findings to create a strawman argument. It argues that the Board identified no memory-efficiency benefit to Thelen by combining Chen's clusters because Thelen's storage (340) already consolidated lexical models together. Zentian Br. 25-27, 30-31. But Zentian ignores that Thelen (alone or with Bailey) loads a *copy* of a model for each recognizer from storage (340), so even if overlapping lexical data is consolidated in storage (340) it becomes deconsolidated when a model is loaded into each recognizer. Appx2232

(col.7:34-35); Appx3176-77 (124:18-24, 125:8-15). As the Board found, adding Chen's clusters would increase memory efficiency because each recognizer would no longer separately access one, distinct lexical model. Appx27. With Chen's clusters, *groups* of related models could be loaded instead, and those groups could be stored without duplicating overlapping vocabulary within those related models. Appx27.

For that reason, it does not matter whether Thelen consolidates lexical model data when in storage (340). As Apple showed, persons of ordinary skill in the art would have been motivated to eliminate or reduce the duplication of lexical data that occurred *after* copies of the different models were "loaded from storage 340" to each of Thelen's recognizers. *Supra*, A.1. Nor did Zentian dispute that this duplication of data in Thelen occurred. To the contrary, Zentian admitted that Thelen moves lexical models from "large storage 340 into the appropriate memory for each recognizer." Appx3726 (30:13-17), Appx3748 (52:8-14); Appx3176-77 (124:18-24, 125:8-15). Thus, Zentian's arguments about models being stored in Thelen's "storage 340" *before* they are loaded into each recognizer's memory are beside the point. *Contra* Zentian Br. 22-23, 30-33.

Zentian tries to redirect the Court by blaming Bailey for any duplication in a Thelen-Bailey combination. According to Zentian, the problem arises only because Bailey "divid[es] Thelen's 'huge vocabulary' into multiple private lexical

memories" for each model in the Thelen-Bailey combination. Zentian Br. 16; *see* Zentian Br. 22 ("Apple's combination … modifies Thelen's single shared storage into multiple private memories"), 30-31 (arguing that without Bailey, Thelen would have "only one memory," which is "a shared memory"), 34; Appx53 ("Petitioner replaces Thelen's common storage 340 containing the complete lexical data with Bailey's plurality of private memories … ."). Zentian then suggests that Chen simply undoes a problem that Bailey created. But Zentian forfeited any argument that a skilled artisan would not have combined Thelen and Bailey. Appx20. And Zentian's argument ignores that the Board found—and substantial evidence shows—that Thelen alone suggests loading copies of the models to each recognizer from storage (340). Appx3726 (30:13-17); Appx3176-77 (124:18-24, 125:8-15); Appx2229 (col.2:30-33), Appx2232 (col.7:34-35, 43-47); Appx939-41 (¶¶77-78)

***Third***, Zentian's argument fails on the facts, so it cannot show the Board's decision lacks substantial evidence. No record evidence supports Zentian's assertion that Thelen's lexical models are consolidated in non-overlapping ways when stored in Thelen's storage (340). To the contrary, Figure 3 depicts each model (341-348) separately in storage and not consolidated:



FIG. 3

Appx2227 (Fig.3, annotated); Appx928-30 (¶69).

Nor did "both parties and their experts agree[] below that Thelen consolidates its recognition model data." *Contra* Zentian Br. 26, 30. For support, Zentian points to parts of Thelen disclosing a set of models that are "hierarchically arranged." Thelen explains that the models' training data is what can be thought of as "hierarchically arranged": a "generic model is built by analyzing representative texts for all issues within the subject" while a "hierarchically lower" one is "created by using texts related to" its respective "more specific subjects." Appx2232

(col.8:54-66), Appx2227 (Fig.4). But Thelen does not say hierarchy has anything to do with how models are stored, much less specify that duplicated data between hierarchically related models is de-duplicated for storage. Nor did any expert so testify. Apple simply argued that Thelen's hierarchy would have suggested benefits of grouping models, not that Thelen's system already does this. *Contra* Zentian Br. 31 (citing Appx233-34); *see* Appx947-49 (¶83). Zentian thus fails to refute the Board's finding that Thelen has "no shared memory in which multiple processors can access the same *consolidated* models data in parallel." Appx27 (emphasis added).

In addition, Zentian argues that the Board erroneously relied on Thelen's model selector (360) to show that storage (340) was not shared memory, because model selector (360) would not be used in the embodiment with a one-to-one ratio between recognizers and lexical models. Zentian Br 32. Zentian's argument misses the point. The Board merely noted that each of Thelen's recognizers accesses its own model "indirectly via model selector 360." Appx27-28 n.11. And it found (and Zentian does not dispute) that each of Thelen's recognizers accesses "the one particular model to which it has been assigned." Appx27-28 n.11. Because each recognizer in Thelen only has access to one lexical model, duplicated data exists when the different lexical models are loaded into each recognizer's memory from storage (340). Appx2232 (col.7:34-35, 43-46); Appx3176-77 (124:13-24, 125:8-

16); Appx947-49 (¶83). That Zentian may now dispute that finding (even though it made no such argument to the Board) does not matter. *Contra* Zentian Br. 33-34. Ample evidence supports the Board's finding as to what the prior art discloses. *See supra*, A.1. Thus, regardless of how Thelen's storage (340) might be characterized—whether as "shared memory" or something else (*see* Zentian Br. 30-33)—data becomes duplicated across lexical models when those models are loaded into their respective recognizers.[4]

#### *2. Substantial evidence supports the Board's weighing of other "motivating considerations"*

Zentian also argues that Chen's clusters would not have provided a suitable alternative to Thelen and Bailey. In doing so, Zentian asks the Court to re-weigh evidence about flexibility and scalability, costs, memory collisions, and programming effort—arguments that go to how desirable the substitution would have been. Appx28-29; Zentian Br. 34-38. Zentian cannot show that any of the Board's findings rejecting these arguments lacks substantial evidence, let alone all of them, which would be required to reverse the Board's finding based on Chen's suitability.

---

[4] Regardless, and contrary to Zentian's argument, the Board never "state[d] that Apple's combination would *not use* model selector 360." Zentian Br. 32. Apple relied on (and the Board found that) Thelen's model selector as part of the "control processor" of limitation 46[e]. Zentian never disputed any part of that limitation, including that there would be a motivation to combine the prior art references. Appx38-39.

#### ***a. Substantial evidence shows the combination would offer suitable flexibility and scalability***

Zentian argues the Board never found that "Thelen itself was not already flexible and scalable." Zentian Br. 27-28, 35. If Thelen was already flexible and scalable, Zentian reasons, there would be no motivation to use suitable alternatives. Zentian Br. 35. But the Board was not required to find specific improvements over Thelen alone; it only needed to find—which it did—that Chen taught a suitable alternative. Appx30; *see Intel*, 61 F.4th at 1380.

On that relevant inquiry, substantial evidence demonstrates that Chen's clusters would have provided at least the same flexibility and scalability. Appx28 (citing Appx236), Appx25-26 (citing Appx3455). As Apple showed, the prior art reference Hon praises the use of a clustered-processor system for speech recognition due to its scalability and flexibility. Appx1058-59; Appx950-51 (¶84). Hon explains that a clustered system, like the one Chen teaches, "is scalable because it can be expanded by adding more clusters." Appx1058-59; Appx920 (¶58). Zentian never rebutted this showing. *See* Appx3652-53. And clustered systems are flexible because not all data needs to be de-duplicated; processors could access some of the

same data from different cluster memories. Appx938-39 (¶76) (citing Appx288-89 (col.10:59-col.11:5)).[5]

#### *b. Substantial evidence shows the combination would be suitable in terms of cost*

Zentian purports to offer "extensive evidence" against the Board's categorization of "cost" as another motivating consideration. Zentian Br. 36 (citing Zentian Br. 24-28); Appx28, Appx30. But what Zentian actually demands is a precise cost analysis proving Thelen-Bailey-Chen is cheaper than Thelen alone. Zentian Br. 28. Zentian cites no law requiring such an analysis. Nor could it, as the obviousness analysis is not so rigid. *KSR*, 550 U.S. at 415-18; *Intel*, 61 F.4th at 1380-81 (combination need only be "suitable"); *Honeywell Int'l Inc. v. 3G Licensing, S.A.*, 124 F.4th 1345, 1356 (Fed. Cir. 2025) (petitioner "was not required to make [a] showing" that there was consensus that the modification was preferred; only that there was " 'something in the prior art as a whole to suggest the desirability …' of the claimed invention." (citation omitted)).

---

[5] For instance, a "sports" cluster might include models for baseball, football, and soccer and a "movies" cluster might include models for action, drama, and comedy. Appx2233 (col.9:24-26), Appx2230 (col.3:57-62). Within each cluster, duplicated vocabulary could be eliminated. Appx2232 (col.7:40-42); Appx947-49 (¶83). But between clusters, duplicated data might still exist; the sports cluster and the movies cluster might contain some of the same data. Appx938-39 (¶76); Appx3453-54.

Regardless, substantial evidence supports the Board's cost finding. As Apple explained and the Board found, parallel processing systems can divide the processing load among many simple, inexpensive processors. Appx28; Appx950-51 (¶84); *see* Appx953-54 (¶87) (adding Bailey's CPU "would have allow[ed] each of the plurality of clustered processors to be simpler and therefore less expensive"); Appx230-31. Indeed, Chen itself says its clusters may be made of general-purpose components. Appx1024 (col.10:14-35); Appx945-57 (¶82); Appx230-31. And employing Chen's clusters would reduce total required capacity of the memory components due to data consolidation. Appx950-51 (¶84); *supra*, A.1.

#### ***c. Substantial evidence shows a skilled artisan could minimize memory collisions***

Zentian argues that a skilled artisan could not have expected to preserve Thelen's real-time speech recognition with Chen's clusters due to memory collisions. Zentian Br. 20-22, 37-38.

First, the Board was not required to consider whether the combination would preserve Thelen's "real-time recognition," because the '319 patent's claims recite no real-time recognition requirement. This Court has held that the motivation "inquiry is not whether a relevant artisan would combine a first reference's feature with a second reference's feature to meet requirements of the first reference that are not requirements of the claims at issue." *Axonics, Inc. v. Medtronic, Inc.*, 73 F.4th 950, 957 (Fed. Cir. 2023). In *Axonics*, the Board rejected the petitioner's showings

that references "solve the same problem" and instead found no motivation because the secondary reference's solution would have been incompatible with the "trigeminal-nerve context" of the primary reference. *Id.* at 955-56. The Court vacated the non-obviousness decision because the trigeminal-nerve context was not required by the claims. *Id.* at 957. This Court explained that the "proper inquiry is whether the relevant artisan would be motivated to make the combination to arrive at the claims' actual limitations, which are not limited to the trigeminal-nerve context." *Id.*; *see also Allied Erecting and Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016) ("[A] given course of action often has simultaneous advantages and disadvantages, and this does not necessarily obviate motivation to combine." (citation omitted)).

Zentian insists that skilled artisans would want to avoid memory collisions in order to meet a requirement of Thelen—"real time recognition." Zentian Br. 22, 37. The purported need to preserve real-time recognition arises from Thelen's discussion of dictation, where too much latency in speech recognition can quickly degrade usability (consider, by contrast, a voice assistant that only needs to recognize short, separated prompts). Zentian Br. 22 (citing Appx3272 (¶60); Appx3206-07)); Appx2231 (col.6:12-45). But just as the "trigeminal-nerve context" was not required by the claims in *Axonics* (*see* 73 F.4th at 957), Thelen's "dictation context" and real time recognition are not required by the claims here. As the Board correctly

explained, Zentian's claims "include[] no recitations about the number of memory collisions, how task sharing should occur, how bandwidth is addressed, or any maximum latency." Appx35. Thus, memory collisions could not have undermined the motivation to combine analysis.

Regardless, Zentian's memory collision argument fails on the facts. The Board found that a skilled artisan could reduce memory collision issues to a point where they would not be a barrier to any combination. Appx28-29 (crediting Apple's expert over Zentian's). The absolute elimination of all memory collisions is not required. *See Axonics*, 73 F.4th at 958 ("[a] skilled artisan may be motivated … to secure some benefits at the expense of others."); *contra* Zentian Br. 21-22, 37-38. Although Zentian may disagree with how the Board weighed the evidence and what credibility determinations the Board made, substantial evidence supports the Board's finding. Appx28-29 (citing Appx3446-51); *see NTP*, 654 F.3d at 1292 (Court does not re-weigh evidence).[6] For example, Apple explained that a skilled artisan could address memory collisions by using "a larger memory cache size" and otherwise optimizing cache usage. Appx3449 (citing Appx3325-26). And Chen notes that memory latency within clusters would be small compared to latency between clusters. Appx3448 (citing Appx1021 (col.4:58-63)). Plus, Chen states

[6] The Board cited "Pet. 14–19" evidently referring Apple's *reply* at 14-19, where Apple presented its arguments on this topic. *See* Appx24-25 (summarizing arguments at Pet. Reply 14-19 (Appx3446-51)).

that even potential latency between clusters could be addressed and overcome using the strategies it offers. Appx3447-48 (citing Appx1022 (col.5:33-53), Appx1026-28 (col.14:39-col.18:42)).

Nor did the Board fail to address the reference Mathew I, which Zentian argues shows a five-processor parallel system that was slower than a two-processor system. Zentian Br. 37-38. For one, "[t]he Board is 'not require[d] … to address every argument raised by a party or explain every possible reason supporting its conclusion.'" *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1327-28 (Fed. Cir. 2017) (citation omitted; Court's alterations). Even setting that law aside, the Board did consider—and reject on the facts—Zentian's argument based on Mathew I. First, it summarized Zentian's Mathew I argument (Appx23 (citing Appx3327)) and found Zentian's expert's testimony non-credible, including his discussion about Mathew I. Appx28-29 (citing Appx3266 (¶46)). In doing so, the Board cited favorably Apple's reply explaining why Mathew I's "synchronization overhead" would not undermine the proposed combination: Mathew I's parallel processors handle only one part of the speech-recognition process, so they may have to synchronize to complete the process; there's no reason to think Thelen's recognizers, which perform recognition from start to finish, would need to synchronize mid-way through with other recognizers. Appx3449-50 (cited by Board at Appx28).

#### ***d. Substantial evidence shows programming effort would not be excessive***

Zentian also challenges the Board's finding that "any need for substantial programming or reprogramming would not have dissuaded a person of ordinary skill in the art from modifying Thelen-Bailey by grouping processors into clusters with shared memory." Appx30; Zentian Br. 23-24, 39-40. But again, Zentian just asks the Court to re-weigh the facts. *See NTP*, 654 F.3d at 1292 (Court does not re-weigh evidence). And Zentian is wrong that the Board failed to consider "the impact of" reprogramming "on the ordinary artisan's motivation to pursue the combination." *Contra* Zentian Br. 39-40. The Board rejected Zentian's argument that programming would have been excessive, weighed programming effort among "the evidence as a whole presented by both sides," and concluded that a skilled artisan would have been motivated to achieve known benefits using Thelen's, Bailey's, and Chen's prior art elements according to their established functions. Appx30-31. No more was required. *Novartis*, 853 F.3d at 1327-28.

Substantial evidence also supports the Board's finding that programming effort "would not have dissuaded" a skilled artisan. Appx30. Indeed, Zentian does not challenge the Board's finding, grounded in the prior art references, that the relevant artisan would have had greater skill in parallel processing than Zentian had argued for. Appx7-10 (citing Appx89 (col.10:30-43); Appx2229 (col.2:30-33); Appx2253 (col.5:31-35)). This ordinary artisan would have had the "education and

experience necessary to apply speech-recognition techniques in a parallel-processing environment." Appx36 (citing Appx7-10). The Board noted that "the '319 patent's silence as to how to implement" its system shows that an ordinary artisan would have been expected to have the skill to overcome any challenges in doing so. Appx36; Appx3436 (citing Appx86 (col.3:50-54)). And the Board's unchallenged conclusion that a skilled artisan "would have been capable of addressing the complications of implementing Thelen–Bailey–Chen" counters Zentian's argument that the same artisan would have considered the required programming unsuitable or undesirable. Appx30 (citing Appx31-37).

In addition, Zentian's argument that implementing Chen's clusters would require significant reprogramming misunderstands the combination. *Contra* Zentian Br. 23-24. Zentian argues that converting a system that uses shared memory for processors into one that uses private memory for each processor would require "significant reprogramming effort." Zentian Br. 23-24. According to Zentian, with private memory, the processing work has to be carefully partitioned into tasks that use smaller amounts of data. Zentian Br. 23-24. But incorporating Chen's clusters into Thelen and Bailey does not entail converting a shared memory system to a private memory one. It does the opposite: memory that was private to each cluster in Thelen-Bailey becomes shared among processors in a cluster in Thelen-Bailey-Chen. *Supra*, A.1; *see* Appx3452-54 (explaining that Chen's cluster memories are

shared, so they address the reprogramming problem); Appx1022 (col.5:20-25). And because the combination could maintain Thelen's one-to-one ratio of models to processors (Appx3456-57), Zentian is wrong that the processing work would have to be "partition[ed]" any differently among processors. Zentian Br. 24.

## CONCLUSION

The Board's decision should be affirmed.

Dated: May 12, 2025

Respectfully submitted,

/s/ Brian R. Matsui

BRIAN R. MATSUI
SETH W. LLOYD
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
Tel.: (202) 887-8784
BMatsui@mofo.com

BITA RAHEBI
REBECCA WEIRES SETRAKIAN
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017

*Counsel for Apple Inc.*

## CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the relevant type-volume limitations and typeface and type style requirements of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally spaced typeface in 14-point Times New Roman font and includes 8,294 words, excluding the parts of the filing exempted by the Rules.

Dated: May 12, 2025

/s/ Brian R. Matsui
Brian R. Matsui